| | |
|---|---|
| KATHERINE MUSLOW AND MEREDITH CUNNINGHAM | CIVIL ACTION |
| VERSUS | NO. 19-11793 |
| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, THOMAS SKINNER, LARRY HOLLIER, AND JON HARMAN | SECTION M (2) |

## ORDER & REASONS

Before the Court is (1) a motion to strike and for protective order,[1] and (2) a partial motion to dismiss plaintiffs' amended complaint,[2] both filed by defendants Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "LSU Board"), Thomas Skinner, Larry Hollier, and Jon Harman (collectively, "Defendants"). Plaintiffs Katherine Muslow and Meredith Cunningham (collectively, "Plaintiffs") oppose both motions.[3] Defendants reply in support of their motions.[4] Having considered the parties' memoranda, the record, and the applicable law, this Court issues this Order and Reasons.

## I.    BACKGROUND

### A.  Factual Background

Plaintiffs were formerly employed with the LSU Board as attorneys. The LSU Board oversees and manages Louisiana State University and Agricultural and Mechanical College ("LSU") institutions across Louisiana, including its campuses in Baton Rouge ("LSU (Baton

---

[1] R. Doc. 33.
[2] R. Doc. 35.
[3] R. Docs. 36; 37.
[4] R. Docs. 41; 43.

Rouge")) and the LSU Health Sciences Center in New Orleans ("LSU (New Orleans)").[5]  Until recently, Skinner was Vice President of Legal Affairs and General Counsel at LSU (Baton Rouge). Hollier is Chancellor, and Harman Vice Chancellor, Administration and Finance at LSU (New Orleans).[6]  Also until recently, Muslow was "General Counsel" to LSU (New Orleans) and reported directly to Hollier.[7]  Before her employment at LSU (New Orleans), she served as its outside counsel.  Likewise, until recently, Cunningham was employed as staff attorney at LSU (New Orleans) and reported to Muslow.[8]

According to Plaintiffs, in 2017, LSU (New Orleans) conducted a market study to assess the equity of its salary structure (the "Study").[9]  Due to her part-time status, Cunningham was deemed ineligible for a salary assessment under the Study,[10] but Muslow, who was a full-time employee, did have her salary assessed.[11]  Plaintiffs allege that the Study showed that Muslow's salary was well below the "minimum" for the paygrade assigned to her position, despite having worked for LSU (New Orleans) for decades.[12]  According to Plaintiffs, sometime after this information was provided, Muslow learned that, as a result of the Study, Hollier, with Harman's concurrence, intended to increase her salary, but only to a level that still fell below the minimum for the relevant paygrade.[13]  Plaintiffs allege that Hollier and Harman intended to similarly treat the only other female direct-report to Hollier.[14]  Muslow allegedly then confronted Hollier in a face-to-face meeting during which Muslow "explicitly advised Hollier that gender pay disparities

---

[5] R. Doc. 31 at 2.
[6] *Id.* at 3-4.
[7] *Id.* at 5.
[8] *Id.*
[9] *Id.* at 5-6; *see also* R. Doc. 31-1.
[10] R. Doc. 31 at 7.  Plaintiffs allege that other part-time employees did have their salaries assessed, and that this selective assessment of part-time employees' salaries "disparately and adversely impacted women working at LSU (New Orleans)."  *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at 7-8.
[14] *Id.* at 8.

existed at LSU (New Orleans)," that despite knowledge of these disparities, Hollier was not acting to ameliorate them, and that "those persistent disparities posed a risk to the institution."[15]  Hollier subsequently agreed to raise Muslow's salary to the minimum level for her paygrade.[16]

Plaintiffs allege that the Study, which they did not view in whole in 2017, but did so in October 2018 after they "received and responded to a public-records request," shows "dramatic" wage disparities between male and female employees – disparities which they allege are vastly understated due to exclusion of categories of compensation paid in 2017 only to men.[17]  They allege that the LSU Board, Hollier, and Harman took no action to correct these disparities, but rather aggravated them by increasing the salaries of Plaintiffs' male counterparts in October 2018, but not raising Plaintiffs' pay.[18]

Plaintiffs allege that in December 2018 they were notified that all existing legal positions at LSU, including theirs, would be consolidated under a single Office of General Counsel (the "OGC") at LSU (Baton Rouge).[19]  Around this time, according to Plaintiffs, a new position entitled "Deputy General Counsel" was created for Carlton "Trey" Jones, who had originally been hired in 2017 for the position of "Managing Attorney" at LSU (Baton Rouge).[20]  For this new position, Jones's salary would be raised, "purportedly as compensation for 'supervising' Muslow and Cunningham, as well as attorneys at other LSU campuses."[21]  Plaintiffs allege that despite their own qualifications for this position, they were not given the opportunity to apply for it, nor were other members of the LSU community or the general public.  In January 2019, Plaintiffs met with Skinner and Jones, who reiterated their prior representations to Plaintiffs that their positions at

---

[15] Id.
[16] Id.
[17] Id. at 9-10.
[18] Id. at 11-13.
[19] Id. at 13.
[20] Id. at 13-14.
[21] Id. at 14.

LSU (New Orleans) would remain unchanged other than their consolidation under the OGC.[22] That same month, Plaintiffs received emails from the OGC's business manager, welcoming them and providing them with steps to set them up within the LSU (Baton Rouge) human resources system, for which Plaintiffs provided the requested information.[23] Plaintiffs allege that before they completed this process, they received employment contracts executed by Skinner for their respective positions with the same salaries they had been paid to date.[24]

On February 15, 2019, Plaintiffs wrote to Skinner asking that, before signing the contracts, "their salaries be reviewed and raises given to bring their compensation in line with those of their male counterparts at LSU (New Orleans)," stating that they had been discriminated against on the basis of their gender through disparate pay practices at the institution.[25] According to Plaintiffs, rather than responding, the next business day, Skinner rescinded the contracts "'pending further review' on the pretext that Plaintiffs had not signed them," even though "neither Plaintiff had been given a deadline within which to execute the contracts" and there was no need for such contracts, since Plaintiffs had already transitioned over to the OGC.[26] Plaintiffs allegedly then met with Hollier, who told them that their "jobs were 'moving to Baton Rouge' because Plaintiffs 'had not responded' to [the] OGC's offers of employment," to which Plaintiffs replied that they had indeed "responded to the 'offers'" and had completed the steps required by LSU (Baton Rouge) human resources to move to the OGC.[27] On March 1, 2019, Hollier and Skinner allegedly notified Plaintiffs in separate writings that their positions at LSU (New Orleans) would be "retired" effective June 30, 2019, and equivalent positions would be advertised to the public.[28]

---

[22] *Id.* at 14-15.
[23] *Id.* at 16.
[24] *Id.*
[25] *Id.*
[26] *Id.* at 17.
[27] *Id.* at 17-18.
[28] *Id.* at 18.

On March 26, 2019, Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), and on March 28, 2019, they gave notice of the charges to Skinner, Hollier, Harman, Jones, and other LSU administrators who had also been copied on the March 1, 2019 notices.[29]  On March 29, 2019, Hollier mailed certified letters, dated March 25, 2019, to Plaintiffs' home addresses, stating that Plaintiffs' positions would be eliminated and their employment terminated, effective June 30, 2019.[30]  A few days before June 30, 2019, Defendants allegedly "'extended' Muslow's employment to July 15 for pretextual reasons."[31]  Plaintiffs allege that the "real reason" was that June 30, 2019, was eight days before Muslow would become eligible to retire under the Teacher's Retirement System of Louisiana ("TRSL") plan, in which she was enrolled during her LSU (New Orleans) employment, and so Defendants were avoiding denying her these benefits "for litigation purposes."[32]  Finally, Plaintiffs allege that Defendants recently selected Muslow's replacement, who is "a younger, less-experienced white man."[33]

## B.  Procedural Background

Plaintiffs commenced this suit against Defendants on July 22, 2019.[34]  In response to Defendants' previous motion to dismiss,[35] Plaintiffs amended their complaint.[36]  Accordingly, the Court dismissed Defendants' original motion to dismiss as moot.[37]

In the amended complaint, which remains the operative complaint, Plaintiffs claim: (1) gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), against the LSU Board; (2) retaliation, in violation of Title VII,

---

[29] *Id.* at 19.
[30] *Id.* at 19-20.  Plaintiffs allege that these letters were "backdated."
[31] *Id.* at 21.
[32] *Id.* at 21-22.
[33] *Id.* at 22.
[34] R. Doc. 1.
[35] R. Doc. 13.
[36] R. Doc. 31.
[37] R. Doc. 32.

against the LSU Board; (3) gender discrimination, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* ("Title IX"), against the LSU Board; (4) retaliation, in violation of Title IX, against the LSU Board; (5) gender discrimination, in violation of the Equal Pay Act, 29 U.S.C. §§ 201, *et seq.* ("EPA"), against all Defendants; (6) retaliation, in violation of the EPA, against the LSU Board, Hollier, and Skinner; (7) gender discrimination, in violation of the First and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, against Harman, Hollier, and Skinner; and (8) retaliation, in violation of the First and Fourteenth Amendments, pursuant to § 1983, against Hollier and Skinner.[38]  As relief, Plaintiffs seek (1) a declaratory judgment that the acts and practices complained of are in violation of federal law; (2) a permanent injunction preventing Defendants from engaging in any further unlawful conduct or practices; (3) prospective injunctive relief in the form of, *inter alia*, reinstatement to their former positions; (4) reinstatement to their former positions or front pay in lieu thereof; (5) lost wages, including back pay, front pay, and lost fringe benefits; (6) liquidated damages under the EPA; (7) compensatory damages; (8) punitive damages against Harman, Hollier, and Skinner in their individual capacities; (9) attorney's fees, expenses, and costs; (10) prejudgment and postjudgment interest; and (11) any other legal and equitable relief as the Court deems just and proper.[39]

## II.    PENDING MOTIONS

### A.  Motion to Strike and for Protective Order

Plaintiffs attached several exhibits to their amended complaint.  Defendants first request that the Court strike exhibit D,[40] in whole or in part, and any related references in Plaintiffs'

---

[38] R. Doc. 31. at 22-29.
[39] *Id.* at 30.
[40] R. Docs. 31-3 (redacted version); 31-6 at 11-18 (unredacted version, filed under seal).  Defendants assert that the filing of a redacted version of exhibit D and sealing of an unredacted copy does not cure the unauthorized possession and use by Plaintiffs of this document, which they argue is privileged.

allegations, as a communication that is protected by attorney-client privilege and not authorized by the LSU Board, Plaintiffs' former client, for use by them in this suit.[41]  Next, Defendants ask the Court to strike exhibit B[42] from the amended complaint as (1) containing confidential information and obtained by Plaintiffs in their former roles as lawyers for the LSU Board to respond to a non-party's public-records request; and (2) being an unauthenticated exhibit.[43]  Third, Defendants move the Court to strike redacted paragraph 45 of the amended complaint as containing privileged information not authorized by the LSU Board for use by Plaintiffs in this suit.[44]  Defendants argue that the paragraph permits confidential information regarding non-parties to be improperly ascertained by comparison to exhibit B of the amended complaint, and that this information was obtained by Plaintiffs in their roles as legal representatives of the LSU Board and is protected by attorney-client privilege.[45]  Fourth, Defendants argue that the following paragraphs should be stricken from the amended complaint under Rule 12(f) of the Federal Rules of Civil Procedure as redundant, immaterial, impertinent, or scandalous: paragraphs 41, 53, 54, 55, 59, 64, 88, 96, 101, 102, 103, 136, and 144.[46]  Finally, Defendants move for the issuance of a protective order barring the use in this litigation, or retention, by Plaintiffs of privileged and confidential information belonging to the LSU Board; ordering that any privileged or confidential information belonging to the LSU Board in the possession of Plaintiffs be returned to the LSU Board; and ordering Plaintiffs to identify all individuals who have received or viewed any such privileged or confidential communications or information.[47]

---

[41] R. Doc. 33-1 at 6-9.
[42] *See* R. Doc. 31-6 at 8 (notice of filing manual attachment).
[43] R. Doc. 33-1 at 9-11.
[44] *Id.* at 15.
[45] *Id.* at 11-12.
[46] *Id.* at 12-15.
[47] *Id.* at 2.

In opposition, Plaintiffs respond that exhibit B is a public record and hence not confidential, and that the question of its "authenticity" is an evidentiary matter for trial, not a rule that governs pleadings.[48] In regards to the thirteen paragraphs that Defendants wish to strike from the amended complaint under Rule 12(f), Plaintiffs argue that eight of those paragraphs were identical to paragraphs in the original complaint, and yet Defendants did not object to them, resulting in waiver. They also argue that Defendants have not met their high burden under Rule 12(f), failing to show either that the allegations have "no possible relation to the controversy" or that they are "scandalous," and failing to assert, much less prove, prejudice, as required.[49] Next, Plaintiffs maintain that Defendants fail to prove that either exhibit D or redacted paragraph 45 is protected by attorney-client privilege.[50] Finally, Plaintiffs assert that Defendants have not demonstrated good cause, as necessary for entry of a protective order.[51]

In reply, Defendants reiterate that exhibit D is protected by attorney-client privilege and contains confidential, sensitive information, including the identities and charge numbers of non-party complainants in two unrelated EEOC matters, which Plaintiffs learned when acting as lawyers for LSU.[52] As to exhibit B, Defendants argue that Plaintiffs fail to show that they obtained this document pursuant to a public-records request, but rather, Defendants assert, Plaintiffs admit they reviewed the exhibit only in their role as LSU's counsel.[53] Defendants further maintain that the allegations in redacted paragraph 45 enables the identification of privileged information in exhibit B.[54] Regarding the various paragraphs they move to strike, Defendants assert that these allegations are "inflammatory and immaterial" and prejudice them because "such allegations 'spur

---

[48] R. Doc. 36 at 3-6.
[49] *Id.* at 7-14.
[50] *Id.* at 14-22.
[51] *Id.* at 22-23.
[52] R. Doc. 41 at 3-6.
[53] *Id.* at 6-7.
[54] *Id.* at 7-8.

ill will, serve only to inflame the passions of potential jurors by invoking [Defendants'] reputation,' and attempt to create a scandal around Defendants where none exists."[55]  To conclude, Defendants argue that Plaintiffs' retention and use of exhibits B and D in this litigation without LSU's authorization supports the issuance of a protective order for good cause.[56]

### B. Partial Motion to Dismiss

Defendants seek to dismiss several of Plaintiffs' claims and requested remedies under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Beginning with Rule 12(b)(1), Defendants argue that Plaintiffs lack standing to seek the requested declaratory judgment, as they seek retrospective declaratory relief, and such relief is unavailable.[57]  Similarly, Defendants argue that Plaintiffs lack standing for the permanent injunction they seek because Plaintiffs do not allege an imminent or actual threat of injury, since they allege that their positions with LSU were retired and their employment terminated, and they do not allege ongoing or present violations of law.  They add that Plaintiffs fail to show that monetary damages, which Plaintiffs also seek, would be an inadequate remedy.[58]  Defendants next argue that Plaintiffs' official-capacity § 1983 claims are barred by the Eleventh Amendment: specifically, Defendants assert that reinstatement is barred because state officials cannot be enjoined to act in a way that is beyond their authority to act, and that front pay in lieu of reinstatement is barred because it would be an equivalent of monetary relief, which is not available when sovereign immunity is invoked.[59]

Turning to Rule 12(b)(6), Defendants argue that Plaintiffs' request for declaratory judgment should be dismissed because it is redundant, as duplicative of Plaintiffs' substantive legal

---

[55] *Id.* at 9 (quoting *Schlosser v. Univ. of Tenn.*, 2014 WL 5325350, at *4 (E.D. Tenn. Oct. 20, 2014)).
[56] *Id.* at 10.
[57] R. Doc. 35-1 at 2-3.
[58] *Id.* at 3-5.
[59] *Id.* at 5-9.

claims and hence superfluous, adding nothing to the suit.[60] Defendants continue by asserting that

Plaintiffs' claims for reinstatement are not feasible since Plaintiffs allege that their positions were

retired and not that they remain open (specifically alleging that Muslow's replacement was already

selected).[61] Defendants next argue that Plaintiffs' Title IX claims should be dismissed, first urging

that Title IX does not afford a private right of action for employment discrimination on the basis

of sex in federally-funded educational institutions and that Title VII is the exclusive remedial

scheme for such claims;[62] and then urging that Plaintiffs' Title IX retaliation claims are thus

"preempted" by Title VII because a Title IX retaliation claim must rely exclusively on allegations

charging violations of Title IX, not Title VII, and Plaintiffs rely on the same allegations in support

of all their retaliation claims.[63] Defendants go on to argue that the individual defendants are

entitled to qualified immunity from Plaintiffs' § 1983 claims: first, as to Plaintiffs' § 1983 First

Amendment discrimination and retaliation claims, Plaintiffs cannot show a First Amendment

violation, as necessary to overcome qualified immunity, because by content, form, and context,

Plaintiffs did not speak as citizens addressing matters of public concern but as employees upon

matters of only personal concern;[64] second, as to Plaintiffs' § 1983 Fourteenth Amendment equal-

protection claims, Plaintiffs cannot show an equal-protection clause violation because (1)

retaliation claims are not cognizable under the Equal Protection Clause, and (2) equal-protection

discrimination claims require a showing that Plaintiffs were treated differently than other

similarly-situated individuals, and that such unequal treatment stemmed from a discriminatory

intent, yet Plaintiffs do not sufficiently allege either prong of this test.[65] Lastly, Defendants argue

---

[60] *Id.* at 10-11.
[61] *Id.* at 11-12.
[62] *Id.* at 12-13.
[63] *Id.* at 13-14.
[64] *Id.* at 14-19.
[65] *Id.* at 19-24.

that punitive damages are not available under Title IX, so the request for punitive damages is limited to the individual-capacity claims under § 1983 against Harman, Hollier, and Skinner, which, they maintain, are subject to dismissal, as they argued previously.[66]

In opposition, Plaintiffs first respond that Defendants' arguments seeking dismissal of certain post-trial remedies (*viz.*, reinstatement, injunctive relief, and declaratory relief) is premature at this stage.[67]  Regarding reinstatement, Plaintiffs assert that they have standing to seek this prospective injunctive relief, and that furthermore, whether reinstatement is feasible is a question left to later stages of the proceedings.[68]  Concerning declaratory relief, they argue that this request is not duplicative of their substantive claims.[69]  Next, Plaintiffs maintain that their Title VII claims do not prevent them from stating claims under Title IX, specifiying that Defendants' argument relies on Fifth Circuit caselaw which predates the Supreme Court's decision in *Jackson v. Birmingham Board of Education*.[70]  Plaintiffs then argue that the Court should deny dismissal based on a qualified immunity defense because (1) they seek injunctive relief as to which qualified immunity cannot apply; (2) they have pleaded actionable First Amendment violations, as their "mixed" speech sufficiently addressed matters of public concern; and (3) they have sufficiently pleaded viable equal-protection discrimination claims, because they are not required to identify similarly-situated comparators at the pleading stage, and they have specifically alleged that Defendants acted with discriminatory intent (and the question of intent is one of fact reserved for the jury).[71]  Finally, Plaintiffs contend that Defendants' position on punitive damages rests on the assumption that Plaintiffs do not state § 1983 claims, which, Plaintiffs argue, they do.[72]

---

[66] *Id.* at 24-25.
[67] R. Doc. 37 at 4-5.
[68] *Id.* at 5-9.
[69] *Id.* at 9-10.
[70] *Id.* at 10-12 (citing *Jackson*, 544 U.S. 167 (2005)).
[71] *Id.* at 13-19.
[72] *Id.* at 19-20.

In reply, in addition to reiterating in summary fashion the arguments made previously, Defendants respond to certain of Plaintiffs' specific points. Defendants note that Plaintiffs cite to cases decided under Rule 12(b)(6), not Rule 12(b)(1), to support their argument regarding the propriety of addressing post-trial remedies at the pleading stage.[73] Defendants assert that Plaintiffs wrongly rely on *Robinson v. Hunt County* to argue that the declaratory judgment they seek would not be redundant because in that case, unlike this one, the plaintiff sought prospective declaratory relief for an ongoing constitutional violation.[74] Regarding Plaintiffs' argument on the effect of *Jackson* on Title IX claims, Defendants argue that Fifth Circuit caselaw remains unchanged and binding.[75] Defendants also note that Plaintiffs' opposition does not refute either that retaliation claims are not cognizable under the Equal Protection Clause or that punitive damages are not available under Title IX.[76]

## III.    LAW & ANALYSIS

### A.  Motion to Strike and for Protective Order

#### 1.      Rule 12(f) standard

Rule 12(f) of the Federal Rules of Civil Procedure 12(f) permits a court to strike "from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, this "drastic remedy" should be used "sparingly" and is "disfavored." *Abene v. Jaybar, LLC.*, 802 F. Supp. 2d 716, 723 (E.D. La. 2011) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), and *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 788 (E.D. La. 2010)). If there is any question concerning law or fact, the court should deny the motion. *Perez*

---

[73] R. Doc. 43 at 1.
[74] *Id.* at 4-5 (citing 921 F.3d 440, 450-51 (5th Cir. 2019)).
[75] *Id.* at 6-7.
[76] *Id.* at 8, 10.

*v. ZTE (USA), Inc.*, 2019 WL 1471011, at *1 (N.D. Tex. Apr. 2, 2019) (citation omitted). A motion to strike is to be used "only when 'the allegations are prejudicial to the defendant or immaterial to the lawsuit.'" *Hi-Tech Elec., Inc. of Del. v. T&B Constr. & Elec. Servs., Inc.*, 2017 WL 6600645, at *1 (E.D. La. Feb. 15, 2017) (quoting *Johnson v. Harvey*, 1998 WL 596745, at *7 (E.D. La. Sept. 8, 1998)). A matter is "immaterial" when it "can have no possible bearing upon the subject matter of the litigation." *Id.* (citation omitted). A matter is "impertinent" when it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Duplechain v. Neustrom*, 2017 WL 2656196, at *2 (W.D. La. May 2, 2017). A matter is "scandalous" when it "improperly casts a derogatory light on someone, most typically a party to the action." *In re Pioneer Health Servs., Inc.*, 2018 WL 4812432, at *10 (S.D. Miss. Oct. 2, 2018) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed)). Although motions to strike are disfavored, they are somewhat less so "in the context of scandalous allegations, and matter of this type will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations." *Id.* (quoting WRIGHT & MILLER, § 1382). In addition, a court may strike allegations which make use of privileged communications. *Sims v. Roux Labs., Inc.*, 2007 WL 2571941, at *1 (E.D. La. Aug. 31, 2007) (citations omitted).

### 2. Analysis

#### a. Exhibit D

Exhibit D is an email chain between Skinner, Hollier, and Muslow, with Harman, Cunningham, Jones, and other non-party LSU administrators copied on the emails, dating from March 1, 2019, to March 29, 2019.[77] Plaintiffs have filed a redacted version of the exhibit, along with a sealed unredacted version.[78] The email chain shows communications between Skinner and

---

[77] *See* R. Doc. 31-3.
[78] *See id.*; R. Doc. 31-6 at 11-18.

Muslow over the transition of Plaintiffs' positions to the OGC and Plaintiffs' requests and responses regarding their salary and the transition. It shows that on March 28, 2019, Plaintiffs informed Defendants that they had filed charges of discrimination with the EEOC and asked the OGC to assume responsibility for two other EEOC charges filed against LSU (New Orleans); and, in response to the latter, Skinner confirmed that the OGC would do so. The unredacted version of this exhibit, unlike the redacted version, reveals the EEOC charge numbers and names of the charging parties for these two unrelated EEOC matters.[79]

Defendants argue that the Court should strike exhibit D, in whole or part, and any related references, from the amended complaint because it contains confidential and privileged information.[80] Defendants assert that the identities of the charging parties and the charge numbers of the EEOC charges are non-public information which the Plaintiffs only acquired in their capacity as lawyers responding to these charges on behalf of LSU. They argue that the discussion about transitioning responsibility for legal representation is a privileged communication, which LSU, as client, has not authorized Plaintiffs to use in this case. Furthermore, they argue, neither the redaction of the charging parties' names and charge numbers nor the sealing of the unredacted version cures Plaintiffs' unauthorized use of this confidential and privileged information.

Plaintiffs respond that Defendants have failed to bear their burden of showing that this communication is privileged, especially because, they argue, the burden is increased for matters involving in-house counsel.[81] Plaintiffs maintain that the primary purpose of the exchange in exhibit D is not the provision of legal advice, that a request to reassign cases internally is not a privileged communication, that the information in the EEOC charges is compiled and

---

[79] *See* R. Doc. 31-6 at 11-12.
[80] R. Docs. 33-1 at 1, 6-9; 41 at 3-6.
[81] R. Doc. 36 at 14-22.

communicated by third parties, and that EEOC charges are discoverable, all demonstrating that exhibit D is not protected by the attorney-client privilege.

For a communication to fall under the scope of the attorney-client privilege, it must be made "in confidence for the purpose of obtaining legal advice from the lawyer." *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982) (quotation and citation omitted). "While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects 'only those disclosures necessary to obtain legal advice which might not have been made absent the privilege.'" *Johnson v. Russ*, 2017 WL 1066685, at *2 (W.D. Tex. Mar. 21, 2017) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The "privilege protects both communications from the client to the attorney, and those from the attorney to the client, that would tend to reveal the client's confidence." *C.J. Calamia Constr. Co. v. ARDCO/Traverse Lift Co.*, 1998 WL 395130, at *3 (E.D. La. July 14, 1998) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096 n.7 (5th Cir. 1970)). The party who invokes the privilege bears the burden of establishing it. *Sims*, 2007 WL 2571941, at *2 (citing *United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991)).

While most of exhibit D does not relate to legal services, the email messages sent between Muslow and Skinner on March 28 and 29, 2019, in which Muslow and Skinner discussed handing off responsibility for the two non-public EEOC matters, do. In her email, Muslow indicates that she and Cunningham were responsible for these matters, and in his email, Skinner confirms that the OGC would handle the matters going forward. The Court agrees with Defendants that this is a discussion between an attorney and a representative of the client in furtherance of rendering legal services, and one which would reveal the client's confidences, including the non-public

information about the EEOC matters.[82]   Such a discussion is protected by the attorney-client privilege, and LSU has not consented to the use of these communications by Plaintiffs.   Therefore, the redacted portion of the March 28, 2019 email from Muslow to Hollier and Skinner, and the first paragraph of the March 29, 2019 email from Skinner to Muslow and Hollier, are stricken from exhibit D to the amended complaint.   However, the Court has reviewed the references to exhibit D (paragraphs 87 to 92 of the amended complaint) and finds that these references do not relate to the privileged material in exhibit D, and are thus not stricken.[83]

### b. *Exhibit B*

Exhibit B is a sealed copy of the full Study.   Defendants argue that the Court should strike it from the pleadings because the Study is not freely accessible in the public domain, Plaintiffs viewed it only in their former role as attorneys for LSU in "receiv[ing] and respond[ing] to a public-records request for the Study," and Plaintiffs are only in possession of it because Cunningham emailed it, without authorization, presumably to herself at a redacted Gmail account on March 26, 2019.[84]   Defendants add that exhibit B is neither self-authenticating under Federal Rule of Evidence 902(4) nor has it been properly authenticated under Rule 901(a).[85]

Plaintiffs respond that exhibit B is a public record and that as the custodian of the public record, the LSU Board has not shown that this public record is not subject to inspection or reproduction.[86]   Because, they argue, this document was subject to disclosure and was disclosed,

---

[82] Even the EEOC is unable to release charges to the public, thus indicating the non-public and sensitive nature of the information the LSU Board seeks to protect by compelling its former counsel to strike it from public filings in this case.   *See Equal Emp't Opportunity Comm'n v. Associated Dry Goods Corp.*, 449 U.S. 590 (1981) (EEOC prohibited from disclosing files of charging parties who have brought claims against same employer); *Clemons v. Dollar Gen. Corp.*, 2010 WL 1994809, at *4 (N.D. Miss. May 18, 2010) (details regarding EEOC charges are strictly confidential); 42 U.S.C. § 2000e-8(e).

[83] *See* R. Doc. 31 at 18-19.
[84] R. Docs. 33-1 at 9-10; 41 at 6-7.
[85] R. Doc. 33-1 at 11.
[86] R. Doc. 36 at 3-5.

it cannot be considered confidential. Furthermore, in response to Defendants' authentication argument, Plaintiffs maintain that the Federal Rules of Evidence do not govern pleadings.[87]

Whether exhibit B is a confidential document is unclear at this juncture. Plaintiffs argue that a document which is subject to public disclosure under Louisiana law and was "so disclosed" cannot be considered confidential,[88] but regardless of whether the document is subject to public disclosure, there is no allegation that the document was actually disclosed in response to the third-party public-records request. What is clear, however, is that Plaintiffs reviewed exhibit B in their capacity as attorneys for LSU, and that they possess it now without authority from their former client.[89] Plaintiffs are therefore using a document and information which they possess only as a consequence of their former representation of LSU. The Louisiana Rules of Professional Conduct forbid an attorney "who has formerly represented a client in a matter" from "us[ing] information relating to the representation to the disadvantage of the former client" except as the rules permit or require, or "when the information has become generally known." La. R. Prof. Conduct 1.9(c)(1).[90] This is not a situation in which one of the exceptions applies nor has it been shown that this information is generally known. Accordingly, at this point, it is improper for Plaintiffs to use this document in this action against its former client, and it is stricken from the pleadings. *Cf. Sealed Party v. Sealed Party*, 2006 WL 1207732 (S.D. Tex. May 4, 2006) (addressing claim regarding counsel's use of former client's non-public information learned in course of representation).

---

[87] *Id.* at 6.
[88] R. Doc. 36 at 5.
[89] *See* R. Doc. 31-2 at 1.
[90] This Court has adopted these state rules as its rules of conduct. *See* Local Rule 83.2.3.

### c. Redacted paragraph 45

Defendants ask the Court to strike redacted paragraph 45 from the amended complaint "[i]n the event Exhibit B is not stricken by the Court."[91]    Redacted paragraph 45 reveals non-public information about the filing of EEOC charges Plaintiffs gleaned only in their capacity as lawyers for LSU.  Hence, even though the Court has stricken exhibit B, redacted paragraph 45 is also stricken for the reasons discussed above.

### d. Paragraphs 41, 53, 54, 55, 59, 64, 88, 96, 101, 102, 103, 136, and 144

Defendants move the Court to strike paragraphs 41, 53, 54, 55, 59, 64, 88, 96, 101, 102, 103, 136, and 144, in full or in part, from the amended complaint because, they argue, they are neither responsive nor relevant to Plaintiffs' claims, and they are impertinent and scandalous because they "unnecessarily 'cast a cruelly derogatory light' on non-parties and individual Defendants."[92]    Defendants assert that "these allegations go too far by alleging potentially fraudulent and unethical conduct by individual Defendants, one whom is an attorney (Skinner), despite the lack of fraud or breach of professional ethics claims by Plaintiffs in this lawsuit."[93]    Defendants contend that these "inflammatory and immaterial allegations … demonstrate an unwarranted prejudicial effect on Defendants because such allegations 'spur ill will,' 'serve only to inflame the passions of potential jurors by invoking Defendants' reputation,' and attempt to create a scandal around Defendants where none exists."[94]

Plaintiffs first respond by arguing that several of the challenged paragraphs are identical to paragraphs in the original complaint, yet Defendants did not raise any objection to them in their initial response, thus constituting waiver.[95]    Plaintiffs then argue that "'going too far' is not grounds

---

[91] R. Doc. 33-1 at 11.
[92] *Id.* at 12-14 (emphasis omitted).
[93] *Id.* at 14.
[94] R. Doc. 41 at 9 (citations and alterations omitted).
[95] R. Doc. 36 at 7-8.

to strike allegations in a complaint" as the purpose of a motion to strike is "not tone policing," that each of these allegations has a "possible relation to the controversy," and that Defendants do not prove prejudice, as required by Rule 12(f).[96]

First, Plaintiffs' waiver argument is unavailing. Plaintiffs cite authorities on the application of Rule 12(g) and the waiver of defenses regarding successive Rule 12(b)(6) and Rule 12(c) motions, but cite no authority for the proposition that filing a motion to dismiss leads to the waiver of Rule 12(f) objections.[97] That Defendants filed a motion to dismiss the original complaint under Rules 12(b)(1) and 12(b)(6) does not mean that they found the allegations in that complaint "acceptable" or that they waived their right to later pursue a motion to strike those allegations under Rule 12(f) if reasserted in an amended complaint. Nevertheless, the Court has reviewed the challenged allegations and, "[g]iven the demanding standard for Rule 12(f) motions to strike," finds that most of these allegations are not sufficiently irrelevant, impertinent, or scandalous, and that even if they are, they are not sufficiently prejudicial, to warrant the "extraordinary remedy" of striking them from the amended complaint. *Hi-Tech Elec.*, 2017 WL 6600645, at *2. This is especially so because several of these allegations are redacted, and their unredacted versions are filed under seal. That being said, the Court agrees with Defendants that the allegations in the last sentence of paragraph 53 are wholly irrelevant and unnecessarily cast Harman in a derogatory light.[98] The same goes for the allegation in the last sentence of paragraph 64 regarding Skinner.[99] As Defendants point out, there are no claims challenging the hiring of either Harman or Skinner, nor do these allegations have any possible bearing on Plaintiffs' claims, yet they attempt to create scandal around Harman and Skinner, to their prejudice. Accordingly, the Court strikes those

---

[96] R. Doc. 36 at 9-10, 14 (citations omitted).
[97] *See* R. Doc. 36 at 8 n.7.
[98] *See* R. Doc. 31 at 11-12.
[99] *See id.* at 13.

allegations from the amended complaint, but declines to strike any of the other challenged allegations.

### e. Protective order

Given Plaintiffs' retention and use of LSU's documents (*e.g.*, exhibits B and D) in this litigation without its authorization – documents they possess only as a result of their having been engaged by LSU in positions of trust as its lawyers – good cause has been shown as required by Rule 26(c) of the Federal Rules of Civil Procedure to support issuance of a protective order. Plaintiffs are to return to the LSU Board any documents or other information belonging to LSU which came into their possession by virtue of their service as counsel to LSU. In addition, Plaintiffs are ordered to identify to Defendants all persons who have received or viewed any such documents or information.

## B. Partial Motion to Dismiss

### 1. Rule 12(b)(1) standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction. "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)). The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Id.* "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of

facts in support of his claims entitling him to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 235 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

Article III of the Constitution of the United States specifies that a federal court's "power extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540, 1547 (2016). "A justiciable Article III controversy requires the party instituting the action to have standing and the issue presented to the court to be ripe." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," which developed in the jurisprudence "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 136 S. Ct. at 1547 (citation omitted). The standing "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). A plaintiff must establish standing as to each claim asserted. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. __, 137 S. Ct. 1645, 1650 (2017). Constitutional standing is an element of subject-matter jurisdiction that may be challenged under Rule 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).

The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). The plaintiff must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 at 560–61; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized,

and (b) actual or imminent, not conjectural or hypothetical." *Webb v. City of Dall.*, 314 F.3d 787, 791 (5th Cir. 2002).

To establish standing for a suit brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, a plaintiff must show "actual present harm or a significant possibility of future harm." *Bauer v. Texas*, 341 F.3d 352, 357-58 (5th Cir. 2003) (citation omitted). This "actual controversy" requirement "is identical to the meaning of 'case or controversy' for the purposes of Article III." *Id.* at 358 (quoting *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997)); *see also Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019). As noted by the Supreme Court, the Declaratory Judgment Act "does not enlarge the jurisdiction of the federal courts; it is procedural only." *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009) (quotation and citation omitted). Therefore, "[t]he existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633-34 (Fed. Cir. 1991), *abrogated on other grounds by Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 95 (1993).

To satisfy the standing requirements of Article III, "a plaintiff seeking injunctive relief must 'show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged conduct.'" *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (internal quotation marks and alterations omitted). "[A] plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future," as "'past exposure to illegal conduct does not in itself show a present case or controversy … if unaccompanied by any continuing present adverse effects.'" *Bauer*, 341 F.3d at 358 (quoting *Lyons*, 461 U.S. at 95-96) (internal quotation and citation omitted). In other words, "[t]he plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred," and "the continuing controversy may not be

conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* (citations omitted).

## 2. Rule 12(b)(6) standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts

pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the

complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 3. Analysis

#### a. Declaratory judgment and permanent injunction

Defendants argue that Plaintiffs lack standing for the declaratory judgment they seek. They argue that to have standing, "Plaintiffs must allege a likelihood of future violations of their rights by Defendants, <u>not</u> simply future effects from past alleged violations," but "Plaintiffs are seeking a declaration that Defendants wronged them <u>in the past</u>."[100] Plaintiffs do not directly address this argument, but rather argue only that Defendants' request for the dismissal of post-trial remedies, including declaratory and injunctive relief, is premature.[101] But Defendants insist that jurisdictional questions should be addressed before issues on the merits, and that Plaintiffs bear the burden of proof that jurisdiction exists.[102]

The Court agrees with Defendants. Plaintiffs seek a declaratory judgment "that the acts and practices complained of [in the amended complaint] are in violation of the laws of the United States,"[103] and they allege only past acts and practices. There are no allegations from which a concrete threat of future injury or a continuing controversy can be reasonably inferred, and Plaintiffs do not make any serious effort now to argue otherwise. Even assuming that Article III standing requirements are minimally met here, which they are not, "prudential standing considerations similarly dictate the impropriety of declaratory relief." *Bauer*, 341 F.3d at 358-59.

---

[100] R. Doc. 35-1 at 3 (emphasis in original).
[101] R. Doc. 37 at 4.
[102] R. Doc. 43 at 1.
[103] R. Doc. 31 at 30.

Regarding the request for a permanent injunction (*viz.*, that Defendants be prevented "from engaging in any further unlawful conduct or practices as set forth" in the amended complaint), Defendants add that because Plaintiffs allege that their positions with LSU were "retired" and their employment terminated, standing for injunctive relief is destroyed.[104] Indeed, because Plaintiffs are no longer employed by the LSU Board, they cannot "realistically face a threat that [Defendants] will continue to violate [their] rights." *Gilbert v. Donahoe*, 751 F.3d 303, 313 (5th Cir. 2014). Because Plaintiffs fail to allege "either continuing harm or a real and immediate threat of repeated injury in the future," they have no standing to seek the requested permanent injunction. *Bauer*, 341 F.3d at 358. Accordingly, Plaintiffs' requests for declaratory judgment and a permanent injunction are dismissed with prejudice for lack of subject-matter jurisdiction.[105]

### b. Section 1983 claims seeking reinstatement

Defendants argue that the prospective injunctive relief in the form of reinstatement that Plaintiffs seek through their § 1983 official-capacity claims against the individual defendants is barred by the Eleventh Amendment, because although prospective injunctive relief may be sought against state officials under the *Ex parte Young* exception to Eleventh Amendment sovereign immunity, if a state official does not have the authority to redress a complaint, this exception is inapplicable.[106] Specifically, Defendants argue that Plaintiffs do not allege that Harman or Skinner directly supervised either Muslow or Cunningham while they were employed at LSU (New Orleans), and that Plaintiffs allege that as of December 2018, Jones, a non-party, was made responsible for supervising Plaintiffs and other attorneys at LSU.[107] Thus, Defendants argue, Plaintiffs do not allege that any of the individual defendants have authority to reinstate them.

---

[104] R. Doc. 35-1 at 4-5.
[105] It is therefore unnecessary for the Court to determine whether a declaratory judgment would be redundant and thus subject to dismissal under Rule 12(b)(6).
[106] R. Doc. 35-1 at 5-6.
[107] *Id.* at 6-7.

Plaintiffs counter that their allegations, in context, state that Jones's salary was raised "purportedly as compensation for 'supervising' Muslow and Cunningham," specifically placing quotation marks around the word "supervising," thereby calling it into question, and that furthermore, their allegations, in whole, specifically show how each individual defendant was involved in discrimination and retaliation against them.[108]  In reply, Defendants maintain Plaintiffs make no allegation that Hollier (as chancellor of LSU (New Orleans)) or Harman (as vice chancellor, administration and finance at LSU (New Orleans)) has any authority at LSU (Baton Rouge), where Plaintiffs' positions were moved,[109] or that the new positions report to Skinner (as vice president of legal affairs and general counsel at LSU (Baton Rouge)), but rather that Muslow's former position is subordinate to the deputy general counsel (Jones) and Cunningham's is subordinate to all lawyers and staff at the OGC at LSU (Baton Rouge).[110]

The Eleventh Amendment codified state sovereign immunity, barring suits in federal court against states, including state agencies and instrumentalities.  *Liu v. Texas State Univ.*, 2019 WL 3804491, at *4 (W.D. Tex. Aug. 12, 2019)) (citations omitted).  When the "state is the real, substantial party in interest," the Eleventh Amendment bars suits against state officials in their official capacity.  *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).  "The state is a real, substantial party in interest when the judgment sought would expend itself on the state treasury or domain or would restrain the state from acting or compel it to act."  *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996).  However, under *Ex parte Young*, 209 U.S. 123, 155-56 (1908), the Eleventh Amendment does not protect state officials from claims for prospective, non-monetary relief when it is alleged that the state officials acted in violation of

---

[108] R. Doc. 37 at 6.  Plaintiffs assert that Defendants' argument is essentially that the allegations establish that only Jones was responsible for the alleged discrimination and retaliation.  *Id.* at 5.
[109] R. Doc. 43 at 3.
[110] *Id.*

federal law. *Id.* Reinstatement is a form of prospective injunctive relief that falls under the *Ex parte Young* exception. *See Corn v. Miss. Dep't of Pub. Safety*, 2020 WL 1471843, at *4 (5th Cir. Mar. 26, 2020) (citing *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996)); *Liu*, 2019 WL 3804491, at *5 (collecting cases).

To seek relief under the *Ex parte Young* exception, a plaintiff must establish standing by showing: (1) injury in fact; (2) causation; and (3) redressability. *Gregory v. Texas Youth Comm'n*, 111 F. App'x 719, 721 (5th Cir. 2004) (citing *Lujan*, 504 U.S. at 560-61). If a state official does not possess the power to reinstate an employee, *i.e.* to redress the plaintiff's complaint, then the exception is inapplicable. *Thomas v. Univ. of Miss.*, 2018 WL 6613807, at *4 (N.D. Miss. Dec. 17, 2018); *cf. Lewis v. Hanemann*, 2015 WL 5883547, at *3 (W.D. La. Aug. 4, 2015) (individual defendant was not proper state official with authority to secure requested relief).

The Court agrees with Defendants that there is no allegation that either Hollier or Harman has authority to reinstate Plaintiffs in positions now under the aegis of LSU (Baton Rouge). Contrary to Plaintiffs' argument, Defendants are not asserting that only Jones can be held responsible for the alleged discrimination and retaliation, but rather that only Jones, who is a non-party, currently has the authority to reinstate them. Plaintiffs do not refute the point that they fail to allege that Hollier and Harman, both employed at LSU (New Orleans), have any authority to reinstate attorneys at LSU (Baton Rouge). Hence, the *Ex parte Young* exception to the Eleventh Amendment is not applicable, and Plaintiffs do not have standing to bring a § 1983 official-capacity claim seeking reinstatement against either of these defendants. *See Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (holding that the plaintiffs failed to satisfy the "redressability" requirement, and thus had no standing, where the state officials had no power to redress the alleged injuries).

But the same cannot be said for Plaintiffs' claims against Skinner. If the deputy general counsel of LSU (Baton Rouge) has authority to reinstate Plaintiffs, it is plausible to infer that the general counsel, to whom the deputy general counsel presumably reports, has authority to do so as well. It does not follow that simply because LSU attorneys allegedly **report** directly to the deputy general counsel, the general counsel, *i.e.* the deputy's supervisor, does **not** also have authority to reinstate attorneys at the OGC. Accordingly, at this juncture, it does not "appear[] certain that [Plaintiffs] cannot prove any set of facts in support of" their claim against Skinner entitling them to reinstatement, as would permit the Court to dismiss this claim for lack of subject-matter jurisdiction. *Sureshot*, 754 F. App'x at 239.

### c. Section 1983 claims seeking front pay in lieu of reinstatement

Defendants argue that a front pay award in lieu of reinstatement as relief for Plaintiffs' § 1983 official-capacity claims against Skinner, Hollier, and Harman is barred by the Eleventh Amendment.[111] Defendants argue that such an award is not prospective in nature, as it is designed to compensate Plaintiffs for past violations of federal law and is the functional equivalent of money damages, and thus the *Ex parte Young* exception to the Eleventh Amendment does not apply. Plaintiffs make no argument against this in opposition.

The Court agrees with Defendants: the *Ex parte Young* exception does not apply to Plaintiffs' § 1983 official-capacity claims seeking front pay in lieu of reinstatement. *See Landesberg-Boyle v. Louisiana*, 2004 WL 1516823, at *4-5 (E.D. La. July 2, 2004) (citing cases holding that "compensatory damages in the form of lost future wages, or 'front pay,' is not recoverable in an official-capacity action brought pursuant to § 1983") (citations omitted); *see also Webster v. Bd. of Supervisors of Univ. of La. Sys.*, 2015 WL 4459211, at *8 (E.D. La. July 21,

---

[111] R. Doc. 35-1 at 7-9.

2015).  This type of relief is "purely compensatory and is meant to redress [Plaintiffs'] termination and [Skinner, Hollier, and Harman's] past conduct," and "would be paid directly out of the state treasury." *Landesberg-Boyle*, 2004 WL 1516823, at *5.  Therefore, Plaintiffs' § 1983 official-capacity claims against the individual defendants seeking such relief are dismissed with prejudice for lack of subject-matter jurisdiction.

### d.  *Feasibility of reinstatement*

Defendants argue that reinstatement is not a feasible remedy in the event that Plaintiffs establish liability under Title VII, Title IX, or § 1983, and thus Plaintiffs' claims for reinstatement should be dismissed as a matter of law under Rule 12(b)(6).[112]  Plaintiffs argue that Defendants fail to cite any case dismissing a claim for reinstatement at the pleading stage based on feasibility.[113]  They maintain that a court's determination of whether reinstatement is an appropriate remedy is a fact-specific analysis which must be made with a complete evidentiary record at a later stage of the proceedings.[114]  Plaintiffs emphasize that reinstatement is the preferred equitable remedy under Title VII, and that they are not even required to plead a request for reinstatement in order for a court to order reinstatement as a remedy.[115]  Defendants reply that Plaintiffs allege that their former positions were retired, do not allege that the new positions at LSU (Baton Rouge) remain open, and even admit that Muslow's replacement has already been selected, and thus the allegations, without the need for evidence, show that reinstatement is not a feasible remedy.[116]

Here, the Court agrees with Plaintiffs.  The Fifth Circuit has held "the decision of whether or not to grant reinstatement is within the discretion of the district court," and that in making that

---

[112] R. Doc. 35-1 at 11-12.
[113] R. Doc. 37 at 7.
[114] *Id.* at 8-9.
[115] *Id.* at 7-8.
[116] R. Doc. 43 at 5-6.

decision, "a court may properly consider factors such as the availability of positions, the plaintiff's current employment status, and the impact reinstatement would have on employee relations." *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 863 (5th Cir. 2010) (citing *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254-55 (5th Cir. 1995)). While it is true that Plaintiffs allege that their former positions were retired and that Muslow's replacement has been selected, the Court cannot now conclusively determine that reinstatement is not an available remedy for Plaintiffs' remaining claims. This fact-intensive determination is more appropriately left to a later stage of the case. *See Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990) (finding no abuse of discretion in district court's post-trial determination that reinstatement was not feasible); *Prof'l Ass'n of College Educators, TSTA/NEA v. El Paso Cty. Cmty. Coll. Dist.*, 730 F.2d 258, 269 (5th Cir. 1984) (explaining that district court, on remand after appeal from jury verdict, should consider facts and weigh all relevant factors to determine whether reinstatement is appropriate remedy). *But see Anderson v. Valdez*, 913 F.3d 472, 479 (5th Cir. 2019) (reversing district court's failure to decide whether reinstatement was an available remedy on summary judgment because the relevant position no longer existed, and so the question went "beyond mere feasibility").

### e. Title IX claims

Defendants seek dismissal of Plaintiffs' Title IX discrimination claims because, they argue, Title IX does not afford a private right of action for employment discrimination on the basis of sex in federally-funded educational institutions, and in the Fifth Circuit, Title VII is the exclusive remedial scheme for such employment discrimination.[117] They argue that dismissal of Plaintiffs' Title IX retaliation claims is also warranted because this type of claim must rely exclusively on allegations charging Title IX, not Title VII, violations, yet Plaintiffs rely on the same allegations

---

[117] R. Doc. 35-1 at 12-13.

in support of all their retaliation claims.[118]  In opposition, Plaintiffs say that Defendants' position

is based on cases which pre-date the Supreme Court's decision in *Jackson v. Birmingham Board*

*of Education*, in which, they argue, the Court "unequivocally rejected the principle that Title IX

and Title VII are mutually exclusive remedies by recognizing that Title IX's private right of action

'encompasses claims of retaliation for complaints about sex discrimination.'"[119]  Plaintiffs

maintain that the decisions cited by Defendants "appear to ignore *Jackson*'s effect," and they

submit that the Court should instead follow the reasoning in two out-of-circuit district court

decisions that recognized *Jackson*'s "proposition that Title IX provides a separate and independent

avenue for pursuing claims of gender-based employment discrimination and retaliation

notwithstanding any similar prohibitions in Title VII."[120]

Before *Jackson*, the Fifth Circuit in *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995),

had rejected the offer to find an implied right of action under Title IX for employment

discrimination, explaining that "[d]oing so would disrupt a carefully balanced remedial scheme

for redressing employment discrimination by employers" under Title VII.  Building off this

decision, the Fifth Circuit subsequently held that a private right of action for retaliation under Title

IX may lie, but it must be supported by allegations of Title IX violations only, not allegations that

would support a private right of action for retaliation under Title VII.  *Lowrey v. Texas A & M*

*Univ. Sys.*, 117 F.3d 242, 247-48 (5th Cir. 1997).  In *Jackson*, the Supreme Court agreed with the

Fifth Circuit that Title IX's implied private right of action[121] encompasses retaliation claims,

---

[118] *Id.* at 13-14.

[119] R. Doc. 37 at 10 (quoting *Jackson*, 544 U.S. at 171).

[120] *Id.* at 11 (citing *Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112 (D. Kan. 2017), and *Kelley v. Iowa State Univ. of Sci. & Tech.*, 311 F. Supp. 3d 1051 (S.D. Iowa 2018)).

[121] As the Supreme Court explained in *Jackson*, it originally held in *Cannon v. University of Chicago*, 441 U.S. 677, 690-93 (1979), that Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination. *Jackson*, 544 U.S. at 173.  The Court defined the contours of that right of action in subsequent cases. *See Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 76 (1992) (holding that Title IX authorizes private parties to seek monetary damages for intentional violations of Title IX); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998) (holding that the private right of action encompasses intentional sex discrimination in the form of

holding that an individual (there, a teacher/coach) could bring a suit under Title IX against a funding recipient who retaliated against him because he complained about sex discrimination. *Jackson*, 544 U.S. at 171-78. Unlike *Lowrey*, however, *Jackson* did not explicitly limit this right of action to one based solely on allegations of retaliation against an individual who complains about noncompliance with the substantive provisions of Title IX, but rather held only that "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX," and is thus encompassed within the Title IX private right of action. *Jackson*, 544 U.S. at 173-74 (emphasis in original).

      The Fifth Circuit has yet to address *Jackson*'s possible effect on either *Lakoski* or *Lowrey*. As Defendants point out, courts within the Fifth Circuit continue to apply both. *See, e.g., Normore v. Dallas Indep. Sch. Dist.*, 2019 WL 2189258, at *3 (N.D. Tex. May 21, 2019) (dismissing teacher/coach's Title VII hostile work environment claim as preempted by Title VII under *Lakoski*); *Wilkerson v. Univ. of N. Tex.*, 2018 WL 6331686, at *4-5 (E.D. Tex. Dec. 4, 2018) (discussing *Lakoski* and *Lowrey* and not dismissing university-lecturer's Title IX retaliation claim because the retaliation allegedly arose from his participation in a Title IX investigation); *Doe v. Prairie View A&M Univ.*, 2018 WL 1947804, at *3-6 (S.D. Tex. Apr. 25, 2018) (discussing *Jackson*, *Lakoski*, and *Lowrey*, and not dismissing student-employee's Title IX discrimination or retaliation claim because *Lakoski* and *Lowrey* were distinguishable as involving non-student employees); *Slabisak v. Univ. of Tex. Health Sci. Ctr.*, 2018 WL 1072511, at *2-3 (E.D. Tex. Feb. 27, 2018) (dismissing medical-resident's Title IX deliberate-indifference and retaliation claims as preempted by Title VII under *Lakoski* and *Lowrey*); *Scott v. Grand Prairie Indep. Sch. Dist.*, 2012 WL 1361621, at

---

deliberate indifference to a teacher's sexual harassment of a student); *Davis v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 642 (1999) (same, but to a student's sexual harassment of another student).

*3 (N.D. Tex. Apr. 19, 2012) (dismissing teacher's Title IX discrimination claim as preempted by Title VII under *Lowrey*); *Parr v. Nicholls State Univ.*, 2011 WL 838903, at *10 (E.D. La. Mar. 3, 2011) (dismissing professor's Title IX claim for gender-based employment discrimination as precluded by Title VII under *Lakoski* and *Lowrey*). Plaintiffs do not identify, nor is the Court aware of, any similar case within the Fifth Circuit in which a court has not followed *Lakoski* or *Lowrey*. Rather, Plaintiffs merely argue that all of these cases were wrongly decided because they rest on *Lakoski* or *Lowrey*, both of which, they say, no longer remain good law in the wake of *Jackson*.

First, the Court finds that *Lakoski* remains good law in this circuit. Before *Jackson*, the Fifth Circuit, in *Lowrey*, had already decided that Title IX's private right of action encompasses retaliation claims, specifically distinguishing claims of retaliation based on Title IX complaints (for which there is no Title VII action) from claims of employment discrimination (for which there is a Title VII action). *See Lowrey*, 117 F.3d at 248-49. Plaintiffs fail to explain how the Supreme Court's decision *congruent* with the Fifth Circuit on the availability of Title IX *retaliation* claims can have altered the Fifth Circuit's holding that Title IX's private right of action does not encompass *employment discrimination* claims.

Both out-of-circuit district court cases that Plaintiffs urge the Court to follow specifically explained that there is a circuit split on the issue whether Title VII preempts Title IX for claims of employment discrimination, placing the Fifth Circuit on the side that holds that it does. *See Kelley*, 311 F. Supp. 3d at 1063-65; *Fox*, 257 F. Supp. 3d at 1119-23. At the time of the decisions, neither the Tenth Circuit nor the Eighth Circuit had addressed the issue, and so the *Kelley* and *Fox* courts were determining which side of the split to follow – a wholly different task than is now presented to this Court, which remains bound by Fifth Circuit precedent.

Furthermore, the Court finds persuasive the more recent decision by another district court in the Eighth Circuit holding that a non-student plaintiff had no private right of action under Title IX to bring claims of sex discrimination and retaliation. *Hedrick v. Univ. of Arkansas for Med. Scis.*, 2019 WL 4230655, at *3-5 (E.D. Ark. Sept. 5, 2019). The *Hedrick* court, acknowledging the circuit split and lack of an Eighth Circuit decision, explained that district courts within the Eighth Circuit have landed on both sides of the split. *Id.* at *4 (collecting cases). Limiting *Kelley* to its facts, the *Hedrick* court followed the reasoning of *Vandiver v. Little Rock School District*, 2007 WL 2973463, at *11-12 (E.D. Ark. Oct. 9, 2007), in which "the court held that *Jackson* should not be read to expand private rights of action under Title IX of retaliation to include claims of employment discrimination which have no connection to the rights of students." *Hedrick*, 2019 WL 4230655, at *4 (citing *Vandiver*, 2007 WL 2973463, at *18). The *Hedrick* court explained that *Vandiver* noted that "all seminal Supreme Court cases regarding Title IX private rights of action relate to claims by students against funding recipients." *Id.* Like the plaintiff in *Hedrick*, Plaintiffs' claims have no connection to the rights of students. Plaintiffs complain about sex discrimination in their employment as attorneys at LSU (New Orleans); nowhere in the amended complaint do they tie this alleged discrimination to the rights of students. Plaintiffs' discrimination claims are properly brought under the auspices of Title VII, not Title IX.

As for *Lowrey,* it remains unclear whether *Jackson* widened the Fifth Circuit's narrow tailoring of an implied right of action for Title IX retaliation claims to those "claims of employees who suffer retaliation *exclusively* as a consequence of complaints alleging noncompliance with the substantive provisions of title IX." *Lowrey*, 117 F.3d at 254 (emphasis added). Since the Supreme Court ruled in *Jackson*, the Fifth Circuit has cited *Jackson*'s broader language when referring to Title IX retaliation claims, and has not referred to *Lowrey*'s limiting language. *See Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 209 (5th Cir. 2019) (quoting *Jackson*, 544

U.S. at 183: "'Retaliation against individuals because they complain of sex discrimination' is also 'intentional conduct that violates the clear terms of [Title IX].'") (internal citation and brackets omitted); *Minnis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 620 F. App'x 215, 222 (5th Cir. 2015) (holding that under *Jackson*, a *prima facie* Title IX retaliation claim requires that the retaliation be "because" the plaintiff complained about sex discrimination); *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (explaining that a *prima facie* Title IX retaliation claim requires showing that the plaintiff was involved in a Title IX complaint, that he suffered an adverse employment action, and that a causal connection exists between the two); *Carter v. Luminant Power Servs. Co.*, 714 F.3d 268, 271-72 (5th Cir. 2013) (citing *Jackson* as involving one of the "broadly phrased prohibitions" on retaliation, Title IX); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011) (citing *Jackson* for the proposition: "To establish title IX retaliation, [the plaintiff-student] must show that the [school] district or its representatives took an adverse action against her because she complained of harassment."). Nevertheless, in all of these cases that actually involved a Title IX retaliation claim, as in *Jackson*, the alleged retaliation was on the basis of a sex-discrimination complaint regarding the rights of students and there was no question of any overlap with a Title VII retaliation claim. *See Jackson*, 544 U.S. at 171-72 (teacher/coach alleged retaliation for complaining about high school's unequal treatment of girls' basketball team); *Klocke*, 938 F.3d at 209-13 (student alleged retaliation for alleging he was sexually harassed by another student); *Minnis*, 620 F. App'x at 222 (university's coach alleged retaliation for complaining about facilities of women's tennis team);[122] *Collins*, 609 F. App'x at 795 (teacher/coach alleged retaliation for his

---

[122] In *Minnis*, the Fifth Circuit affirmed dismissal on summary judgment of both the plaintiff's Title VII and Title IX retaliation claims. 620 F. App'x at 222-23, *aff'g* 55 F. Supp. 3d 864, 882-83 (M.D. La. 2014). The plaintiff's Title VII and Title IX retaliation claims, both having been permitted to proceed past the pleading stage, clearly did not overlap, however, because the plaintiff's Title VII claim was based on race discrimination, while the Title IX claim was based on sex discrimination (as a Title IX claim must be). *See id.* at 872.

involvement in a Title IX complaint alleging discrimination against female student athletes); *Sanches*, 647 F.3d at 170-71 (student alleged retaliation for complaining of sexual harassment).

Despite *Jackson*'s broad language, neither the Supreme Court, nor the Fifth Circuit, nor, as far as this Court can tell, any district court within the Fifth Circuit has permitted a plaintiff's claim to proceed under Title IX when the alleged retaliation was in response to complaints regarding employment discrimination, completely divorced from the rights of students or noncompliance with the substantive provisions of Title IX. In *Doe v. Prairie View*, for example, while the district court permitted the plaintiff to proceed on both her Title VII and Title IX retaliation claims based on the same allegations, this was not because the court read *Jackson* to have upended *Lowrey*, but rather because the court read *Lowrey* as having limited application to a case involving a student-employee since conduct related to the student's employment as opposed to the student's education "cannot be so neatly separated." 2018 WL 1947804, at *6. Whether or not *Lowrey*'s narrow tailoring of the right of action for retaliation under Title IX remains intact, this Court does not doubt that for a viable Title IX retaliation claim, a plaintiff must allege retaliation because of complaints related to discrimination *in education*. Plaintiffs allege no such retaliation; they merely allege retaliation due to their complaints about employment discrimination, not discrimination involving the rights of students or noncompliance with the substantive provisions of Title IX.

Accordingly, Plaintiffs' Title IX discrimination and retaliation claims are dismissed with prejudice for failure to state a claim.

### f. Qualified immunity under § 1983 claims

Defendants assert that the individual defendants are entitled to qualified immunity from Plaintiffs' § 1983 claims.

"Section 1983 provides a cause of action to an individual harmed by a state official's violation of federal law. A state official sued under § 1983 is entitled to qualified immunity from damages, which protects the official from liability for any act that was not objectively unreasonable at the time of the act." *Waller v. Hanlon*, 922 F.3d at 599 (citing *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Once a defendant invokes qualified immunity at the pleadings stage, the court must determine whether the plaintiff alleges specific facts which, if true, would overcome the defense of qualified immunity. *Waller*, 922 F.3d at 599 (citations omitted); *Traweek v. Gusman*, 414 F. Supp. 3d 847, 860 (E.D. La. 2019) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). The qualified-immunity analysis involves determining: (1) whether the plaintiff has alleged a violation of a federal statutory or constitutional right, and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1130 (5th Cir. 2014) (quoting *Pearson*, 555 U.S. at 232). A court may consider either prong first "in light of the circumstances in the particular case at hand," and it does not need to address both. *Pearson*, 555 U.S. at 236. Yet, the Supreme Court has explained that it is often "beneficial" to begin with the first prong. *Id.*

i. First Amendment claims

Defendants argue that the Court should dismiss Plaintiffs' First Amendment discrimination[123] and retaliation claims because Plaintiffs fail to allege a First Amendment

---

[123] In their seventh cause of action, Plaintiffs allege that Defendants "deprived [Plaintiffs] of their rights and privileges of equal treatment and to be free of gender discrimination in violation of the First and Fourteenth Amendments." R. Doc. 31 at 28. But Defendants' and Plaintiffs' memoranda discuss only First Amendment retaliation claims. Indeed, the First Amendment does not protect against gender discrimination. Thus, to the extent

violation, *i.e.*, they do not allege that they spoke as citizens on matters of public concern. Plaintiffs counter that their alleged communications involve "mixed speech" which sufficiently addressed matters of public concern to support actionable First Amendment claims.[124]

The First Amendment protects public employees, under certain circumstances, when they speak as private citizens on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Therefore, to ascertain whether a public employee has properly alleged a First Amendment violation, courts must first determine whether she spoke as a citizen or as an employee in making the statements on which she bases her claim.[125] *See Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 389 (5th Cir. 2017). A public employee does not speak as a citizen for purposes of the First Amendment if she made statements pursuant to her official duties. *Garcetti*, 547 U.S. at 421; *Cutrer v. McMillan*, 308 F. App'x 819, 821 (5th Cir. 2009). Making this determination requires a fact-intensive analysis, for which the critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Rodriguez*, 687 F. App'x at 389 (quoting *Lane v. Franks*, 573 U.S. 228, 240 (2014)); *see also Corn*, 2020 WL 1471843, at *5 ("[A] public employee's speech is made pursuant to his or her official duties when it is made in the course of performing his employment.") (quotation marks and citations omitted). The focus of this analysis is on "the role of the speaker, rather than the content of the speech." *Rodriguez*, 687 F. App'x at 389 (citations omitted). Even if a claimant has demonstrated she spoke as a citizen, a court must then determine whether the speech is on a

---

Plaintiffs intended to assert § 1983 discrimination claims under the First Amendment, the claims are dismissed with prejudice.

[124] R. Doc. 37 at 13.

[125] "To demonstrate a prima facie case for First Amendment retaliation, a 'plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct.'" *Corn*, 2020 WL 1471843, at *5 n.5 (quoting *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016)). Before the Court is only the second prong, which specifically asks "whether the employee spoke as a citizen on a matter of public concern or pursuant to his or her official duties." *Id.* at *5 (citing *Garcetti*, 547 U.S. at 421).

matter of public concern by analyzing "the content, form, and context of a given statement, as revealed by the whole record." *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

Plaintiffs allege that Skinner and Hollier retaliated against them in response to their February 15, 2019 email in which Plaintiffs complained about gender pay disparities at LSU (New Orleans).[126] They allege that they "were fired for merely asking for equal pay for themselves and the other women at LSU (New Orleans)" as well as for reporting instances of male employees being paid for work they were not performing, and that their "communications about these matters – misuse of public funds and breach of public trust – were not sought or intended as legal advice but, rather, are textbook matters of public concern protected by the First Amendment."[127] The Court will address separately the two categories of speech for which Plaintiffs allege Defendants retaliated against them: complaints about gender pay disparities, as reflected in the February 15, 2019 email; and complaints about male employees being paid for work they did not perform.[128] *See, e.g., Davis v. McKinney*, 518 F.3d 304, 315 (5th Cir. 2008) (dividing the plaintiff's alleged speech into separate components); *Dumas v. St. Tammany Par. Fire Dist. No. 3*, 2017 WL 1969641, at *5-8 (E.D. La. May 12, 2017) (same).

- **February 15, 2019 email**

Defendants do not clearly argue that Plaintiffs were speaking as employees, not private citizens, in regards to their complaints about gender pay disparities, including those stated in the February 15, 2019 email. Defendants' argument that Plaintiffs were fulfilling official duties, and hence were speaking as employees not citizens, largely pertains to Plaintiffs' allegation that they

---

[126] R. Doc. 31 at 28-29.
[127] *Id.* at 20.
[128] To the extent that Plaintiffs are alleging retaliation for other instances in which they complained about pay disparities, *see, e.g.*, R. Doc. 31 at 8 (recounting a meeting between Muslow and Hollier), that speech would be analyzed in the same way as is the February 15, 2019 email below.

were retaliated against for their communications on matters involving LSU's treatment of male employees, not Plaintiffs' February 15, 2019 email.[129]  Regardless, even if Defendants contend that Plaintiffs' complaints about pay disparities constituted speech made as employees not citizens, the fact-intensive nature of this inquiry prevents the Court from conclusively resolving the question at this time.  Consequently, the Court will focus on the question whether the February 15, 2019 email involves matters of public concern.

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."  *Gibson*, 838 F.3d at 482 (citations and quotation marks omitted).  In considering the content, form, and context of a statement to determine whether it involves matters of public concern, "no factor is dispositive."  *Snyder v. Phelps*, 562 U.S. 443, 454 (2011).  Yet, it has been said that "context and form are weighed more heavily than content."  *Davis v. Matagorda Cty.*, 2019 WL 1015341, at *9 (S.D. Tex. Mar. 4, 2019) (citing *Teague v. City of Flower Mound*, 179 F.3d 377, 382 (5th Cir. 1999)), *adopted as amended*, 2019 WL 1367560 (S.D. Tex. Mar. 26, 2019).

### Content

"The content of speech concerns a matter of public concern 'if releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance.'" *Dumas*, 2017 WL 1969641, at *6 (quoting *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001)) (alterations omitted).  In mixed-speech cases, "the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the

---

[129] *See* R. Doc. 35-1 at 16.

government." *Kennedy v. Tangipahoa Par. Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000) (discerning principles from review of Fifth Circuit mixed-speech precedent) (citations omitted).

Defendants assert that the content of Plaintiffs' speech, complaining about "unequal pay for themselves and other female employees," is not a matter of public concern.[130] They point the Court to the Fifth Circuit's statement in *Harmon v. Dallas County*, "Internal personnel disputes and management are rarely a matter of public concern." 927 F.3d at 895. Plaintiffs protest that Defendants ignore their "allegations concerning their reports of payroll fraud and corruption,"[131] but as previously explained, these instances of speech are separate from the February 15, 2019 email. To that end, Plaintiffs argue that their email raised concerns about unequal pay and gender discrimination toward other women at LSU (New Orleans) in addition to themselves, which, they argue, is a matter of public concern.

The Fifth Circuit has held that public safety, race discrimination, sexual harassment, and police misconduct are inherently matters of public concern. *See Valleza v. City of Laredo*, 331 F. Supp. 2d 579, 584 (S.D. Tex. 2004) (collecting cases); *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 844-45 (S.D. Tex. 2003) (same). Allegations of "widespread gender discrimination" relating to a state university medical branch's salaries and job classifications have also been found to "relate[] to the public interest in the very general sense that the public is likely to be concerned about gender discrimination." *Bates*, 425 F. Supp. 2d at 845; *see also Montoya v. Morgan*, 2018 WL 4701795, at *14 (N.D. Fla. Sept. 30, 2018) (explaining that gender discrimination in a public workplace is a matter of public concern). Defendants do not dispute that gender discrimination is

---

[130] R. Doc. 35-1 at 17.
[131] R. Doc. 37 at 14.

or can be a matter of public concern, but rather emphasize that Plaintiffs' complaints of unequal pay were of private concern only.[132]

The vast majority of Plaintiffs' February 15, 2019 email relates to their private compensation concerns. Plaintiffs' email begins specifically by asking Skinner "that [their] salaries be revisited before [they] sign off on [their] employment contracts."[133] It is only toward the end of their email that Plaintiffs state that the pay raises they seek are "not only equitable on their face given the 2017 study, but are also overdue and necessary to ameliorate an environment at [LSU (New Orleans)] that has not seemed historically to view equity as potentially a gendered issue."[134] They then point out that the only remaining woman directly reporting to the chancellor also has had a salary lagging behind male peers, and has been treated like Muslow.

Though Plaintiffs now frame this email as raising gender discrimination at LSU (New Orleans), it is difficult to read it as such when the email specifically complains about Muslow's own salary lagging behind another woman's at the institution, in addition to its lagging behind that of her male counterparts. Plaintiffs complain that they are being treated unfairly, and suggest that this is because the institution may not be viewing the issue as gendered, but they do not clearly sound an alarm about widespread gender discrimination. Nor is it obvious that the email seeks a pay raise for other women. Plaintiffs simply point to the example of the other female direct-report as evidence that the compensation issue is gendered, and note that "there's reason to hope" that the institution will "evolve" because they understand that LSU (New Orleans) is considering raising that woman's pay.[135] All of this is framed as support for the email's principal message that Plaintiffs should receive pay raises.

---

[132] R. Doc. 43 at 7-8.
[133] R. Doc. 31-2 at 1.
[134] *Id.* at 2.
[135] *Id.*

The Fifth Circuit has "cautioned that 'the mere insertion of a scintilla of speech regarding a matter of public concern' is not sufficient to 'make a federal case out of a wholly private matter fueled by private, non-public interests.'" *Bates*, 425 F. Supp. 2d at 845 (quoting *Teague*, 179 F.3d at 382) (alteration omitted). It is questionable that the content of Plaintiffs' speech in the February 15, 2019 email truly raised a matter of public concern, but, at this early stage, viewing the allegations in a light most favorable to Plaintiffs, the Court finds that such speech "raises a slight public concern because it is not concerned with matters *solely* of personal interest," as it can be read to raise instances of gender discrimination at a public institution. *Id.* (emphasis added).

*Form*

"[A]nalysis of the form of the employee's speech focuses primarily on two factors: (1) the simple form or format of the speech," *i.e.*, "the medium used by the speaker and the intended audience;" and "(2) the speaker's motivation." *Bates*, 425 F. Supp. 2d at 845. The latter "comes down to a simple question in most cases: Does the employee seek only personal benefits, or does he or she seek a broader remedy that will serve the public interest?" *Id.* Speech made privately instead of publicly weighs against concluding that it is on a matter of public concern. *See Gibson*, 838 F.3d at 486 (concluding that the form of the speech, a personal-capacity lawsuit, rather than a report to state authorities or a speech made at a public meeting, significantly supported concluding it was not a matter of public concern); *see also Kennedy*, 224 F.3d at 374 ("'The fact that plaintiffs chose not to publicize their complaints is not dispositive.' … 'Rather, the publicization of the speech at issue, appropriately viewed, is simply another factor to be weighed in analyzing whether the speech addressed matters of public concern.'") (quoting *Benningfield v. City of Hous.*, 157 F.3d 369, 374 (5th Cir. 1998), and *Thompson v. City of Starkville*, 901 F.2d 456, 466 (5th Cir. 1990)) (internal brackets and ellipses omitted).

Defendants argue that Plaintiffs' speech, which was directed to their supervisors in an email and closed-door meetings, was made in a private form. Plaintiffs do not dispute that their speech was delivered privately, but argue that the Fifth Circuit has rejected holding that a matter is not of public concern simply because an employee used internal mechanisms to convey it.[136]

The medium of this speech is private, and there is no indication that Plaintiffs were considering "going public" to raise issues of gender pay disparities at LSU (New Orleans). *See Valleza*, 331 F. Supp. 2d at 584. Furthermore, as previously noted, it seems that Plaintiffs sought only pay raises for themselves, not others. While it may be that Plaintiffs "hope[d]" that other women would also receive pay raises, the email does not clearly speak on behalf of other women. Accordingly, the Court finds that the form of this speech is private, and thus this factor weighs against finding that the speech relates to a matter of public concern.

*Context*

Speech is made in the context of a matter of public concern when it occurs "against a backdrop of widespread debate in the community" rather than when it is "made solely in furtherance of a personal employer-employee dispute." *Gibson*, 838 F.3d at 486-87 (citations and quotation marks omitted). Even "[s]peech that is purely private in form may qualify as public-concern speech if the context shows a relation to a matter of active and articulated public concern." *Bates*, 425 F. Supp. 2d at 847. The *Bates* court explains that "[f]or example, in *Givhan* [*v. Western Line Consolidated School District*, 439 U.S. 410 (1979)], the form of speech was private, but the teacher spoke against a background of active public debate on school desegregation and employment policies in her district. In fact, at the time that Givhan was terminated, her school district was the subject of a desegregation order … ." *Bates*, 425 F. Supp. 2d at 847 (citing *Givhan*,

---

[136] R. Doc. 37 at 15-16.

439 U.S. at 411). In contrast to *Givhan*, in *Bates*, "nothing about the context of [the plaintiffs'] speech," which consisted of grievances and EEOC charges in furtherance of their personal employment disputes, "indicate[d] that the public had an active interest in any matter connected with or related to the conditions of [their] employment." *Id.* at 848 (finding that the context of the speech was "wholly private").

As with the speech at issue in *Bates*, Plaintiffs do not allege any "active and articulated public interest" in gender discrimination at LSU (New Orleans), or even LSU as a whole. *See id.* at 847-48. Plaintiffs' argument that the context of the speech weighs in their favor because they allege that they informed Skinner, "the individual responsible for Title IX" compliance at all the LSU campuses, misreads this factor.[137] There are no allegations of any "widespread debate in the community" over LSU's treatment and pay of its female employees. Accordingly, the context of Plaintiffs' speech is private, not public.

In conclusion, while the content of the speech in the February 15, 2019 email marginally weighs in favor of finding that Plaintiffs' complaints of gender-based pay disparity relates to a matter of public concern, the form and context both weigh against such a conclusion, and thus the Court finds that this speech does not relate to a matter of public concern and is not protected by the First Amendment.

- **Reporting instances regarding LSU's treatment of male employees**

Defendants say Plaintiffs admit that their alleged speech concerning LSU's more favorable treatment of male employees was "made in their roles as LSU employees," not as private citizens,[138] because Plaintiffs allege that "these matters were neither sought nor intended as legal advice but *in fulfillment of the requirements of Permanent Memorandum-76*."[139]    Because,

---

[137] R. Doc. 37 at 16.
[138] R. Doc. 35-1 at 16.
[139] R. Doc. 31 at 20 (emphasis added).

Defendants argue, the referenced and incorporated Permanent Memorandum-76 provides that all LSU employees are to report "known or suspected incidents of financial irregularities," any such report "was made as a duty of Plaintiffs as LSU employee[s]."[140]  Plaintiffs do not clearly oppose this point, and indeed do not address whether their allegations show that they were speaking as private citizens, but rather discuss only the content, form, and context of their speech to argue that it relates to a matter of public concern.  While pre-*Garcetti* Fifth Circuit precedent allowed courts to use either the content-form-context test or the citizen-employee test to determine whether public employees' speech relates to a public concern, and for mixed-speech cases, only the former test could be used, "*Garcetti* changed this analysis …[and] added a threshold layer."  *Davis v. McKinney*, 518 F.3d at 311-12.  It is only if the Court determines that Plaintiffs were speaking as private citizens, not pursuant to their official duties, that it is called upon to address the content-form-context test.

Plaintiffs' allegations that their communications about the favorable treatment of male employees fulfilled the requirements of Permanent Memorandum-76 indicate that this speech was made pursuant to their official duties as employees of LSU, and thus was made in their role as employees, not private citizens.  Accordingly, this speech is not protected by the First Amendment.

Because none of Plaintiffs' alleged speech is protected by the First Amendment, Plaintiffs have not stated First Amendment claims, and it is unnecessary to reach the second prong of the qualified-immunity analysis.

---

[140] R. Doc. 35-1 at 16 (emphasis in original).

### ii. Equal-protection retaliation claims

According to Defendants, the Court should dismiss Plaintiffs' equal-protection retaliation claims because such claims are not cognizable. Plaintiffs' opposition does not controvert their argument.

While the Fifth Circuit has not addressed the issue, it appears that almost all circuit courts, as well as all district courts within the Fifth Circuit, agree that "no cause of action exists for retaliation under the Equal Protection Clause of the Fourteenth Amendment." *Davis v. Matagorda Cty.*, 2019 WL 1015341, at *3 n.5; *see also Jones v. Bd. of Supervisors of Univ. of La. Sys.*, 2015 WL 3409477, at *6 (E.D. La. May 27, 2015) (collecting cases); *Matthews v. City of W. Point*, 863 F. Supp. 2d 572, 604 (N.D. Miss. 2012) (same). *But see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 80-81 (2d Cir. 2015) (clarifying its previous "conflicting signals," and holding that "retaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983"). The Court agrees with its sister courts within the Fifth Circuit and the vast majority of circuit courts that no such claim may be maintained.

Even if the Fifth Circuit would hold otherwise, Plaintiffs' claims still fail the second prong of the qualified-immunity analysis because at the time of the challenged conduct, the right to be free from retaliation under the Equal Protection Clause was not clearly established within this circuit. *See Warburton v. John Jay Coll. of Crim. Justice of City Univ. of N.Y.*, 2016 WL 3748485, at *2-3 (S.D.N.Y. July 7, 2016) (holding that defendants were entitled to qualified immunity because the challenged conduct occurred before the Second Circuit's decision in *Vega*). Therefore, Plaintiffs' equal-protection retaliation claims are dismissed with prejudice.

### iii. Equal-protection discrimination claims

Defendants argue that Plaintiffs' equal-protection discrimination claims cannot stand because Plaintiffs do not sufficiently allege either (1) that they were treated differently than other

similarly-situated employees or (2) that such unequal treatment stemmed from a discriminatory intent or purpose.[141]   Specifically, Defendants assert that Plaintiffs' "vague references" to other male employees are insufficient for a viable claim because to be a comparator, they argue, "an individual must be 'similarly situated in all relevant respects.'"[142]   Furthermore, Defendants argue, Plaintiffs do not sufficiently allege that the individual defendants were motivated by a discriminatory intent or purpose in their treatment of Plaintiffs.

In opposition, Plaintiffs first contend that Defendants are using an evidentiary standard, rather than a pleading standard, in their similarly-situated analysis.[143]   Second, they argue that not only have they specifically alleged that the individual defendants were motivated by discriminatory intent, but any further inquiry into whether such intent existed "is a quintessential question of fact that is particularly unsuited for resolution at the pleading stage."[144]

"To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently due to his membership in a protected class and that the unequal treatment stemmed from discriminatory intent."  *Monumental Task Comm., Inc. v. Foxx*, 2016 WL 5780194, at *3 (E.D. La. Oct. 3, 2016) (citing *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 516 (5th Cir. 2015)).

### *Similarly-Situated Employees*

A *prima facie* case of employment discrimination under either Title VII or § 1983 requires showing, *inter alia*, that the employee was treated less favorably than other similarly-situated employees outside the protected group.   *Davis*, 2019 WL 1015341, at *8 (citing *Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017)).   "With respect to the 'similarly situated

---

[141] R. Doc. 35-1 at 20-24.
[142] *Id.* at 20 (citation omitted); R. Doc. 43 at 8-10.
[143] R. Doc. 37 at 17.
[144] *Id.* at 19 (citation omitted).

employees' requirement, a plaintiff must show that he was treated less favorably than others under nearly identical circumstances." *Id.* (quoting *Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016)). However, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Fifth Circuit has also explained, though, that a plaintiff must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [her] case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)) (emphasis in original); *see also Monumental Task Comm.*, 2016 WL 5780194, at *5 (explaining that for an equal-protection claim to survive a Rule 12(b)(6) motion to dismiss, a plaintiff at least "must have alleged facts which plausibly state that … he was treated differently from others similarly situated") (citations omitted).

At the most general level, Plaintiffs have alleged that they were treated differently than their male counterparts.[145] Thus, they have alleged, though barely, sufficient detail to make their claims plausible. That is all that is required at this early stage of the proceeding.

*Discriminatory Intent or Purpose*

"It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim." *Doe v. Silsbee Indep. Sch. Dist.*, 402 F. App'x 852, 855 (5th Cir. 2010) (quoting *United States v. Crew*, 916 F.2d 980, 984 (5th Cir. 1990)). Plaintiffs fail in their amended complaint to sufficiently allege that any of the individual defendants' purported actions or inactions were motivated by a discriminatory intent based on gender. While Plaintiffs argue that whether a defendant had a discriminatory intent is a question of fact,[146] they make no

---

[145] R. Doc. 31 at 9-11.
[146] *See* R. Doc. 37 at 19.

effort to demonstrate how any of their allegations support a plausible claim that the individual defendants were motivated by discriminatory intent. Regarding Skinner, Plaintiffs allege that he "knowingly treated [them] differently *than others* at LSU" and that he made "intentional misrepresentations to Plaintiffs" concerning their complaints "about gendered pay disparities,"[147] but these allegations do not show that such intentional treatment was motivated by gender-based discriminatory intent. The allegations against Hollier and Harman similarly do not contain any allegation of a discriminatory animus underlying their alleged disparate treatment of Plaintiffs. There is no allegation – for example, the use of derogatory language toward women by any defendant – that would make it plausible that their actions were motivated by a discriminatory intent. *See, e.g. Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015) (explaining that a racially-offensive comment is clearly indicative of racial animus) (citation omitted). Accordingly, Plaintiffs have failed to allege equal-protection discrimination claims, and it is unnecessary for the Court to reach the second prong of the qualified-immunity analysis at this point.

### g. *Punitive damages*

Defendants argue that, as a matter of law, Plaintiffs are not entitled to the punitive damages they seek under Title IX and § 1983.[148] They assert that punitive damages are not available under Title IX. Furthermore, they argue that Plaintiffs seek punitive damages under § 1983 against Skinner, Hollier, and Harman in their individual capacities, but Plaintiffs have failed to state such § 1983 claims. Plaintiffs counter that Defendants' argument is "premised entirely on the mistaken assumption" that they do not state actionable claims under § 1983.[149]

---

[147] R. Doc. 31 at 17, 28 (emphasis added).
[148] R. Doc. 35-1 at 24-25.
[149] R. Doc. 37 at 19.

Plaintiffs do not refute that punitive damages are unavailable under Title IX. Furthermore, the Court has found that Plaintiffs have failed to state viable § 1983 claims against the individual defendants in their individual capacities. Accordingly, at this point, Plaintiffs have not stated valid claims for punitive damages.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to strike and for protective order (R. Doc. 33) is GRANTED IN PART and DENIED IN PART. Plaintiffs shall re-file their amended complaint (or a second amended complaint), omitting from it those portions of the exhibits and allegations herein ordered stricken. Plaintiffs are to return to the LSU Board any documents or other information belonging to LSU which came into their possession by virtue of their service as counsel to LSU. In addition, Plaintiffs are ordered to identify to Defendants all persons who have received or viewed any such documents or information.

IT IS FURTHER ORDERED that Defendants' partial motion to dismiss (R. Doc. 35) is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims for declaratory judgment, permanent injunction, front pay in lieu of reinstatement under § 1983, Title IX discrimination and retaliation, § 1983 First Amendment discrimination, § 1983 equal-protection retaliation, and punitive damages under Title IX are dismissed with prejudice.

IT IS FURTHER ORDERED that Plaintiffs have fourteen (14) days from the date of this Order & Reasons to seek leave of court to file a second amended complaint curing the deficiencies in the amended complaint addressed herein.[150] If Plaintiffs fail to cure the pleading deficiencies

---

[150] Rule 15 allows a court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fifth Circuit has recognized that "[i]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of the pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

in the allotted time, the Defendants' motion to dismiss (R. Doc. 35) will also be GRANTED, as to Plaintiffs' claims for reinstatement against Hollier and Harman under § 1983, § 1983 First Amendment retaliation, § 1983 equal-protection discrimination, and punitive damages under § 1983.

New Orleans, Louisiana, this 14th day of April, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE