UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE MUSLOW AND
MEREDITH CUNNINGHAM

CIVIL ACTION

VERSUS

NO. 19-11793

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE, THOMAS
SKINNER, LARRY HOLLIER, AND JON
HARMAN

SECTION M (2)

## ORDER & REASONS

Before the Court is a motion for reconsideration filed by plaintiffs Katherine Muslow and Meredith Cunningham (collectively, "Plaintiffs").[1]   Plaintiffs seek reconsideration of the protective order granted in the Court's April 14, 2020 Order & Reasons (the "O&R").[2] Defendants Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"), Thomas Skinner, Larry Hollier, and Jon Harman (collectively, "Defendants") oppose the motion.[3]   Plaintiffs reply in support of the motion,[4] in response to which Defendants filed a surreply.[5]  Having considered the parties' memoranda, the record, and the applicable law, the Court declines to reconsider the protective order.

## I.    BACKGROUND

This case arises out of an employment dispute involving Plaintiffs, former in-house counsel at the LSU Health Sciences Center in New Orleans ("LSU (New Orleans)"), and LSU, their former employer (and client).  The pertinent facts and procedural history of this case were fully recited in

---

[1] R. Doc. 55.
[2] R. Doc. 45.
[3] R. Doc. 58.
[4] R. Doc. 72.
[5] R. Doc. 76.

the O&R,[6] and will not be restated herein.

In the O&R, the Court struck from the first amended complaint (1) exhibit B, a sealed copy of LSU New Orleans's 2017 employee market study (the "Full Study"),[7] a document belonging to LSU which Plaintiffs obtained in their capacity as attorneys for LSU and used without LSU's consent, and (2) a portion of exhibit D containing communications between LSU and Plaintiffs protected by attorney-client privilege that Plaintiffs used without LSU's consent.  Given Plaintiffs' retention and use of LSU's documents in this litigation without authorization, the Court found good cause to support issuance of a protective order.  The Court ordered Plaintiffs to return to LSU any documents or other information belonging to LSU which came into their possession by virtue of their service as counsel to LSU, and to identify to Defendants all persons who have received or viewed any such documents or information.[8]

## II.      PENDING MOTION

Plaintiffs now ask the Court to reconsider and modify its protective order, so that it excludes nonconfidential public records from its scope and is more narrowly tailored.[9]  Plaintiffs question the Court's reliance on Rule 1.9(c)(1) of the Louisiana Rules of Professional Conduct – which prohibits a lawyer who has formerly represented a client from using information relating to the representation to the disadvantage of the former client – in striking exhibit B from the first amended complaint and formulating the protective order, by arguing that Rule 1.6(b)(5) – which

---

[6] R. Doc. 45 at 1-6.

[7] An *unclassified* version of the 2017 market study is attached to the first amended complaint as exhibit A. *See* R. Doc. 31-1.  Defendants did not move to strike, or object in any way, to Plaintiffs' use of this version of the study, which is attached to the operative complaint, *i.e.*, the second amended complaint.  *See* R. Doc. 50-1.

[8] R. Doc. 45 at 13-17, 20.

[9] R. Doc. 55-1 at 1, 13.  Plaintiffs propose that the protective order be modified to read as follows:

IT IS ORDERED that Exhibits B and D of the First Amended Complaint shall be placed under seal. IT IS FURTHER ORDERED that Plaintiffs and their counsel are hereby enjoined from communicating with other persons to induce them to file suit and from disclosing any confidential information Plaintiffs gained during their employment by the LSU Board of Supervisors.

*Id.* at 1.

they contend provides an exception to Rule 1.9(c)(1) and permits a lawyer to reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client – controls the issue.[10]  Plaintiffs point to caselaw which, in their view, supports the notion that lawyers (including those who work in-house) may rely on privileged or confidential information to establish a claim against a former client, and that preventing attorneys from using confidential or privileged information is inappropriate when less restrictive means are available to protect against unwarranted disclosure of confidential information.[11]  Plaintiffs argue that regardless whether Rule 1.6(b)(5) permits them to rely on confidential information to support their claims in this case, it is improper to enter a protective order with respect to documents subject to disclosure under the Louisiana Public Records Act, La. R.S. 44.1, *et seq.*, including the Full Study, which they assert was produced in response to two public-records requests made by third parties. Therefore, they say, Defendants "consented" to the Full Study's disclosure, and it cannot be considered confidential.[12]  Finally, Plaintiffs argue that that the current protective order is premature and overbroad because it requires Plaintiffs to undergo a fact-specific determination to decide which records are or are not privileged or confidential, which they say cannot be accomplished at this early stage without the benefit of discovery, and because, in their view, it "arguably encompasses information obtained by, or revealed to Plaintiffs, when they were not acting in their capacities as attorneys" or that "cannot [ ] implicate any privilege or confidentiality concerns."[13]  Plaintiffs maintain that "Defendants' professed concerns about privilege and confidentiality can and should be ameliorated with a narrowly-tailored protective order designed

---

[10] *Id.* at 5.
[11] *Id.* at 5-9.
[12] *Id.* at 10-11.
[13] *Id.* at 11-12.

to ensure that such information is not disclosed or filed in the public record until after a judicial determination rather than through a blanket directive to turn over all information from their previous employment with LSU."[14]

In opposition, Defendants begin by emphasizing that at issue is privileged and confidential information belonging to LSU which Plaintiffs retained, without its authorization and outside of the formal public-records-request or discovery processes, following the end of the attorney-client relationship; the issue is not whether Plaintiffs' former representation of LSU acts as a *per se* bar to their wrongful termination claims or access or use of the documents.  Defendants are not claiming that the documents are necessarily barred from production to Plaintiffs in response to a discovery request or that Plaintiffs are barred from seeking their admission into evidence at a later hearing or trial.[15]  Accordingly, Defendants argue, Plaintiffs' reliance on Rule 1.6(b)(5) and related caselaw is misplaced.  Defendants maintain that Rule 1.9(c)(1) controls the issue, and that neither the "generally known" exception (Rule 1.9(c)(1) carves out an exception for information which is "generally known") nor the Rule 1.6(b)(5) exception applies or permits a lawyer's unauthorized removal, retention, and use of documents belonging to her former client.[16]  Defendants assert that they did not consent to Plaintiffs' removal, retention, and use of the Full Study as a result of the Full Study's production in response to public-records requests made by third parties, reiterating that Plaintiffs themselves did not obtain the Full Study through the formal public-records-request mechanism.  That information is available in or as a public record, Defendants explain, does not mean that a lawyer cannot breach the duty of confidentiality by revealing said information in an unauthorized manner.[17]  Finally, Defendants argue that the Court's protective order is not

---

[14] *Id.* at 12-13.
[15] R. Doc. 58 at 6-8.
[16] *Id.* at 9-18.
[17] *Id.* at 19-21.

overbroad or premature, but rather in line with similar decisions by other courts refusing to allow "self-help discovery" (*i.e.*, the improper acquisition of documents belonging to a former-client-turned-adversary outside the formal discovery process). This is especially true since Plaintiffs' proposed protective order fails to remedy Defendants' objections to Plaintiffs' removal, retention, and use of LSU's confidential information "in a manner that negates any consequences to Plaintiffs for violation of Rule 1.9(c)(1)."[18]

In reply, Plaintiffs seek to bolster their previously-espoused arguments by attaching and referencing an affidavit of a lawyer they engaged as an expert in legal ethics, Leslie J. Schiff.[19] Plaintiffs also assert that in previous communications with Plaintiffs' counsel regarding exhibits B and D, Defendants recognized that the Full Study constituted a public record and therefore was not confidential.[20]

In their surreply, Defendants argue that Schiff's affidavit should not be considered because: (1) it presents new evidence in a reply memorandum; (2) it is not newly discovered evidence permissibly considered in support of reconsideration of a previous order; and (3) it is improper expert testimony in that the affidavit merely summarizes facts and offers legal conclusions without analysis on a legal issue within the province of the Court.[21]  Furthermore, Defendants maintain that Plaintiffs fail to respond substantively to any points in their opposition memorandum, thereby exceeding the proper scope of a reply.[22]

---

[18] *Id.* at 22-24.  Defendants also point out that Plaintiffs' proposed protective order addresses exhibits B and D to the first amended complaint, yet these exhibits were stricken by the Court and Plaintiffs do not seek reconsideration of the decision to strike.  Accordingly, Defendants maintain that "Plaintiffs cannot now circumvent or undo portions of the Court's Order & Reasons that are not within the scope of the instant Motion for Reconsideration."  *Id.* at 23.
[19] *See* R. Docs. 72; 72-1.
[20] R. Doc. 72 at 4-5.
[21] R. Doc. 76 at 1-8.  The Court agrees with Defendants and has not, and will not, consider Schiff's affidavit.
[22] *Id.* at 8-9.

### III.    LAW & ANALYSIS

#### A.  Reconsideration Standard

Motions for reconsideration of interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), a district court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).  Unlike motions to alter or amend a judgment under Rule 59(e), "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting 'the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'"  *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)) (internal citations and quotations omitted).  However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays.  *See Calpeco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993) ("if the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] … the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("although a district court *may* revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis in original; alterations, internal quotation marks, and citation omitted); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD

6

H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (3d ed. 2019).

## B. Analysis

The Court reads Plaintiffs' motion as primarily concerned with what they perceive to be the protective order's blanket, permanent, prohibition on their use of confidential or privileged documents and information belonging to LSU. But the protective order does no such thing. The Court **did** order that Plaintiffs return **any** documents or other information – whether privileged, confidential, or not[23] – belonging to LSU which came into their possession by virtue of their service as counsel to LSU.[24] The Court **did not** – and does not now – bar Plaintiffs from seeking those same documents and information through the discovery process or other proper vehicles such as a public-records request. Nor did – or does – the Court prohibit Plaintiffs from ever seeking to use such documents or information in this litigation if later properly obtained.[25]

To the extent that Plaintiffs ask the Court to reconsider ordering that they return to LSU the Full Study,[26] and any other documents or information belonging to and improperly obtained from LSU, the Court declines to do so. In the O&R, the Court explained:

> The Louisiana Rules of Professional Conduct forbid an attorney "who has formerly represented a client in a matter" from "us[ing] information relating to the representation to the disadvantage of the former client" except as the rules permit or require, or "when the information has become generally known." La. R. Prof. Conduct 1.9(c)(1).[27] This is not a situation in which one of the exceptions applies

---

[23] Therefore, Plaintiffs' concern that they are prematurely being asked to sort through which documents may be privileged or confidential is misplaced. Simply put, if Plaintiffs possess documents that belong to LSU or that they obtained as counsel to LSU (such as the Full Study), the documents must be returned.

[24] The Court also ordered that Plaintiffs identify to Defendants all persons who have received or viewed any such documents or information. R. Doc. 45 at 20, 52.

[25] To be clear, the Court did not – and does not now – decide whether the Full Study or any other documents belonging to LSU are discoverable, otherwise properly obtainable, or admissible. Those decisions are left for another day.

[26] As Defendants observe, Plaintiffs do not ask the Court to reconsider striking from the first amended complaint exhibit B and a portion of exhibit D, but their proposed modified protective order includes language as if they **are** seeking such reconsideration. *See supra* note 9 ("Exhibits B and D of the First Amended Complaint shall be placed under seal."). As to exhibit D, Plaintiffs offer no argument why those stricken communications are not privileged, and hence no argument why they should not have been stricken. As to exhibit B (the Full Study), the Court declines to reconsider striking it for the same reasons it declines to reconsider ordering Plaintiffs to return the document to LSU: it belongs to LSU and Plaintiffs obtained it improperly.

[27] This Court has adopted these state rules as its rules of conduct. *See* Local Rule 83.2.3.

nor has it been shown that this information is generally known.[28]

Plaintiffs have not shown, nor do they attempt to show or argue, that the information in the Full Study is "generally known." Rather, Plaintiffs argue that the exception to Rule 1.9(c)(1) provided in Rule 1.6(b)(5) allows them to rely on privileged or confidential information to establish a claim against a former client, pointing to the decision in *Willy v. Administrative Review Board* in which the Fifth Circuit stated that "[a]n in-house lawyer pursuing a wrongful discharge claim must comply with her duty of confidentiality to her former client and *may reveal information to the extent necessary to establish her claim against her employer*."[29] Plaintiffs acknowledge that *Willy*'s holding was cabined to an action before an administrative law judge, not a suit involving a jury and public proceedings, but argue that its "precedent and rationale are equally applicable in this case."[30] As Defendants rightly note,[31] however, the relevant dispute in *Willy* centered on the **admissibility** of documents which the plaintiff sought in discovery (and which the defendant refused to produce), not on the plaintiff's use of documents which were improperly acquired outside of discovery. *See* 423 F.3d at 487-88.

Neither *Willy*, nor Rule 1.6(b)(5),[32] nor any of the cases cited by Plaintiffs authorizes a former attorney (or any former employee, for that matter) to take documents from their former client/employer and thereby to end-run formal processes such as discovery, and then to use those

---

[28] R. Doc. 45 at 17.
[29] R. Doc. 55-1 at 5 (quoting *Willy v. Admin. Review Bd.*, 423 F.3d 483, 500 (5th Cir. 2005)) (internal citation omitted; emphasis in original).
[30] *Id.* at 6 n.4.
[31] R. Doc. 58 at 11.
[32] Rule 1.6(b)(5) reads in full:

    (b)  A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

        ….

        (5)  to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client ….

La. R. Prof. Conduct 1.6(b)(5).

documents in litigation against that former client/employer.  The Court agrees with the federal

court's discussion in *Nesselrotte v. Allegheny Energy, Inc.* of Rule 1.6(c)(4) of the Pennsylvania

Rules of Professional Conduct (virtually identical to Rule 1.6(b)(5) of the Louisiana Rules of

Professional Conduct), cited by Defendants:[33]

> As a threshold point, the Court wishes to draw a distinction between the use
> of privileged information in litigation and the manner or method in which an
> attorney obtains said privileged information.  While Rule 1.6(c)(4) allows an
> attorney to "reveal" "information relating to the representation of a client" in
> specified instances, the Rule does not reference the ***method*** by which a former
> employe[e]-attorney ***obtains*** such information.  Plaintiff apparently contends that
> Rule 1.6(c)(4) not only allows her to use such information in her case ***but justifies***
> ***her conduct in copying and removing privileged and confidential information***
> ***from her former place of employment*** despite the Ethics Code ….  While the
> former is open to argument …, in the Court's estimation, Rule 1.6(c)(4) does not
> justify the method in which Plaintiff removed said documents.  Stated differently,
> to the extent Plaintiff asserts that Rule 1.6(c)(4) allows an in-house attorney to copy
> and remove privileged and/or confidential documents before his or her last day of
> employment in order to use the same in future litigation against her former
> employer, the Court finds that such a reading ignores a well-settled aspect of the
> attorney-client privilege: the privilege belongs to the client, not the attorney. …
> From a practical perspective, such a ruling would wreck havoc on the denouement
> of the employment relationship between in-house attorneys and employers, insofar
> as attorney-employees would copy and remove a slew of documents requiring
> employers (i.e., the clients) to litigate the return of the same (akin to the instant
> case).  As such, the Court refuses to endorse such a reading of Rule 1.6(c)(4).  On
> the contrary, as this Court has stated on numerous occasions, the proper avenue for
> a former employee (even an attorney) to obtain privileged and/or confidential
> documents in support of his or her claims is through the discovery process as set
> forth in the Federal Rules of Civil Procedure, ***not by self-help***.

2008 WL 2858401, at *8 (W.D. Penn. July 22, 2008) (citations omitted; emphasis added).  The

Court refuses to bless Plaintiffs' form of self-help discovery, *i.e.*, "self-help evidence gathering by

a party for use in contemplated litigation."  *Mitchell Co. v. Campus*, 2008 WL 11384203, at *3-4

(S.D. Ala. Apr. 7, 2008) ("Courts are imbued with the inherent power to disallow 'self-help'

discovery which is otherwise violative of ownership or privacy interests and unjustified by any

---

[33] R. Doc. 58 at 15.

exception to the jurisdiction of the courts to administer the orderly resolution of disputes.")
(internal quotation marks and citation omitted); *see also Ashman v. Solectron Corp.*, 2008 WL
5071101, at *3 (N.D. Cal. Dec. 1, 2008) (explaining that former employee who obtained former
employer's documents "is bound by the same discovery rules as any other litigant" and that
"[d]iscovery self-help is not a protected activity") (citation omitted).

Finally, Plaintiffs continue to miss the point in arguing that regardless of the applicability
of Rule 1.6(b)(5), LSU cannot assert the Full Study is confidential or privileged because it was
disclosed pursuant to public-records requests, and thus there should be no limitation on their use
of it.  No matter the litigant, self-help discovery is impermissible, but furthermore, Plaintiffs are
"duty-bound, as are all lawyers, not to disclose [their] client's confidences without authorization
and loyally to serve the interests of [their] client."  *Douglas v. DynMcDermott Petroleum
Operations Co.*, 144 F.3d 364, 369 (5th Cir. 1998).  "Thus, except under specified limited
circumstances, an attorney may not divulge her client's confidences. … A 'confidence' in this
context means exactly what the rule says – any 'information relating to representation of a client.'"
*Id.* at 369-70 (quoting La. R. Prof. Conduct 1.6(a)).  "The ethical duty of confidentiality is not
nullified by the fact that the information is part of a public record or by the fact that someone else
is privy to it."  *Lawyer Disciplinary Bd. v. McGraw*, 461 S.E.2d 850, 861-62 (W. Va. 1995)
(applying substantively identical Rule 1.6(a) of the West Virginia Rules of Professional Conduct
and explaining that the rule "applies to all information relating to representation of a client,
protecting more than just 'confidences' or 'secrets' of a client").  It is irrelevant whether the Full
Study is technically confidential or secret; instead, the crucial point is that the Full Study is
information Plaintiffs obtained solely due to their former positions of trust as lawyers for LSU.

Therefore, within 14 days of entry of this Order & Reasons, Plaintiffs are to return to LSU
all copies of documents in their possession, whether in electronic or hard-copy form, that they

obtained as a result of their former representation of LSU (including, but not limited to, all documents Plaintiffs transmitted to any private email account). Plaintiffs are barred from using or referring to such documents. After all such documents are returned to LSU, Plaintiffs may seek to use any of these same documents if they are obtained through the normal processes of discovery or public-records disclosure. *See Ashman*, 2008 WL 5071101, at *4.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for reconsideration (R. Doc. 55) is DENIED.

New Orleans, Louisiana, this 4th day of August, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE