UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHERINE MUSLOW AND MEREDITH CUNNINGHAM | CIVIL ACTION |
| VERSUS | NO. 19-11793 |
| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, THOMAS SKINNER, LARRY HOLLIER, AND JON HARMAN | SECTION M (2) |

## ORDER & REASONS

Before the Court is a motion to dismiss plaintiffs' second supplemental and amended complaint, filed by defendant Winston DeCuir.[1] Plaintiffs Katherine Muslow and Meredith Cunningham (collectively, "Plaintiffs") oppose the motion.[2] DeCuir replies in support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting DeCuir's motion.

### I. BACKGROUND

This case arises out of an employment dispute. Plaintiffs were formerly employed by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "LSU Board") as attorneys. The LSU Board oversees and manages LSU institutions across Louisiana, including its campuses in Baton Rouge ("LSU (Baton Rouge)") and the LSU Health Sciences Center in New Orleans ("LSU (New Orleans)").[4] Until January 2020, defendant Thomas

---

[1] R. Doc. 82.
[2] R. Doc. 87.
[3] R. Doc. 90.
[4] R. Doc. 50 at 2-3.

Skinner was Vice President of Legal Affairs and General Counsel at LSU (Baton Rouge).[5] DeCuir is Skinner's successor.[6] Defendant Carlton "Trey" Jones, III, is Deputy General Counsel at LSU (Baton Rouge).[7] Defendant Larry Hollier is Chancellor, and defendant Jon Harman Vice Chancellor, Administration and Finance at LSU (New Orleans).[8] Until mid-2019, Muslow was "General Counsel" to LSU (New Orleans) and reported directly to Hollier.[9] Before her employment at LSU (New Orleans), she served as its outside counsel. Likewise, until summer 2019, Cunningham was employed as a staff attorney at LSU (New Orleans) and reported to Muslow.[10] Plaintiffs allege that defendants engaged in various acts of gender discrimination and retaliation, including the termination of their employment at LSU.[11]

When commencing their suit on July 22, 2019, Plaintiffs named as defendants the LSU Board, Skinner, Hollier, and Harman (the "Original Defendants").[12] In response to a motion to dismiss filed by the Original Defendants,[13] Plaintiffs amended their complaint.[14] On April 14, 2020, acting on the Original Defendants' partial motion to dismiss the amended complaint,[15] the Court granted Plaintiffs leave to further amend their complaint.[16] On April 29, 2020, Plaintiffs filed a second supplemental and amended complaint, adding Jones and DeCuir as defendants.[17] DeCuir is explicitly named only in his official capacity and only for purposes of injunctive relief.[18]

---

[5] *Id.* at 3.
[6] *Id.* at 4.
[7] *Id.*
[8] *Id.*
[9] *Id.* at 5, 31.
[10] *Id.* at 5, 29.
[11] *See id.* at 5-36. For a discussion of the pertinent facts as alleged in the second amended complaint, *see* R. Doc. 84 at 1-9.
[12] R. Doc. 1.
[13] R. Doc. 13.
[14] R. Doc. 31. Accordingly, the Court dismissed the first motion to dismiss as moot. R. Doc. 32.
[15] R. Doc. 35.
[16] *See* R. Doc. 45 at 52-53.
[17] *See* R. Doc. 50.
[18] *Id.* at 4.

In the second amended complaint, which is the operative complaint for purposes of this motion, Plaintiffs claim: (1) gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), against the LSU Board; (2) retaliation, in violation of Title VII, against the LSU Board; (3) gender discrimination, in violation of the Equal Pay Act, 29 U.S.C. §§ 201, *et seq.* ("EPA"), against the LSU Board, Hollier, Harman, and Skinner; (4) retaliation, in violation of the EPA, against the LSU Board, Hollier, Skinner, and Jones; (5) gender discrimination, in violation of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, against Harman, Hollier, and Skinner; and (6) retaliation, in violation of the First Amendment to the U.S. Constitution, pursuant to § 1983, against Hollier and Skinner.[19]  As relief, Plaintiffs seek (1) a declaratory judgment that the acts and practices complained of are in violation of federal law; (2) a permanent injunction preventing defendants from engaging in any further unlawful conduct or practices; (3) prospective injunctive relief in the form of reinstatement to their former positions; (4) reinstatement to their former positions or front pay in lieu thereof; (5) lost wages, including back pay, front pay, and lost fringe benefits; (6) liquidated damages under the EPA; (7) compensatory damages; (8) punitive damages against Harman, Hollier, Skinner, and Jones in their individual capacities; (9) attorney's fees, expenses, and costs; (10) prejudgment and postjudgment interest; and (11) any other legal and equitable relief as the Court deems just and proper.[20]

On August 4, 2020, the Court dismissed with prejudice and struck front pay in lieu of reinstatement as available relief for Plaintiffs' § 1983 official-capacity claims, and to the extent they were re-urged, dismissed with prejudice and struck Plaintiffs' requests for declaratory

---

[19] *Id.* at 36-42.
[20] *Id.* at 42-43.

3

judgment and permanent injunction as retrospective relief.[21] The Court also dismissed with prejudice Plaintiffs' § 1983 official-capacity claims against Harman; § 1983 equal-protection discrimination claim against Skinner in his individual capacity; § 1983 First Amendment retaliation claims against Hollier and Skinner in their individual capacities; and punitive damages as an available remedy against Skinner in his individual capacity. Additionally, the Court substituted DeCuir in place of Skinner in his official capacity for all such remaining claims.[22] On August 4, 2020, the Court also dismissed with prejudice any claim against Jones in his official capacity, or for injunctive relief or punitive damages, under the EPA.[23]

## II.   PENDING MOTION

DeCuir moves to dismiss Plaintiffs' official-capacity claims against him.[24] DeCuir argues that any EPA official-capacity claims against him are duplicative of the same claims against the LSU Board.[25] DeCuir also argues that dismissal of the § 1983 individual-capacity claims against Skinner warrants dismissal with prejudice of the related § 1983 official-capacity claims against him.[26] DeCuir maintains that, alternatively, Plaintiffs' § 1983 claims for injunctive relief against him are moot because there are no allegations regarding Skinner's conduct that are applicable to him, and no allegations that he will continue any of the alleged discriminatory or retaliatory practices of his predecessor, Skinner.[27]

In opposition, Plaintiffs argue that their claims against DeCuir are not moot because "he is

---

[21] R. Doc. 84 at 63. Plaintiffs' requests for declaratory judgment and permanent injunction remain available as prospective relief, coupled with reinstatement, only. *See id.* at 11 n.65; R. Doc. 86 at 3-5.
[22] R. Doc. 84 at 63.
[23] R. Doc. 85 at 9.
[24] R. Doc. 82.
[25] R. Doc. 82-1 at 6-8.
[26] *Id.* at 8.
[27] *Id.* at 8-11. DeCuir also argues that simultaneous official-capacity claims against him and against Skinner are duplicative, *id.* at 5-6, but in reply, acknowledges that this issue was addressed by the Court in its August 4, 2020 Order & Reasons considering the Original Defendants' partial motion to dismiss the second amended complaint. R. Doc. 90 at 1-2 (citing R. Doc. 84 at 24 & n.105, 63).

4

perpetuating" an "ongoing wrong by not reinstating plaintiffs to their former employment."[28] They maintain that "by continuing to deny plaintiffs' request for reinstatement, DeCuir necessarily is perpetuating the previous wrongful acts of Skinner (and his co-defendants)."[29]

In reply, DeCuir observes that Plaintiffs do not address his point that simultaneous EPA claims against the LSU Board and against him are duplicative, noting that, in response to a similar argument made by Jones in his motion to dismiss, the Court dismissed any claim under the EPA against Jones for retaliation, injunctive relief, or punitive damages.[30] In response to Plaintiffs, DeCuir asserts that reinstatement as a form of prospective injunctive relief is distinguishable from a factual allegation that Plaintiffs have sought and were denied rehiring.[31] He maintains that there are no allegations that Plaintiffs sought to be rehired and were denied positions, and reiterates that there are no allegations that he is continuing or intends to continue any of Skinner's alleged conduct.[32]

## III. LAW & ANALYSIS

### A. Legal Standards

#### 1. Rule 12(b)(1) standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction. "[A] claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate' the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)). The party asserting

---

[28] R. Doc. 87 at 3.
[29] *Id.* at 4.
[30] R. Doc. 90 at 2-3.
[31] *Id.* at 3-4.
[32] *Id.* at 4-7.

jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Id.* "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 235 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

Article III of the Constitution of the United States specifies that a federal court's "power extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540, 1547 (2016). "A justiciable Article III controversy requires the party instituting the action to have standing and the issue presented to the court to be ripe." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," which developed in the jurisprudence "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 136 S. Ct. at 1547 (citation omitted). The standing "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). A plaintiff must establish standing as to each claim asserted. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. __, 137 S. Ct. 1645, 1650 (2017). Constitutional standing is an element of subject-matter jurisdiction that may be challenged under Rule 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).

The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). The plaintiff must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 at 560–61; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81 (2000)). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Webb v. City of Dall.*, 314 F.3d 787, 791 (5th Cir. 2002).

2. **Rule 12(b)(6) standard**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any

8

documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

First, concerning Decuir's request to dismiss any EPA claims asserted by Plaintiffs against him in his official capacity or for injunctive relief or punitive damages, to which Plaintiffs present no opposition, the Court dismisses any such claims.[33]

Turning to the § 1983 official-capacity claims against DeCuir, the Court also dismisses these claims. Merely because the Court dismissed the § 1983 individual-capacity claims against Skinner does not mean that the related § 1983 official-capacity claims against his successor must also be dismissed, as DeCuir argues without providing any legal authority.[34] *See, e.g., Tenison v. Byrd*, 2018 WL 845651, at *4-6 (W.D. Okla. Jan. 18, 2018) (dismissing § 1983 individual-capacity

---

[33] In response to a similar argument presented by Jones in his motion to dismiss, Plaintiffs stated that they did not sue Jones in his official capacity under the EPA nor did they seek injunctive relief or punitive damages under the EPA against him, remedies which they acknowledged were unavailable under this statute. *See* R. Doc. 69 at 5.

[34] *See* R. Doc. 82-1 at 8.

claims against defendants against whom there were no allegations of personal participation in the alleged constitutional violation, but declining to dismiss the related § 1983 official-capacity claims against the same defendants because a prison policy allegedly played a part in the constitutional violation), *adopted*, 2018 WL 846046 (W.D. Okla. Feb. 12, 2018).

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978). Suits against state officials in their official capacity therefore should be treated as suits against the state. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (citations omitted). Thus, unless "an official's actions reflect an institutional policy that could be assumed to persist under that official's successor," a suit against the official's successor is moot and must be dismissed for lack of subject-matter jurisdiction. *Hoffman v. Jacobi*, 2014 WL 5323952, at *3 (S.D. Ind. Oct. 17, 2014) (citations omitted); *see also ACLU of Miss., Inc. v. Finch*, 638 F.2d 1336, 1345 (5th Cir. 1981) ("[A] court may not exercise its equitable discretion to grant prospective injunctive relief against the successors without a strong factual basis apart from the mere allegations of the complaint for concluding that they will continue the illegal practices of their predecessors.") (citing *Mayor of Phila. v. Educ. Equality League*, 415 U.S. 605, 622-23 (1974), and *Two Guys from Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 588-89 (1961)). "Even if the practices have presently ceased," however, "the case will still not be moot unless the defendants can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *Finch*, 638 F.3d at 1346 (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)) (internal citation omitted).

In analyzing Plaintiffs' § 1983 First Amendment retaliation claims against Skinner and Hollier in their individual capacities, the Court found that none of the speech allegedly made by Plaintiffs is protected by the First Amendment.[35] Even if their speech had been protected and Plaintiffs had otherwise properly alleged a First Amendment claim against Skinner in his individual capacity, Plaintiffs do not allege the existence of a retaliatory policy or custom that could be continued by DeCuir; rather, their allegations of retaliatory conduct are personal to Skinner (and Hollier). *See Lewis v. State of Del. Dep't of Pub. Instruction*, 986 F. Supp. 848, 854 (D. Del. 1997) (dismissing official-capacity claim against successor because the injunctive relief sought against the predecessor was "personal to actions or inactions on the part of [the predecessor]" and there was no allegation that it was the policy of the department in question to follow the intentional practices alleged, or that the successor has, or will, continue the alleged unlawful acts). Therefore, the Court lacks subject-matter jurisdiction over Plaintiffs' § 1983 First Amendment retaliation claim against DeCuir in his official capacity.

As to the equal-protection discrimination claim, Plaintiffs' allegations center around allegedly disparate treatment in compensation and discriminatory practices at LSU (New Orleans).[36] But DeCuir is General Counsel at LSU (Baton Rouge); he is not an official at LSU (New Orleans). In dismissing Plaintiffs' equal-protection claim against Skinner in his individual capacity, the Court reasoned that Plaintiffs alleged that they came to Skinner (who as General Counsel at LSU (Baton Rouge) headed the Office of General Counsel, where Plaintiffs' positions were being consolidated) to complain about the allegedly discriminatory harm, not that Skinner himself caused it.[37] Plaintiffs simply do not allege that the General Counsel or other officials at

---

[35] *See* R. Doc. 84 at 35-62.
[36] R. Doc. 50 at 6-24, 35-36.
[37] R. Doc. 84 at 34.

11

LSU (Baton Rouge) set or influenced their salaries, or otherwise discriminated against them. Accordingly, there is no allegation of a discriminatory policy or custom at LSU (Baton Rouge), or one implemented by the Office of General Counsel at LSU (Baton Rouge), and thus, there can be no showing that DeCuir would continue any such discriminatory policy or custom were Plaintiffs to be reinstated.[38] Nor is there any allegation that DeCuir would repeat the discriminatory harm which Plaintiffs allege they faced at LSU (New Orleans), were Plaintiffs to be reinstated to positions now at LSU (Baton Rouge). This claim is dismissed for lack of subject-matter jurisdiction.

### IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that DeCuir's motion to dismiss Plaintiffs' second amended complaint (R. Doc. 82) is GRANTED.[39]

New Orleans, Louisiana, this 17th day of August, 2020.

                                                                  _____
                                                                  BARRY W. ASHE
                                                                  UNITED STATES DISTRICT JUDGE

---

[38] Moreover, as DeCuir asserts, he cannot possibly be continuing an alleged constitutional violation by continuing to deny Plaintiffs reinstatement when there is no allegation that they have been denied reinstatement.

[39] While DeCuir was substituted in place of Skinner as to any official-capacity claims asserted against Skinner in the Court's August 4, 2020 Order & Reasons considering the Original Defendants' partial motion to dismiss the second amended complaint, see R. Doc. 84 at 23 & 64, the Court addresses the substance of these claims here, and now dismisses DeCuir as a defendant in this matter completely.