UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE MUSLOW, *et al.*                       CIVIL ACTION

VERSUS                                           NO. 19-11793

BOARD OF SUPERVISORS OF                          SECTION M (2)
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE, *et al.*

## ORDER & REASONS

Before the Court is the partial motion of defendants Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "LSU Board"), Thomas Skinner, Larry Hollier, Jon Harman, and Carlton Trey Jones, III (collectively, "Defendants") to dismiss plaintiffs' third supplemental and amended complaint.[1]   Plaintiffs Katherine Muslow and Meredith Cunningham (collectively, "Plaintiffs") oppose the motion.[2]   Defendants reply in further support of their motion.[3]   Plaintiffs file a surreply in response.[4]   Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying Defendants' partial motion to dismiss Plaintiffs' third supplemental and amended complaint (except to the extent the Court confirms previous rulings dismissing certain claims).

## I.    BACKGROUND

### A.  Factual Background

This case arises out of an employment dispute.  Plaintiffs were formerly employed by the LSU Board as attorneys.   The LSU Board oversees and manages LSU institutions across Louisiana, including its campuses in Baton Rouge ("LSU (Baton Rouge)") and the LSU Health

---

[1] R. Doc. 100.
[2] R. Doc. 101.
[3] R. Doc. 104.
[4] R. Doc. 107.

Sciences Center in New Orleans ("LSU (New Orleans)").[5]   Until January 2020, defendant Thomas Skinner was Vice President of Legal Affairs and General Counsel at LSU (Baton Rouge).[6]   Jones is Deputy General Counsel at LSU (Baton Rouge).[7]   Defendant Larry Hollier is Chancellor of LSU (New Orleans).[8]   Defendant Jon Harman was Vice Chancellor, Administration and Finance at LSU (New Orleans) until he was dismissed this past summer.[9] Until mid-2019, Muslow was "General Counsel" to LSU (New Orleans) and reported directly to Hollier.[10]   Before her employment at LSU (New Orleans), she served as its outside counsel.[11] Likewise, until summer 2019, Cunningham was employed as a staff attorney at LSU (New Orleans) and reported to Muslow.[12]

According to Plaintiffs, in 2017, LSU (New Orleans) conducted a market study to assess the equity of its salary structure (the "Study").[13]   Due to her part-time status, Cunningham was deemed ineligible for a salary assessment under the Study,[14] although the Study – unbeknownst to her at the time – did rank her position within a paygrade and established a salary range for it, but Muslow, who was a full-time employee, also had her salary assessed.[15]   Plaintiffs allege that the Study showed that Muslow's salary was well below the "minimum" for the paygrade assigned to her position, despite having worked for LSU (New Orleans) for decades.[16] Sometime after this information was provided, Muslow learned that Hollier, with Harman's

---

[5] R. Doc. 99 (third supplemental and amended complaint) at 2 (incorporating ¶ 5 of the second supplemental and amended complaint, R. Doc. 50-4 ("SSAC")).

[6] *Id.* at 2.

[7] *Id.* at 3.

[8] *Id.* (incorporating ¶ 9 of SSAC).

[9] *Id*.

[10] *Id.* at 4 (incorporating ¶ 16 of SSAC).

[11] *Id.* at 4, 7 (incorporating ¶ 16 of SSAC).

[12] *Id.* at 4, 7 (incorporating ¶ 17 of SSAC).

[13] *Id.* at 4 (incorporating ¶¶ 22 & 24 of SSAC); *see also* R. Doc. 50-1.

[14] R. Doc. 99 at 4 (incorporating ¶¶ 32-33 of SSAC).   Plaintiffs allege that other part-time employees did have their salaries assessed, and that this selective assessment of part-time employees' salaries "disparately and adversely impacted women working at LSU (New Orleans)."   *Id.* (incorporating ¶¶ 32-33 of SSAC).

[15] *Id.* (incorporating ¶ 34 of SSAC).

[16] *Id.* (incorporating ¶ 35 of SSAC).

concurrence, intended to increase her salary as a result of the Study, but only to a level that still fell below the minimum for the relevant paygrade.[17]  Plaintiffs allege that Hollier and Harman intended to treat similarly the only other female direct-report to Hollier.[18]  Muslow allegedly then confronted Hollier in a face-to-face meeting during which Muslow "explicitly advised Hollier that gender pay disparities existed at LSU (New Orleans)," that despite knowledge of these disparities, Hollier was not acting to ameliorate them, and that "those persistent disparities posed a risk to the institution."[19]  Hollier subsequently agreed to raise to the minimum level for their respective paygrades the salaries for Muslow and the two other female employees in the Chancellor's Office (including the other female direct-report to Hollier) for whom Muslow also advocated.[20]

Plaintiffs allege that in October 2018, Muslow – the employee responsible for responding to public-records requests – was assigned such a request for the Study (which Plaintiffs had not yet viewed in whole); and Muslow provided the requester electronic copies of the Study.[21] Plaintiffs allege that the complete version of the Study reveals that they and other women working in the Chancellor's Office were paid "dramatically less than their male counterparts," and that these wage disparities were apparent on the face of the Study, enumerating various examples.[22]  According to Plaintiffs, Hollier manipulated the paygrade of one of Muslow's counterparts to obscure even more dramatic disparities.[23]  Furthermore, they say, the disparities apparent from the face of the Study are vastly understated due to exclusion of categories of

---

[17] *Id.* (incorporating ¶ 39 of SSAC).
[18] *Id.* (incorporating ¶ 41 of SSAC).
[19] *Id.* (incorporating ¶ 44 of SSAC).
[20] *Id.* (incorporating ¶ 45 of SSAC).
[21] *Id.* (incorporating ¶¶ 48-57 of SSAC).
[22] *Id.* (incorporating ¶¶ 57-65 of SSAC).
[23] *Id.* (incorporating ¶ 60 of SSAC).

"extra" compensation paid only to men working in the Chancellor's Office.[24]  Plaintiffs allege that the LSU Board, Hollier, and Harman took no action to correct these disparities, but rather perpetuated them by increasing the salaries of Plaintiffs' male counterparts in October 2018 based on purely subjective and arbitrary factors, while not raising – or even considering raising – Plaintiffs' pay.[25]  Plaintiffs also say that men at LSU (New Orleans) are treated preferentially in that they are given "substantial latitude about performing their job responsibilities in ways that women are not," about which Plaintiffs complained.[26]  They allege that Hollier was particularly dismissive of complaints of gender discrimination, disparate pay, and retaliation brought by women employees.[27]  Plaintiffs allege that they complained about gender pay disparities to human-resources officials, and Muslow spoke with other women employees at LSU (New Orleans) regarding the full Study's revelations, but many women expressed fear that the apparent disparities would not be remedied and that complaints would be met with retaliation.[28]

Plaintiffs say that in December 2018 they were notified that all existing legal positions at LSU, including theirs, would be consolidated under a single Office of General Counsel (the "OGC") at LSU (Baton Rouge), even though until that point they had rarely worked or communicated with the attorneys at LSU (Baton Rouge), including Skinner, who was hired in 2015 to fill the recently-created position of "General Counsel."[29]  Around this time (December 2018), a new position entitled "Deputy General Counsel" was created for Jones, who had originally been hired in 2017 for the position of "Managing Attorney" at LSU (Baton Rouge).[30]  For this new position, Jones's salary would be raised, "purportedly as compensation for

---

[24] *Id.* (incorporating ¶¶ 66-72 of SSAC); *see also id.* at 4-5 (incorporating ¶¶ 81-95 of SSAC) (alleging that men, but not women, in the Chancellor's Office also benefitted from a nepotistic patronage system).
[25] *Id.* at 4 (incorporating ¶¶ 73-80 of SSAC).
[26] *Id.* at 5 (incorporating ¶ 92 of SSAC).
[27] *Id.* (incorporating ¶¶ 92-95 of SSAC).
[28] *Id.* (incorporating ¶¶ 96-98 of SSAC).
[29] *Id.* (incorporating ¶¶ 99-102 of SSAC).

'supervising' Muslow and Cunningham, as well as attorneys at the other LSU campuses."[31] Plaintiffs allege that despite their own qualifications for this position, they were not given the opportunity to apply for it, nor were other members of the LSU community or the general public.[32]   In January 2019, Plaintiffs met with Skinner and Jones, who reiterated their prior representations to Plaintiffs that Plaintiffs' positions at LSU (New Orleans) would remain unchanged other than their consolidation under the OGC, whereby Plaintiffs would be employed by LSU (Baton Rouge) and "leased" to LSU (New Orleans).[33]   Under the new organizational structure presented to them, Muslow's position would be rendered subordinate to Jones, "even though [her] legal experience exceeded [his] by almost twenty years," and Cunningham's position would be rendered subordinate to all OGC lawyers and staff employed by LSU (Baton Rouge).[34]   Plaintiffs allege that the "consolidation" was "in name only," noting that it became apparent that neither Jones nor Skinner had specific plans to consolidate OGC's operations with LSU (New Orleans) and that no information or support was given to Plaintiffs "that would have accompanied a genuine consolidation."[35]

In January 2019, Plaintiffs received emails from the OGC's business manager welcoming them and providing them with steps to set them up within the LSU (Baton Rouge) human-resources system, for which Plaintiffs provided the requested information.[36]   Plaintiffs allege that before they completed this process, they received employment contracts executed by Skinner for their respective positions with the same salaries they had been paid to that date.[37]

---

[30] *Id.* (incorporating ¶¶ 103-106 of SSAC).
[31] *Id.* (incorporating ¶ 106 of SSAC).
[32] *Id.* (incorporating ¶ 107 of SSAC).
[33] *Id.* (incorporating ¶ 108 of SSAC).
[34] *Id.* (incorporating ¶¶ 110-111 of SSAC).
[35] *Id.* (incorporating ¶¶ 112-113 of SSAC).
[36] *Id.* (incorporating ¶¶ 114-115 of SSAC).
[37] *Id.* (incorporating ¶ 116 of SSAC).

On February 15, 2019, Plaintiffs wrote to Skinner asking that, before signing the contracts, "their salaries be reviewed and raises given to bring their compensation in line with those of their male counterparts at LSU (New Orleans)," and stating that they had been discriminated against on the basis of their gender through disparate pay practices at the institution.[38]  They believe that this was the first time concerns regarding gender pay disparities arising from the Study were presented to a person outside the LSU (New Orleans) chain of command.[39]  Plaintiffs thought that Skinner, who was an attorney and directly responsible for Title IX compliance at all LSU campuses, would take their complaints seriously, but instead, rather than responding or ever acknowledging receipt of the email, Plaintiffs say, Skinner went straight to Hollier and asked him what he wanted to do; and the next business day, Skinner rescinded Plaintiffs' contracts "'pending further review' on the pretext that Plaintiffs had not signed them," even though "neither Plaintiff had been given a deadline within which to execute the contracts."[40]  Plaintiffs allege that following the rescission, their work environment at LSU (New Orleans) changed: work was diverted away from them, and employees were discouraged from communicating with them.[41]  Plaintiffs say they met with Hollier, who "feigned confusion about [their] positions" and told them that their "jobs were 'moving to Baton Rouge' because Plaintiffs 'had not responded' to [the] OGC's offers of employment," to which Plaintiffs replied that they had indeed "responded to the 'offers'" and had completed the steps required by LSU (Baton Rouge) human resources to move to the OGC.[42]  After Plaintiffs emailed Hollier and Skinner asking for clarification about their positions, these two defendants notified Plaintiffs on March 1, 2019, in separate emails, that not only had their "so-called Employment Contracts been

---

[38] *Id.* at 6 (incorporating ¶ 117 of SSAC).
[39] *Id.* (incorporating ¶ 118 of SSAC).
[40] *Id.* (incorporating ¶¶ 119-124 of SSAC).
[41] *Id.* (incorporating ¶ 127 of SSAC).
[42] *Id.* (incorporating ¶¶ 128-130 of SSAC).

rescinded" but also that their positions at LSU (New Orleans) would be "retired" effective June 30, 2019, and equivalent positions would be advertised to the public, even though, to Plaintiffs' knowledge, they had already been moved to the OGC following that office's "welcome" notifications.[43]   Harman and Jones were copied on these emails, along with two other LSU administrators who Plaintiffs allege there was no reason to copy "other than to intimidate Plaintiffs."[44]   Skinner allegedly represented that Plaintiffs' requested salaries exceeded those established by research conducted by the human-resources department at LSU (Baton Rouge); although Plaintiffs requested more than once that this research be provided to them, Skinner did not respond to or acknowledge this request.[45]

On March 26, 2019, Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), and on March 28, 2019, they gave notice of the charges to Skinner, Hollier, Harman, Jones, and the other LSU administrators who had been copied on the March 1, 2019 emails.[46]   On March 29, 2019, Hollier mailed certified letters, dated March 25, 2019, to Plaintiffs' home addresses, stating that Plaintiffs' positions would be eliminated and their employment terminated, effective June 30, 2019.[47]   A few days before June 30, 2019, Defendants allegedly "'extended' Muslow's employment to July 15 for pretextual reasons."[48] Plaintiffs allege that the "real reason" was that June 30, 2019, was eight days before Muslow would become eligible to retire under the Teacher's Retirement System of Louisiana plan in which she was enrolled during her LSU (New Orleans) employment, and so Defendants were avoiding denying her these benefits "for litigation purposes."[49]

---

[43] *Id.* (incorporating ¶ 131 of SSAC).
[44] *Id.* at 7 (incorporating ¶ 133 of SSAC).
[45] *Id.* (incorporating ¶¶ 134-136 of SSAC).
[46] *Id.* (incorporating ¶¶ 133, 137 of SSAC).
[47] *Id.*
[48] *Id.* at 10 (incorporating ¶ 146 of SSAC).
[49] *Id.* (incorporating ¶¶ 147-149 of SSAC).

Plaintiffs allege that in summer 2019, Defendants selected a man to replace Muslow.[50] According to Plaintiffs, after a committee of LSU (New Orleans) administrators selected finalists from a pool of applicants, Hollier "was given final decision-making authority on the selection subject to Jones's input.  That selection procedure notwithstanding, Jones boasted about having the final say over the hire."[51]  They allege that the most recent organizational chart for LSU (New Orleans) shows Muslow's replacement as "General Counsel" and as a direct report to Hollier – which was Muslow's status before the supposed consolidation – rather than "Chief Legal Officer" for LSU (New Orleans) within the OGC reporting structure at LSU (Baton Rouge).[52]  Plaintiffs add that other than their own positions, no other attorneys at other LSU campuses were "consolidated" into the OGC.[53]

Plaintiffs allege that on September 4, 2019, an email complaining of waste and corruption at LSU (New Orleans) was sent to various faculty members at this campus, including many members of the Faculty Senate.[54]  That September and October, seven complaints, including complaints of gender discrimination, were made to the university's ethics hotline.[55]  In response, Hollier decided to make a presentation to the Faculty Senate; while the presentation was being prepared, "it was surmised that Muslow was responsible" for the September 4, 2019 email (Plaintiffs allege she was not), angering Hollier, who stated that she "wasn't worth the money she was paid."[56]  Plaintiffs allege that Hollier's presentation was made on October 8, 2019, during which he acknowledged various concerns, but did not address the fear of retaliation raised in several of the complaints; instead, he and Harman "took steps to intimidate employees who

---

[50] *Id.* (incorporating ¶ 151 of SSAC).
[51] *Id.*
[52] *Id.* (incorporating ¶ 154 of SSAC).
[53] *Id.* at 10-11.
[54] *Id.* at 11 (incorporating ¶ 157 of SSAC).
[55] *Id.* (incorporating ¶ 158 of SSAC).
[56] *Id.*

they suspected might have information helpful to Plaintiffs' case."[57]   At a February 11, 2020 Faculty Senate meeting, Hollier responded to a request that all salaries be publicized online as they had been in the past to ensure female employees are paid equivalently to male employees with the same rank/experience, by stating that this would require approval by the systems office.[58]   Plaintiffs allege that Hollier is wrong about this and that he is only promoting the sort of pay secrecy that has inhibited equal pay for decades.[59]   Plaintiffs also allege that Hollier twice, at unspecified times, made dismissive remarks in response to complaints of gender discrimination, disparate pay, and retaliation by other women employees.[60]

## B.  Procedural Background

When commencing their suit on July 22, 2019, Plaintiffs named as defendants the LSU Board, Skinner, Hollier, and Harman.[61]   In response to a motion to dismiss filed by Defendants,[62] Plaintiffs amended their complaint.[63]   On April 14, 2020, acting on Defendants' partial motion to

---

[57] *Id.* (incorporating ¶¶ 160-163 of SSAC).    Specifically, Plaintiffs allege that in September 2019, Harman met with the Assistant Director (Employee Relations & Talent Management), with whom Plaintiffs had raised their concerns over pay disparities, and questioned her in a way that left her with the impression that the meeting was meant to intimidate her; she was fired a month later, despite having worked at LSU (New Orleans) for many years. *Id.* (incorporating ¶¶ 164-168 of SSAC).  Plaintiffs add that three other long-time employees, one of whom was aware of the matters raised in Plaintiffs' complaint, were terminated around the same time.  *Id.* (incorporating ¶ 169 of SSAC).
[58] *Id.* (incorporating ¶¶ 175-176 of SSAC).
[59] *Id.* (incorporating ¶ 177 of SSAC).
[60] *Id.* at 5 (incorporating ¶¶ 93-95 of SSAC).
[61] R. Doc. 1.
[62] R. Doc. 13.
[63] R. Doc. 31.  Accordingly, the Court dismissed Defendants' first motion to dismiss as moot.  R. Doc. 32.
In the amended complaint, which is no longer the operative complaint, Plaintiffs claimed: (1) gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), against the LSU Board; (2) retaliation, in violation of Title VII, against the LSU Board; (3) gender discrimination, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.* ("Title IX"), against the LSU Board; (4) retaliation, in violation of Title IX, against the LSU Board; (5) gender discrimination, in violation of the Equal Pay Act, 29 U.S.C. §§ 201, *et seq.* ("EPA"), against all Defendants; (6) retaliation, in violation of the EPA, against the LSU Board, Hollier, and Skinner; (7) gender discrimination, in violation of the First and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, against Harman, Hollier, and Skinner; and (8) retaliation, in violation of the First and Fourteenth Amendments, pursuant to § 1983, against Hollier and Skinner. As relief, Plaintiffs sought (1) a declaratory judgment that the acts and practices complained of are in violation of federal law; (2) a permanent injunction preventing Defendants from engaging in any further unlawful conduct or practices; (3) prospective injunctive relief in the form of, *inter alia,* reinstatement to their former positions; (4) reinstatement to their former positions or front pay in lieu thereof; (5) lost wages, including back pay, front pay, and lost fringe benefits; (6) liquidated damages under the EPA; (7) compensatory damages; (8) punitive damages against

dismiss the amended complaint,[64] the Court (1) dismissed with prejudice Plaintiffs' claims for declaratory judgment, permanent injunction, front pay in lieu of reinstatement under § 1983, Title IX discrimination and retaliation, § 1983 First Amendment discrimination, § 1983 equal-protection retaliation, and punitive damages under Title IX; and (2) granted Plaintiffs leave to further amend their complaint in order to cure pleading deficiencies in their claims for reinstatement against Hollier and Harman under § 1983, § 1983 First Amendment retaliation, § 1983 equal-protection discrimination, and punitive damages under § 1983.[65]

On April 29, 2020, Plaintiffs filed a second supplemental and amended complaint, adding Jones and DeCuir as defendants.[66]  Defendants the LSU Board, Skinner, Hollier, and Harman filed a partial motion to dismiss the second supplemental and amended complaint[67] and Jones[68] and DeCuir[69] each filed his own motion to dismiss the latest complaint.  On August 4, 2020, this Court granted in part and denied in part the partial motion to dismiss by the LSU Board, Skinner, Hollier, and Harman,[70] and Jones's motion to dismiss.[71]  The Court dismissed with prejudice and struck front pay in lieu of reinstatement as available relief for Plaintiffs' § 1983 official-capacity claims and requests for declaratory judgment and permanent injunction as retrospective relief.[72] The Court also dismissed with prejudice § 1983 official-capacity claims against Harman, the § 1983 equal-protection discrimination claim against Skinner in his individual capacity, § 1983 First Amendment retaliation claims against Hollier and Skinner in their individual capacities,

---

Harman, Hollier, and Skinner in their individual capacities; (9) attorney's fees, expenses, and costs; (10) prejudgment and postjudgment interest; and (11) any other legal and equitable relief as the Court deems just and proper.  R. Doc. 31 at 22-30.
[64] R. Doc. 35.
[65] *See* R. Doc. 45 at 52-53.
[66] *See* R. Doc. 50.
[67] R. Doc. 56.
[68] R. Doc. 57.
[69] R. Doc. 82.
[70] R. Doc. 84.
[71] R. Doc. 85.
[72] R. Doc. 84 at 63.

punitive damages as an available remedy against Skinner in his individual capacity,[73] and EPA official-capacity claims for retaliation against Jones.[74]   Additionally, the Court substituted DeCuir in place of Skinner for all remaining § 1983 official-capacity claims.[75]   Thereafter, on August 18, 2020, this Court considered the § 1983 official-capacity claims remaining against DeCuir and granted his motion dismissing him from the case with prejudice.[76]

In the third supplemental and amended complaint, which is the operative complaint for this motion, Plaintiffs claim (1) gender discrimination, in violation of Title VII, against the LSU Board; (2) retaliation, in violation of Title VII, against the LSU Board; (3) gender discrimination, in violation of the EPA, against the LSU Board, Hollier, Harman, and Skinner; (4) retaliation, in violation of the EPA, against the LSU Board, Hollier, Skinner, and Jones; and (5) gender discrimination, in violation of the Fourteenth Amendment to the U.S. Constitution, pursuant to § 1983, against Harman and Hollier.[77]   Plaintiffs seek (1) injunctive relief in the form of, *inter alia*, reinstatement to their former positions and any related declaratory relief; (2) reinstatement to their former positions or front pay in lieu thereof; (3) lost wages, including back pay, front pay, and lost fringe benefits; (4) liquidated damages under the EPA; (5) compensatory damages; (6) punitive damages against Harman and Hollier in their individual capacities; (7) attorney's fees, expenses, and costs; (8) prejudgment and postjudgment interest; and (9) any other legal and equitable relief as the Court deems just and proper.[78]

---

[73] *Id.*
[74] R. Doc. 85 at 9.
[75] R. Doc. 84 at 63.
[76] R. Doc. 91.
[77] R. Doc. 99 at 12-16.
[78] *Id.* at 16-17.

## II.     PENDING MOTION

### A. Uncontested Issues

Despite the rounds of motions and amendments at this early stage of the proceedings, the parties do find points of agreement.  Defendants argue that this Court has already dismissed Winston DeCuir as a defendant, struck front pay in lieu of reinstatement as a remedy for the official-capacity § 1983 claims, and removed retaliation claims under § 1983 against Skinner by substituting DeCuir in his place (who has since been dismissed).[79]  Plaintiffs agree that these claims have been dismissed, clarify that the remedy of front pay was stricken in regards to their official-capacity claims against Hollier under § 1983, and indicate that the § 1983 claim as to First Amendment retaliation was only mentioned to reserve their right to appeal.[80]  Therefore, based on the agreement of the parties, the Court confirms that DeCuir has been dismissed with prejudice from these proceedings and that "front pay in lieu of reinstatement" as a remedy for official-capacity claims against Hollier under § 1983 has been stricken from the complaint with prejudice.  The Court agrees that a § 1983 retaliation claim was not asserted against Skinner in the third supplemental and amended complaint.  In an abundance of caution, to the extent that the third supplemental and amended complaint can be read to assert any of these claims, they are hereby dismissed with prejudice.

### B. Contested Issues

Defendants argue that the following claims should also be dismissed with prejudice.[81]  First, Defendants argue that there is no viable official-capacity reinstatement claim against Hollier under § 1983 because he does not have authority to reinstate Plaintiffs to their former

[79] R. Doc. 100-1 at 6-7.
[80] R. Doc. 101 at 6-7.
[81] R. Doc. 100-1 at 24.

12

positions.[82]  Second, Plaintiffs do not present an EPA discrimination claim, Defendants assert, because they do not present evidence of male co-workers who do similar work as Plaintiffs, but are compensated better.[83]  Third, Defendants argue that there are no individual-capacity claims against Skinner and Jones because they are not "employers" as defined by the EPA.[84]  Finally, Defendants contend that Plaintiffs fail to state a Title VII wage discrimination claim, because again, they do not present evidence of male comparators to demonstrate the gendered pay gap. [85]

Plaintiffs oppose Defendants' arguments but seek leave to amend their complaint if the Court accepts any of them.[86]  Plaintiffs argue that whether Hollier had "authority" over Plaintiffs under § 1983 and whether Skinner and Jones were "employers" under the EPA are fact issues that should be decided after more discovery has taken place.[87]  Plaintiffs further assert that this Court has already decided that they have sufficiently pleaded the existence of male comparators who are paid more than Plaintiffs and, they argue, these rulings should apply equally to both their Title VII and EPA discrimination claims.[88]

## III.     LAW & ANALYSIS

### A.  Legal Standards

#### 1.  Rule 12(b)(1) standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction.  "'[A] claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate" the claim.'"  *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quoting *In re FEMA*

---

[82] *Id.* at 7-9.
[83] *Id.* at 10-15.
[84] *Id.* at 15-22.
[85] *Id.* at 22-23.
[86] R. Doc. 101 at 2, 18-19.
[87] *Id.* at 7-12, 19-23.
[88] *Id.* at 13-19.

*Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012)).   The party

asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists.   *Id.*

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).   "A motion to dismiss for lack of

subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot

prove any set of facts in support of his claims entitling him to relief."   *Sureshot Golf Ventures,*

*Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 239 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of*

*Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

     **2.   Rule 12(b)(6) standard**

     The Federal Rules of Civil Procedure require a complaint to contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   The statement of the claim must

"'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   A pleading does

not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the

elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

     Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss

for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B. Analysis

**1. Under binding Fifth Circuit precedent, Rule 12(g) does not bar subsequent motions to dismiss for failure to state a claim that could have been asserted previously.**

At the outset, Plaintiffs question Defendants' right to raise arguments in their current motion to dismiss that "could have (and should have) been raised in any of Defendants' [three] prior motions."[89]   Federal Rule of Civil Procedure 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier [Rule 12] motion."   The purpose of this provision "is to consolidate defenses and to promote early resolution of such issues."   *In re Micron Tech., Inc.*, 875 F.3d 1091, 1097 (Fed. Cir. 2017).   Rule 12(h)(2) prescribes that "[f]ailure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."

For most categories of Rule 12 motions, the key to this analysis is whether the defense was previously *available*.   "A defense is not 'available' under Rule 12(g)(2), for instance, if 'its legal basis did not then exist,' or if the defense would have been 'futile' in the sense it was precluded by controlling precedent."   *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) (internal citations and alteration omitted). A defense is unavailable if it involves "'facts of which [the defendant] was not, and could not have been expected to have been, aware.'"   *Flock v. Scripto-Tokai Corp.*, 2001 WL 34111630, at *3 (S.D. Tex. July 23, 2001) (quoting *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983)).   For example, the Fifth

---

[89] R. Doc. 101 at 1.

Circuit recently observed that "lack of personal jurisdiction is waived if a party omits the defense from a Rule 12 motion and the defense was 'available,'" but went on to hold that the defense was not available or waived under the facts of the case.  *Cruson*, 954 F.3d at 249.

Amended pleadings do not present unlimited opportunities to file subsequent motions to dismiss.  "An amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading.  An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended." *Gilmour v. Blue Cross & Blue Shield*, 2019 WL 2147580, at *2 n.2 (W.D. Tex. Mar. 6, 2019) (quoting *Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974)) (alteration omitted).  "To hold otherwise would permit a defendant to revive any otherwise waived defenses any time that a plaintiff files an amended complaint with additional clarifying details."  *Gilmour*, 2019 WL 2147580, at *2.

These authorities tend to favor Plaintiffs' position here.  However, the Fifth Circuit draws an important distinction for arguments for failure to state a claim upon which relief can be granted.  Since "'Rule 12(h)(2) explicitly excepts from the consolidation requirement motions based on the defense of failure to state a claim upon which relief can be granted,'" successive Rule 12(b)(6) motions for failure to state a claim are not barred by Rule 12(g)'s consolidation requirement.  *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017) (quoting *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007)). The *Doe* court explained further that "even if Rule 12(h)(2) should not be interpreted this way, there was no harm in allowing the second motion," since a district court has the discretion to treat the argument as having been raised in a Rule 12(c) motion for judgment on the pleadings which is also excepted under Rule 12(h)(2) from the consolidation requirement.  *Id.*  Therefore,

17

this Court can consider Defendants' "new" arguments raised in their current motion because whether construed as a 12(b)(6) motion or a 12(c) motion, the same standard applies. *See* 5C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d ed. 2020) ("The mere fact that these procedural defects are raised in the guise of a Rule 12(c) motion should not affect the manner by which the court determines what essentially are Rule 12(b) matters.").

### 2. Plaintiffs have sufficiently alleged the basis for "comparators" to survive a motion to dismiss for their Equal Pay Act and Title VII discrimination claims.

Plaintiffs' Title VII and EPA discrimination claims both require a showing that comparators – male employees who had the same work responsibilities as female employees – were paid better than them. A *prima facie* case of employment discrimination under Title VII requires showing, *inter alia*, that the employee was treated less favorably than other similarly situated employees outside the protected group. *Davis v. Matagorda Cty.*, 2019 WL 1015341, at *8 (S.D. Tex. Mar. 4, 2019) (citing *Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017)). The plaintiff "must show that she was paid less than a proffered comparator, not in her protected class, for work requiring substantially the same responsibility." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018). In other words, she must show "her circumstances were nearly identical to those of a better-paid employee who is not a member of her protected class." *Id.* at 185 (quoting *Taylor v. United. Parcel Serv.*, 554 F.3d 510, 523 (5th Cir. 2008)) (quotations and alterations omitted).

"To establish a *prima facie* case of discrimination under the Equal Pay Act, a plaintiff must show that [s]he received less money but performed work in a position requiring equal skill, effort, and responsibility under similar working conditions as a coworker of the opposite sex who is similarly situated." *Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 753 F. App'x

216, 219 (5th Cir. 2018); *see also Montgomery v. Clayton Homes Inc.*, 65 F. App'x 508, 2003 WL 1922917, at *1 (5th Cir. Mar. 25, 2003) (to make a *prima facie* case under the Equal Pay Act, a plaintiff must establish, *inter alia*, that "she was paid less than the employee of the opposite sex providing the basis of comparison") "Generally, a Title VII wage discrimination claim parallels that of an EPA violation." *Montgomery*, 2003 WL 1922917, at *1.

But "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). The Fifth Circuit has explained that a plaintiff must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [her] case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)) (emphasis in original); *see also Monumental Task Comm., Inc. v. Foxx*, 2016 WL 5780194, at *5 (E.D. La. Oct. 4, 2016) (explaining that for an equal-protection claim to survive a Rule 12(b)(6) motion to dismiss, a plaintiff at least "must have alleged facts which plausibly state that … he was treated differently from others similarly situated"). A court should not require "a plaintiff to plead something more than the 'ultimate elements' of a claim." *Cicalese*, 924 F.3d at 767. More rigorous "inquiries are better suited to summary judgment." *Id.*

Although successive motions to dismiss for failure to state a claim directed to amended complaints cannot be barred by Rule 12(g), it should be noted that every allegation that forms the basis for the arguments as to Plaintiffs' Title VII and EPA discrimination claims was present in the original complaint.[90] This Court has specifically ruled on the comparator issue twice

---

[90] R. Doc. 1 at 4, 5, 7-10, 23. Defendants seem to recognize this since they state in their opposition that "Plaintiffs continue to assert the following causes of action." R. Doc. 100-1 at 4.

previously.[91]

Once again Plaintiffs ask the Court to look at Exhibit B (a spreadsheet of alleged comparators listing titles, positions, job descriptions, job families, years of service, etc.), this time to confirm its prior rulings.  Defendants argue, however, that Exhibit B should not be considered in conjunction with the present motion, because Plaintiffs simply attach it to their opposition, not to their third supplemental and amended complaint, and because this Court previously ordered the exhibit stricken from Plaintiffs' earlier complaint.[92]  Plaintiffs respond that they complied with this Court's prior order but, in the interim, obtained the document through a public records request, so the exhibit should now be considered by the Court in resolving this motion.[93]

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  A court may also take judicial notice of certain matters, including public records and government websites.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).  Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters

---

[91] R. Docs. 45 at 50 ("At the most general level, Plaintiffs have alleged that they were treated differently than their male counterparts.  Thus, they have alleged, though barely, sufficient detail to make their claim plausible.  That is all that is required at this early stage of the proceeding.") (footnotes omitted); 84 at 32 ("As Plaintiffs emphasize, the Court already found that Plaintiffs have sufficiently alleged this element, and the Court declines Defendants' invitation to revisit its conclusion at this juncture.") (footnotes omitted).
[92] R. Doc. 104 at 3-5.
[93] R. Doc. 107 at 1-4.

of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

Exhibit B is not attached "to the complaint" or the "motion to dismiss." *Lone Star*, 594 F.3d at 387.  On the other hand, it is "incorporated into the complaint by reference [and] integral to the claim." *Meyers*, 540 F. App'x at 409.  Ultimately, the distinction is immaterial because the allegations in the third supplemental and amended complaint are sufficient on their own to allege the basis for Title VII and EPA comparators without any reference to Exhibit B.  Plaintiffs allege that LSU established paygrades to meet the market for employee pay based on "market worth, work performance and economic conditions (budget)."[94]  Both Muslow and Cunningham were assigned paygrades[95] and male co-workers in similar paygrades are alleged to be paid higher salaries.[96]  Further discovery will illuminate whether these paygrades are indicative of the same or similar work between Plaintiffs and the comparators, and may well bear upon other elements of the Plaintiffs' discrimination claims, but at this stage of the proceedings, Plaintiffs have overcome the "lower bar" to survive a motion to dismiss.  *Cicalese*, 924 F.3d at 768.

### 3. Plaintiffs sufficiently allege that Hollier has authority to reinstate Plaintiffs to their former positions as relief for their § 1983 official-capacity claims.

Pursuant to Rule 12(b)(1), Defendants seek the dismissal of Plaintiffs' § 1983 official-capacity claims against Hollier, contending that Plaintiffs have not sufficiently alleged he has the authority to reinstate them to their former positions.[97]   The Eleventh Amendment codified state sovereign immunity, barring suits in federal court against states, including state agencies and instrumentalities. *Liu v. Tex. State Univ.*, 2019 WL 3804491, at *4 (W.D. Tex. Aug. 12, 2019))

---

[94] R. Doc. 99 at 4 (incorporating ¶¶ 27, 29-30 of SSAC).
[95] *Id.* (incorporating ¶¶ 32 & 34 of SSAC).
[96] *Id.* (incorporating ¶¶ 46-47, 58-59, 62-64, 77-78 of SSAC).
[97] R. Doc. 100 at 7-9.

(citations omitted). When the "state is the real, substantial party in interest," the Eleventh Amendment bars suits against state officials in their official capacity. *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)) (quotations omitted). "The state is a real, substantial party in interest when the judgment sought would expend itself on the state treasury or domain or would restrain the state from acting or compel it to act." *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996). However, under *Ex parte Young*, 209 U.S. 123, 155-56 (1908), the Eleventh Amendment does not protect state officials from claims for prospective, non-monetary relief when it is alleged that the state officials acted in violation of federal law. Reinstatement is a form of prospective equitable relief that falls under the *Ex parte Young* exception. *Liu*, 2019 WL 3804491, at *5 (collecting cases).

To seek relief under the *Ex parte Young* exception, a plaintiff must establish standing by showing: (1) injury in fact; (2) causation; and (3) redressability. *Gregory v. Tex. Youth Comm'n*, 111 F. App'x 719, 721 (5th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). If a state official does not possess the power to reinstate an employee, *i.e.*, to redress the plaintiff's complaint, then the exception is inapplicable. *Thomas v. Univ. of Miss.*, 2018 WL 6613807, at *4 (N.D. Miss. Dec. 17, 2018); *cf. Lewis v. Hanemann*, 2015 WL 5883547, at *3 (W.D. La. Aug. 4, 2015) (individual defendant was not proper state official with authority to secure requested relief).

This Court has already addressed whether § 1983 official-capacity claims against Hollier should be dismissed. In its August 4, 2020 Order & Reasons, this Court held that Plaintiffs had met their pleading burden to allege official-capacity claims against Hollier for reinstatement:

> … Had Hollier's selection allegedly required the ***approval*** of Jones or someone else, Hollier likely would not have the requisite authority to reinstate Plaintiffs. *See, e.g., Mire v. Bd. of Supervisors of La. St. Univ.*, 2017 WL 785439, at *4-5

(E.D. La. Mar. 1, 2017) (plaintiff, who failed to provide summary-judgment evidence refuting that defendant did not have authority to reinstate her, had alleged that defendant's termination of her employment/residency was not effective ***until it was approved***, without explanation as to why such approval would not also be required for reinstatement). At this stage, without the benefit of evidence, it is not clear that Hollier – who is alleged to have "final decision-making authority," albeit subject to input from Jones, to select Muslow's replacement – does not have authority to reinstate Plaintiffs. Accordingly, the Court finds that Plaintiffs have sufficiently cured the pleading deficiencies in this regard and may maintain their claims for reinstatement against Hollier in his official capacity.[98]

The added wrinkle here is that Plaintiffs have amended their allegation in their latest complaint to state: "[I]t was, upon information and belief, Hollier who was given final decision-making authority on the selection subject to Jones's input.  That selection procedure notwithstanding, Jones boasted about having the final say over the hire."[99]  Defendants argue that the amended allegations demonstrate that Jones was "tasked with managing the hiring process for the Chief Counsel position" and that authority to reinstate lies with LSU Human Resource Management which was tasked with filling the new positions at OGC after Plaintiffs' previous positions at LSU (New Orleans) were terminated.[100]

On their face, these amended allegations do not definitively establish who has authority to reinstate Plaintiffs but may only purport to capture Jones's boast.  Was Jones's boast nothing more than an exaggerated claim of his role or does it really indicate only he was authorized to reinstate Plaintiffs?  These questions reflect the need for additional discovery concerning the extent of Hollier's authority, as a matter of fact.  Where it does not "appear[] certain that [Plaintiffs] cannot prove any set of facts in support of [their] claims entitling [them] to relief," a motion to dismiss for lack of subject-matter jurisdiction should not be granted.  *Sureshot Golf Ventures,* 754 F. App'x at 235.

---

[98] R. Doc. 84 at 22 (emphasis in original).  For a more thorough discussion of this analysis, see *id.* at 17-22.
[99] R. Doc. 99 at 10.
[100] R. Doc. 102-1 at 5-6.

Plaintiffs allege that Hollier is the chancellor of LSU.[101]  He is alleged to be one of the individuals who originally informed Plaintiffs that their contracts were rescinded and their former positions were being retired.[102]  He signed and sent the supposedly backdated letters saying so.[103]  He is alleged to have had final decision-making authority over the choice to fill the new positions at OGC[104] and responded to anonymous complaints about wage disparities by making a presentation in front of the faculty senate at LSU.[105]  Taking Plaintiffs' allegations as true, which is appropriate at this stage of the litigation, Plaintiffs have "stated a legally cognizable claim that is plausible."  *Body by Cook*, 869 F.3d at 385.

### 4. Plaintiffs have sufficiently alleged that Skinner and Jones were employers under the Equal Pay Act.

"To establish a prima facie case under the Equal Pay Act, [a plaintiff] must show [among other things] that 'her employer is subject to the Act.'"  *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (quoting *Chance v. Rice Univ.,* 984 F.2d 151, 153 (5th Cir. 1993)).  The Equal Pay Act, 29 U.S.C. § 206(d), was added as an amendment to the Fair Labor Standards Act (the "FLSA") to uphold "the principle of equal pay for equal work regardless of sex."  *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974).  Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency."  29 U.S.C. § 203(d).

To determine who is an employer, the Fifth Circuit uses an "economic realities" test to consider "who has operating control over the employees, and … 'whether the alleged employer: "(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work

---

[101] R. Doc. 99 at 3 (incorporating ¶ 9 of SSAC).
[102] *Id.* at 6.
[103] *Id.* at 7.
[104] *Id.* at 10.
[105] *Id.* at 11.

schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records."'" *Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182, 185 (5th Cir. 2014) (quoting *Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012)). Plaintiffs do not need to establish every one of these elements. *See Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014).   Instead, the theme is "those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Id.* (quoting *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 251 (5th Cir. 2012)).   "Employer" is defined more broadly in this context than it would be in traditional common-law applications. *Id.*

The ultimate determination of whether an individual is an employer is a question of law. *Castillo v. Givens*, 704 F.2d 181, 187 n.12 (5th Cir. 1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Slabisak v. Univ. of Tex. Health Sci. Ctr.*, 2018 WL 4762121, at *2 n.1 (E.D. Tex. Oct. 2, 2018).   "However, this legal question is dependent upon factual determinations as to each factor of the 'economic realities/common law control test.'" *Slabisak*, 2018 WL 4762121, at *2 n.1.

In this light, Plaintiffs have sufficiently alleged that Skinner was an employer under the FLSA.  They allege that Skinner was the Vice President of Legal Affairs and General Counsel at LSU (Baton Rouge) where he provided professional advice to the university and was part of the senior management team.[106]   He bore "ultimate responsibility for the identification and management of legal risks across the institution."[107]   When legal resources were being consolidated into the OGC, he advised Muslow that "the change really should not affect your day to day work."[108]   He is alleged to have controlled legal work at LSU by revising LSU's

---

[106] *Id.* at 2-3.
[107] *Id.* at 3.
[108] *Id.* at 5 (incorporating ¶ 105 of SSAC).

Permanent Memorandum 72 to restrict employees who work outside of the OGC from giving legal advice.[109]  Skinner was the individual who executed Plaintiffs' employment contracts, and Plaintiffs asked him to review their salaries before they signed them.[110]  In response, Skinner wrote to Plaintiffs stating that their employment contracts were rescinded and their current positions at LSU (New Orleans) would be retired.[111]  Thus, Plaintiffs have alleged that Skinner had power over Plaintiffs' contracts, that he organized legal work at LSU, and that he reviewed employee salaries and status.  Assuming the veracity of these statements, as is appropriate at this stage, this is enough to allege that Skinner was an employer under the FLSA to survive a motion to dismiss, even if the facts established at a later stage of the litigation tell a different tale.

Plaintiffs have also sufficiently alleged that Jones was an employer. He is the Deputy General Counsel at LSU (Baton Rouge).[112]   Jones allegedly helped revise Permanent Memorandum 72[113] and authored the supposedly backdated letters rescinding Plaintiffs' employment contracts and notifying them of the retirement of their former positions.[114]  Jones is alleged to have controlled legal matters at LSU (New Orleans) and "instructed employees not to consult with Plaintiffs or discuss pending matters [he] was working on for LSU (New Orleans)."[115]  He is also alleged to have directed Plaintiffs to supervise medical malpractice cases.[116]  According to the OGC organizational chart, Jones was Muslow's direct supervisor and Cunningham's indirect supervisor.[117]  Therefore, viewing these factual allegations as a whole, Jones can be said to have had control over Plaintiffs' salaries and positions.  This, too, is

---

[109] *Id.*
[110] *Id.* at 5-6 (incorporating ¶¶ 116-117 of SSAC).
[111] *Id.* at 6, 13.
[112] *Id.* at 3.
[113] *Id.* at 5.
[114] *Id.* at 7.
[115] *Id.* at 8.
[116] *Id.* at 9.
[117] *Id.* at 14.

adequate for Plaintiffs' EPA claims to survive at the motion-to-dismiss stage.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the partial motion of defendants Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, Thomas Skinner, Larry Hollier, Jon Harman, and Carlton Trey Jones, III to dismiss plaintiffs' third supplemental and amended complaint (R. Doc. 100) is GRANTED IN PART AND DENIED IN PART.  Based on the agreement of the parties, Winston DeCuir is dismissed with prejudice from these proceedings, "front pay in lieu of reinstatement" as a remedy for official-capacity claims against Hollier under § 1983 is stricken from the complaint with prejudice, and the § 1983 retaliation claim asserted against Skinner is dismissed with prejudice.  The motion is denied in all other respects.

New Orleans, Louisiana, this 4th day of November, 2020.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE