UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE MUSLOW, *et al.*                                CIVIL ACTION

VERSUS                                                    NO. 19-11793

BOARD OF SUPERVISORS OF                                   SECTION M (2)
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE, *et al.*

## ORDER & REASONS

Before the Court is the motion of plaintiffs Katherine Muslow and Meredith Cunningham (together, "Plaintiffs") for review[1] of the magistrate judge's order[2] denying a motion for reconsideration[3] of the magistrate judge's previous order that Plaintiffs sign tax release authorizations.[4] Defendants Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the "LSU Board"), and Carlton "Trey" Jones, III (together, "Defendants") respond in opposition.[5] Plaintiffs filed a supplemental memorandum in further support of their motion in which they indicated their intent to object to an additional ruling of the magistrate judge.[6] Accordingly, Plaintiffs' motion to review[7] the magistrate judge's order[8] denying as moot Plaintiffs' motion to compel John Harman to sign a tax release authorization[9] is also before the Court. Having considered the magistrate judge's orders, the parties' memoranda, the record, and the applicable law, the Court overrules the Plaintiffs' objections.

---

[1] R. Doc. 227.
[2] R. Doc. 202.
[3] R. Doc. 198.
[4] R. Doc. 170.
[5] R. Doc. 239.
[6] R. Doc. 255.
[7] R. Doc. 272.
[8] R. Doc. 251.
[9] R. Doc. 231.

I.  **BACKGROUND**

This case arises out of an employment dispute. Plaintiffs were formerly employed by the LSU Board as attorneys. The LSU Board oversees and manages LSU institutions across Louisiana, including its campuses in Baton Rouge and the LSU Health Sciences Center in New Orleans ("LSU (New Orleans)").[10]  Defendant Jon Harman was Vice Chancellor, Administration and Finance at LSU (New Orleans) until his dismissal.[11]  Until mid-2019, Muslow was "General Counsel" to LSU (New Orleans).[12]  Before her employment at LSU (New Orleans), she served as its outside counsel.[13]  Until summer 2019, Cunningham was employed as a staff attorney at LSU (New Orleans) and reported to Muslow.[14]  Plaintiffs assert claims of gender discrimination and/or retaliation under Title VII, the Equal Pay Act, and 42 U.S.C. § 1983.  Among other damages, Plaintiffs seek punitive damages against Harman in his individual capacity.

On April 4, 2021, Defendants filed a motion to compel Plaintiffs to respond to interrogatories, submit a privilege log, and sign records authorizations – including to the Internal Revenue Service to release their income tax returns.[15]  Plaintiffs opposed the motion.[16]  The magistrate judge granted in part and denied in part Defendants' motion.[17]  In her Order & Reasons, she did not analyze any issues concerning the tax return authorizations other than to note that Plaintiffs had agreed to execute them.[18]

---

[10] R. Doc. 99 (third supplemental and amended complaint) at 2 (incorporating ¶ 5 of the second supplemental and amended complaint, R. Doc. 50-4 ("SSAC")).
[11] *Id.* at 3.
[12] *Id.* at 3, 4 (incorporating ¶ 16 of SSAC).
[13] *Id.* at 4, 7 (incorporating ¶ 16 of SSAC).
[14] *Id.* at 4, 7 (incorporating ¶ 17 of SSAC).
[15] R. Doc. 143 at 1-2.
[16] R. Doc. 157.
[17] R. Doc. 170.
[18] *Id.* at 15.

Despite expressly agreeing to execute the tax return authorizations in their original opposition,[19] Plaintiffs filed a motion for reconsideration of the magistrate judge's order to sign and deliver the income tax authorizations.[20] During a status conference, the magistrate judge amended her order to include additional privacy protections concerning the income tax records to be provided in response to the authorizations, including allowing Plaintiffs to propose redactions of the tax returns for *in camera* review.[21]

On May 26, 2021, Plaintiffs filed a motion to compel Harman to respond to a production request seeking certain of his federal and state tax returns or, alternatively, an executed authorization for same.[22] Harman opposed the motion.[23] In her Order & Reasons on Plaintiffs' motion to compel, the magistrate judge recited that "[a]fter hearing arguments from both parties, they agreed that Plaintiffs could obtain the necessary financial information from Defendant Harman through an interrogatory."[24] Accordingly, the motion to compel was denied as moot.[25] Thereafter, Plaintiffs propounded the discovery request[26] and Harman responded.[27] To the Court's knowledge, Plaintiffs have not complained about the sufficiency of Harman's response either in correspondence or a motion to compel.

Plaintiffs now object to both of the magistrate judge's rulings.

## II. PENDING MOTION

In their motion to review the magistrate judge's ruling regarding their own tax returns, Plaintiffs contend that even in redacted form, the tax returns could have repercussions for their

---

[19] R. Doc. 157 at 9.
[20] R. Doc 198 at 1.
[21] R. Doc. 202 at 1-2.
[22] R. Doc. 231.
[23] R. Doc. 236.
[24] R. Doc. 251.
[25] *Id.*
[26] R. Doc. 281-1.
[27] R. Doc. 281-2.

3

spouses who are local attorneys at firms in competition with those retained by Defendants.[28] Plaintiffs argue that tax returns are not relevant and that Defendants could obtain the same information through W-2 forms and affidavits signed by Plaintiffs' accountants.[29] They state that the protections offered by the magistrate judge are not sufficient to protect the privacy interests of their spouses.[30]

In opposition, Defendants counter that Plaintiffs agreed, on the record, to execute the authorizations.[31] Defendants maintain that the information in the tax returns is relevant to the issue of damages and that Plaintiffs' alternative offer to provide Plaintiffs' W-2 forms and accountant affidavits would not contain all the necessary information.[32] Defendants insist that the protective order already in place[33] and the magistrate judge's recent order allowing for proposed redactions and *in camera* inspection are more than sufficient to protect the information in the jointly filed tax returns.[34] Therefore, say Defendants, Plaintiffs cannot meet their burden of proof to modify or set aside the magistrate judge's order.[35]

In Plaintiffs' motion to review the magistrate judge's order regarding the discovery of Harman's tax returns, they argue that the tax returns are relevant because they are needed to quantify punitive damages.[36] Plaintiffs assert that they "are entitled to more than … Harman's earnings information" and "his tax returns may reveal property taxes, mortgage interest, state and local taxes, educational expenses, unreimbursed medical bills, business income, real estate investment dividends, stock dividends, partnership income, savings account interest, and

---

[28] R. Doc. 227-1 at 2-3.
[29] *Id.* at 4-5.
[30] *Id.* at 5.
[31] R. Doc. 239 at 9-11.
[32] *Id.* at 11-19.
[33] *See* R. Doc. 122
[34] R. Doc. 239 at 19-22.
[35] *Id.* at 9-11.
[36] R. Doc. 272-1 at 2-3.

4

liabilities."[37] In opposition, Harman argues that Plaintiffs agreed before the magistrate judge to obtain the necessary financial information via interrogatory and that disclosure by that means is sufficient to address Plaintiffs' needs.[38]

## III.  LAW & ANALYSIS

### A.  Standard for Review of Magistrate Judge's Order

Magistrate judges are empowered to "hear and determine" certain nondispositive pretrial motions, including discovery issues. 28 U.S.C. § 636(b)(1)(A); *see also PYCA Indus., Inc. v. Harrison Co. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 n.11 (5th Cir. 1996). If a party is dissatisfied with a magistrate judge's ruling on a nondispositive motion, it may appeal to the district court. Fed. R. Civ. P. 72(a). When timely objections are raised, the district court will "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A). The court reviews the magistrate judge's "factual findings under a clearly erroneous standard, while legal conclusions are reviewed *de novo*." *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quotations omitted). A factual "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

### B. Analysis of Request for Plaintiffs' Tax Returns

#### 1.  Plaintiffs' tax returns are relevant to the case.

Courts should be reluctant to order the disclosure of tax returns as they are "highly sensitive documents." *Nat. Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993). To determine if tax returns should be produced, the moving party must "demonstrate both: (1) that

---

[37] *Id.* at 3.
[38] R. Doc. 281 at 1, 3.

the requested tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax returns is not 'otherwise readily obtainable' through alternative forms of discovery." *Butler v. Exxon Mobil Refin. & Supply Co.*, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (quoting *Nat. Gas Pipeline*, 2 F.3d at 1411). Once the moving party has shown relevance, "the burden shifts to the party opposing production to show that other sources exist from which the information contained in the income tax returns may be readily obtained." *FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). "[T]ax return information is relevant where a plaintiff has placed the subject of his income/earning capacity at issue in litigation." *Butler*, 2008 WL 4059867, at *2. For example, tax returns are deemed to be relevant when the plaintiff alleges in his complaint that he was "entitled to 'past and future lost wages and benefits' and damages for 'loss of earning capacity.'" *Id.*

In this case, Plaintiffs have unquestionably made their tax returns relevant by putting their income and earning capacity at issue. They seek lost wages as a component of damages. Nevertheless, Plaintiffs assert that there are other means (W-2 forms and the accountant affidavits) by which Defendants can obtain the information in the tax returns.[39] However, a W-2 merely "gives a partial picture … of … earnings. For example, there may be 1099's outstanding, or some kind of other earned income not included on the W-2's." *EEOC v. Columbia Sussex Corp.*, 2009 WL 10679322, at *4 (M.D. La. Aug. 3, 2009). When there are questions regarding a source of income, "copies of [a party's] actual, signed tax returns (and related documents and attachments) from the IRS, for at least a limited time period, are the best source of complete and competent information as to [the party's] income." *Butler*, 2008 WL 4059867, at *3; *see also E. Auto*

---

[39] R. Doc. 198-1 at 9.

*Distribs., Inc. v. Peugeot Motors of Am., Inc.*, 96 F.R.D. 147, 149 (E.D. Va. 1982) ("Where the income of a party to the litigation is in issue, income tax returns provide what ... may be the best source of complete and competent information as to that party's income.").

While Plaintiffs now offer alternative sources of income information, they are insufficient to replace the information contained in the tax returns for at least two reasons. First, the offer comes too late because Plaintiffs already agreed to sign the tax return authorizations. In their opposition to Defendants' motion to compel, Plaintiffs indicated that they "will execute the tax and social security authorizations and request that the Court protect the personal financial information of Plaintiffs' spouses."[40] The magistrate judge grounded her ruling on this agreement, expressly finding: "Plaintiffs represent they agree to sign the tax and social security authorizations in their Opposition."[41] The magistrate judge's finding to this effect is not clearly erroneous or contrary to law. Second, the case law reviewed above supports this result even had the magistrate judge been required to reach the merits of Plaintiffs' current argument. However, because the argument was not presented to her, Plaintiffs waived it. Accordingly, Plaintiffs have failed to meet the heavy burden for this Court to modify or set aside the magistrate judge's ruling and they must sign the tax authorizations.

### 2. The privacy of Plaintiffs' spouses is sufficiently protected.

In their motion for reconsideration, Plaintiffs argued that their agreement to sign the tax return authorizations "was qualified by and contingent upon whether this Court granted the protections [they] requested with respect to the tax information of their spouses."[42] Plaintiffs' opposition to the motion to compel did not contain any such qualification, but rather stipulates that

---

[40] R. Doc. 157 at 9.
[41] R. Doc. 170 at 15.
[42] R. Doc. 198-1 at 2.

they will sign the authorizations and then ask the Court to protect their spouses' financial information. This is not a contingent promise. Regardless, the protections the magistrate judge put into place are more than sufficient.

At the outset of this litigation, the parties jointly entered into a protective order to prohibit the release of confidential information.[43] This order prevents the parties, their counsel, or limited third parties from disclosing or using the confidential information for any purpose other than this litigation.[44] Upon Plaintiffs' request in their motion for reconsideration, the magistrate judge expanded these protections as to the tax return authorizations by incorporating the following procedures:

> Defendants must change the tax authorization forms for the IRS to send documents to Plaintiffs' counsel address. Once Plaintiff receives the tax authorization forms from Defendants, Plaintiffs are to execute and send same to the IRS within 24 hours. Within 24 hours of Plaintiffs' receipt of the requested IRS documents, Plaintiffs must deliver for an *in camera* inspection their proposed redactions of the tax documents along with an unredacted copy, with an explanation as to the reasons for each proposed redaction.[45]

Still Plaintiffs assert in their motion for review that the protective measures are insufficient.[46] Protective orders, though, can adequately protect highly sensitive tax information. *See*, *e.g.*, *Tingle v. Hebert*, 2017 WL 2335646, at *6-7 (M.D. La. May 30, 2017) ("[T]he Protective Order currently in place already limits the individuals to whom confidential information can be disclosed, limits the use of confidential information to this litigation and in preparation for trial and provides for the return of such information to the producing party upon request at the conclusion of the litigation. Thus, the existing Protective Order addresses many … concerns about the need to protect the information sought."); *Columbia Sussex*, 2009 WL 10679322, at *4

---

[43] R. Doc. 122.
[44] *Id.* at 6.
[45] R. Doc. 202 at 1-2
[46] R. Doc. 227-1 at 5.

("Again, the court is cognizant of the privacy issues raised by the release of the tax return information, but is confident that a Protective Order will sufficiently address that concern."). But the magistrate judge went farther to protect the financial information of Plaintiffs' spouses. Thus, while the opportunity for an *in camera* inspection is not required by law, the magistrate judge ordered one. *See, e.g.*, *Credit Cheque Corp. v. Zerman*, 1998 WL 7123, at *1 (N.D. Tex. Jan. 7, 1998) ("Although an inspection might be prudent, absent such a mandate, this court cannot conclude that the magistrate judge's failure to conduct an inspection was contrary to law."). In doing so, the magistrate judge also allowed Plaintiffs the opportunity to propose redactions. *See Patel v. 7-Eleven, Inc.*, 2019 WL 10959829, at *2 (D. Mass. Dec. 16, 2019) (compelling the production of tax returns but allowing redactions to "minimize" the privacy concerns posed by the disclosure of spousal information). These protections are adequate.

In sum, the magistrate judge's order to produce executed tax return authorizations and, thus, Plaintiffs' income tax returns, was not clearly erroneous or contrary to law, but rather a reasonable exercise of her broad discretion in resolving nondispositive pretrial matters.

### C. Analysis of Request for Harman's Tax Returns

Plaintiffs' motion to review the magistrate judge's Order & Reasons concerning the discovery directed to Harman is mystifying. While tax returns are relevant to the issue of punitive damages, it was not clearly erroneous or contrary to law (particularly when backed by the consent of the parties) for the magistrate judge to have found that an interrogatory can adequately secure the financial information sought by the request for tax returns. Moreover, after the magistrate judge's ruling, Plaintiffs propounded interrogatories seeking the financial information[47] and Harman responded.[48] It is passing strange for Plaintiffs to agree to a resolution of a discovery

---

[47] R. Doc. 281-1.
[48] R. Doc. 282-2.

dispute, have the magistrate judge bless it, proceed to conduct discovery pursuant to the parties' agreement and the magistrate judge's ruling, and then seek review of the ruling. Plaintiffs have waived any right to object to the ruling both by their agreement and their conduct. Regardless, the ruling was not clearly erroneous or contrary to law.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' objections in their motions to review the magistrate judge's discovery orders (R. Docs. 227; 272) are OVERRULED.

New Orleans, Louisiana, this 8th day of July, 2021.

                                                    BARRY W. ASHE
                                                  UNITED STATES DISTRICT JUDGE