UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KATHERINE MUSLOW, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 19-11793 |
| LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE, ET AL. | *  * | SECTION "M" (2) |

**ORDER AND REASONS**

This Court has conducted an *in camera* review of the proposed redactions to Plaintiffs' and their spouses' joint tax returns. *See* ECF No. 202.

**I.  BACKGROUND**

In response to Defendant's Motion to Compel (ECF No. 143), Plaintiffs agreed to sign tax authorizations releasing their tax returns. ECF No. 157, at 9. Based on that agreement, this Court ordered Plaintiffs to produce signed authorizations by April 28, 2021. ECF No. 170, at 15. Plaintiffs sought reconsideration of that ruling and argued that the information in the tax returns was not relevant and was otherwise obtainable (ECF No. 198, at 3–5) and briefed the desire to protect their investment income information and spouses' private earnings/income information given that their spouses are attorneys at competing law firms. *Id.* at 5–7. This Court ordered Plaintiffs to produce proposed redacted tax returns along with unredacted tax returns with an explanation for each proposed redaction for *in camera* inspection. ECF No. 202.

Plaintiffs filed Motions to Review this Court's order that Plaintiffs deliver signed tax release authorizations and this Court's order denying reconsideration of that decision. ECF No. 227. On July 8, 2021, the Honorably Barry W. Ashe overruled Plaintiffs' objections. ECF No. 290. In his decision, Judge Ashe wrote:

1

Courts should be reluctant to order the disclosure of tax returns as they are considered "highly sensitive documents." *Nat. Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993). To determine if tax returns should be produced, the moving party must "demonstrate both: (1) that the requested tax information is 'relevant' to the subject matter of the action; and (2) that there is a 'compelling need' for the information because the information contained in the tax returns is not 'otherwise readily obtainable' through alternative forms of discovery." *Butler v. Exxon Mobil Refin. & Supply Co.*, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (quoting *Nat. Gas Pipeline*, 2 F.3d at 1411). Once the moving party has shown relevance, "the burden shifts to the party opposing production to show that other sources exist from which the information contained in the income tax returns may be readily obtained." *FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995). "[T]ax return information is relevant where a plaintiff has placed the subject of his income/earning capacity at issue in litigation." *Butler*, 2008 WL 4059867, at *2. For example, tax returns are deemed to be relevant when the plaintiff alleges in his complaint that he was "entitled to 'past and future lost wages and benefits' and damages for 'loss of earning capacity.'"

In this case, Plaintiffs have unquestionably made their tax returns relevant by putting their income and earning capacity at issue. They seek lost wages as a component of damages. Nevertheless, Plaintiffs assert that there are other means (W-2 forms and the accountant affidavits) by which Defendants can obtain the information in the tax returns. However, a W-2 merely "gives a partial picture . . . of . . . earnings. For example, there may be 1099's outstanding, or some kind of other earned income not included on the W-2's." *EEOC v. Columbia Sussex Corp.*, 2009 WL 10679322, at *4 (M.D. La. Aug. 3, 2009). When there are questions regarding a source of income, "copies of [a party's] actual, signed tax returns (and related documents and attachments) from the IRS, for at least a limited time period, are the best source of complete and competent information as to [the party's] income." *Butler*, 2008 WL 4059867, at *3; *see also E. Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.*, 96 F.R.D. 147, 149 (E.D. Va. 1982) ("Where the income of a party to the litigation is in issue, income tax returns provide what . . . may be the best source of complete and competent information as to that party's income.").

While Plaintiffs now offer alternative sources of income information, they are insufficient to replace the information contained in the tax returns for at least two reasons. First, the offer comes too late because Plaintiffs already agreed to sign the tax return authorizations. In their opposition to Defendants' motion to compel, Plaintiffs indicated that they "will execute the tax and social security authorizations and request that the Court protect the personal financial information of Plaintiffs' spouses." The magistrate judge grounded her ruling on this agreement, expressly finding: "Plaintiffs represent they agree to sign the tax and social security authorizations in their Opposition." The magistrate judge's finding to this effect is

2

> not clearly erroneous or contrary to law. Second, the case law reviewed above supports this result even had the magistrate judge been required to reach the merits of Plaintiffs' current argument. However, because the argument was not presented to her, Plaintiffs waived it. Accordingly, Plaintiffs have failed to meet the heavy burden for this Court to modify or set aside the magistrate judge's ruling and they must sign the tax authorizations.

*Id.* at 5–7 (footnotes omitted). Judge Ashe also addressed Plaintiffs' contention regarding their spouses' privacy rights:

> In their motion for reconsideration, Plaintiffs argued that their agreement to sign the tax return authorizations "was qualified by and contingent upon whether this Court granted the protections [they] requested with respect to the tax information of their spouses." Plaintiffs' opposition to the motion to compel did not contain any such qualification, but rather stipulates that they will sign the authorizations and then ask the Court to protect their spouses' financial information. This is not a contingent promise. Regardless, the protections the magistrate judge put into place are more than sufficient.
>
> At the outset of this litigation, the parties jointly entered into a protective order to prohibit the release of confidential information. This order prevents the parties, their counsel, or limited third parties from disclosing or using the confidential information for any purpose other than this litigation. Upon Plaintiffs' request in their motion for reconsideration, the magistrate judge expanded these protections as to the tax return authorizations by incorporating the following procedures:
>
>> Defendants must change the tax authorization forms for the IRS to send documents to Plaintiffs' counsel address. Once Plaintiff receives the tax authorization forms from Defendants, Plaintiffs are to execute and send same to the IRS within 24 hours. Within 24 hours of Plaintiffs' receipt of the requested IRS documents, Plaintiffs must deliver for an in camera inspection their proposed redactions of the tax documents along with an unredacted copy, with an explanation as to the reasons for each proposed redaction.
>
> Still Plaintiffs assert in their motion for review that the protective measures are insufficient. Protective orders, though, can adequately protect highly sensitive tax information. *See, e.g., Tingle v. Hebert*, 2017 WL 2335646, at *6-7 (M.D. La. May 30, 2017) ("[T]he Protective Order currently in place already limits the individuals to whom confidential information can be disclosed, limits the use of confidential information to this litigation and in preparation for trial and provides for the return of such information to the producing party upon request at the conclusion of the litigation. Thus, the existing Protective Order addresses many . .

3

> . concerns about the need to protect the information sought."); *Columbia Sussex*, 2009 WL 10679322, at *4 ("Again, the court is cognizant of the privacy issues raised by the release of the tax return information, but is confident that a Protective Order will sufficiently address that concern."). But the magistrate judge went farther to protect the financial information of Plaintiffs' spouses. Thus, while the opportunity for an in camera inspection is not required by law, the magistrate judge ordered one. *See, e.g., Credit Cheque Corp. v. Zerman*, 1998 WL 7123, at *1 (N.D. Tex. Jan. 7, 1998) ("Although an inspection might be prudent, absent such a mandate, this court cannot conclude that the magistrate judge's failure to conduct an inspection was contrary to law."). In doing so, the magistrate judge also allowed Plaintiffs the opportunity to propose redactions. *See Patel v. 7-Eleven, Inc.*, 2019 WL 10959829, at *2 (D. Mass. Dec. 16, 2019) (compelling the production of tax returns but allowing redactions to "minimize" the privacy concerns posed by the disclosure of spousal information). These protections are adequate.
>
> In sum, the magistrate judge's order to produce executed tax return authorizations and, thus, Plaintiffs' income tax returns, was not clearly erroneous or contrary to law, but rather a reasonable exercise of her broad discretion in resolving nondispositive pretrial matters.

*Id.* at 7-9 (footnotes omitted).  Plaintiffs sought reconsideration of Judge Ashe's decision, and on August 12, 2021, he denied that request:

> Plaintiffs mostly reassert arguments they have raised in previous iterations of this motion. "'When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.'" *In re Taxotere*, 2020 WL 2473772, at *1 (E.D. La. May 13, 2020) (quoting *Hightower v. Group 1 Automotive, Inc.*, 2016 WL 3430569, at *3 (E.D. La. June 22, 2016)). In regard to Plaintiffs' tax returns, Plaintiffs raise the concern that somehow the magistrate judge and her staff cannot be trusted to complete an in camera review of the returns. This objection is without basis and cannot support a motion for reconsideration. The Court has the utmost confidence that court personnel will exercise the highest degree of professionalism and integrity in conducting the review and in protecting the confidentiality of personal information contained in the returns. Accordingly, reconsideration is unwarranted and unnecessary.

ECF No. 310, at 6 (footnotes omitted).

## II.     APPLICABLE LAW AND ANALYSIS

As an initial matter, tax returns are neither privileged nor undiscoverable, but they do contain sensitive information and should be produced only after a showing of relevance by the

party seeking production, after which "the burden shifts to the party opposing production to show other sources exist from which the information contained in the returns may be readily obtained."[1] When a plaintiff seeks compensatory damages for lost wages and/or lost earning capacity, their tax returns are relevant to the litigation.[2] Although that information may in some instances be gleaned from other sources, such as W-2s and 1099s,[3] Plaintiffs did not raise this argument in April 2021 when opposing the Motion to Compel and, as Judge Ashe previously found, have waived that argument. ECF No. 290, at 7. Accordingly, the Court cannot now revisit the issue of whether the tax return information would be readily obtainable through other sources.

This Court did, however, allow Plaintiffs to submit proposed redacted tax returns to exclude irrelevant information relating to their spouses. ECF No. 202. On Friday, August 27, 2021, Plaintiff Muslow delivered her unredacted and proposed redacted tax returns for this Court's *in camera* review. Plaintiff Cunningham likewise delivered for *in camera* review her unredacted

---

[1] *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) (evaluating whether tax returns were properly ordered to be produced to a judgment creditor under a two-part test wherein the party seeking production must show relevance and, then, the burden shifts to the opposing party to show other sources exist from which the information contained on the tax returns may be readily obtained); *see also Williams v. United States Env't. Servs., LLC*, No. 15-168-RLB, 2016 WL 684607, at *2 (M.D. La. Feb. 18, 2016) (using the two-part test to determine that Plaintiff's tax returns are relevant to the litigation as she was seeking compensatory damages for lost and unpaid wages and Defendant had a compelling need as Plaintiff has not produced any responsive documents); *E.E.O.C. v. Princeton Healthcare Sys.*, No. 10-4126 (PGS), 2012 WL 1623870, at *10 (D.N.J. May 9, 2012) (citations omitted) ("'Whether tax returns are discoverable turns on whether (1) the tax returns are relevant to the subject matter of the action . . . and [whether] (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable' and '[t]he party seeking the discovery at issue bears the burden of establishing its relevance ... while the party resisting discovery bears the burden of establishing other sources for the information.'"); *Haas v. Kohl's Dep't Store, Inc.*, No. 08-cv-2507, 2009 WL 2030567, at *1 (E.D. Pa. July 7, 2009) (citations omitted) (noting that courts apply a two-part test in evaluating whether to compel production of tax returns: (1) are the tax returns relevant to the litigation, and if so, (2) whether the information can be obtained from other sources).

[2] *See Williams*, 2016 WL 684607, at *2.

[3] *See Jackson v. Unisys, Inc.*, No. 08-3298, 2010 WL 10018, at *2–3 (E.D. Pa. Jan. 4, 2010) ("As W–2s do not contain 'substantial irrelevant confidential information such as investment income, spousal income, etc., they are a preferable form of discovery.'" In the interest of balancing Plaintiff's privacy interests against the Federal Rules' call for broad discovery, the Court finds that Plaintiff's W–2s will suffice for the information sought . . . in the income tax returns." (citations omitted)); *see also Aliotti v. Vessel SENORA*, 217 F.R.D. 496, 498 (N.D. Cal. 2003) ("[I]f after employment of these alternative less intrusive means, Defendant has reason to believe that the information provided by Plaintiff is untruthful or incomplete, the Court will consider a renewed motion on shortened time to require disclosure of the some or all of the tax returns. However, any such motion will have to be based on an objective showing of cause, not sheer speculation."); *see also E.E.O.C.*, 2012 WL 1623870, at *23 (allowing Plaintiff to produce W-2s instead of income tax returns).

and proposed redacted tax returns to the Court on September 13, 2021, presumably delayed due to the devastation and disruption caused by Hurricane Ida. *See, e.g.*, Gen. Order 21-12. This Court directed delivery of the redacted tax returns to Defendants and scheduled a status conference to hear Defendants' objections to the proposed redactions. ECF No. 317.

This Court's *in camera* review of the documents reflects that Plaintiff Muslow has produced redacted and unredacted copies of her joint tax returns for the 2017, 2018, 2019 and 2020 tax years. Muslow's accountant has redacted:

- Social Security number for Peter Koeppel for confidentiality
- Names and Social Security numbers for dependents
- Wages - includes wages for Peter Koeppel
- Interest and Dividends - includes income in respect to Peter Koeppel
- Capital Gains - includes income in respect to Peter Koeppel
- Supplemental Income and Loss - includes income and expenses in respect to Peter Koeppel
- Itemized Deductions - includes expenses for Peter Koeppel
- Other Supporting Schedules that include income or expenses for Peter Koeppel

Plaintiff Muslow's production included a fully unredacted version of Schedule C (Profits or Loss from Business).

Plaintiff Cunningham produced redacted and unredacted copies of her joint tax returns for the 2017, 2018 and 2019 tax years as she has obtained an extension on her 2020 returns. Her accountant notes that Plaintiff Cunningham's income for all years only consists of wages earned and income received as a shareholder of First Bethany Bancorp, a Subchapter S Corporation, but Cunningham's unredacted returns do not include a Schedule C. The returns were redacted to exclude any items of income, deduction or expense, tax, credit or payment attributable to her spouse only or to both taxpayers combined:

- Spouse's name and social security number.
- Names and social security numbers for dependents.
- Taxable interest which includes amounts attributable to spouse only.
- A carryforward of a capital loss from a pre-2017 transaction.

- Other gains or (loss) which includes amounts attributable to spouse only.
- Income from partnerships and S corporations when combined for both taxpayers, since spouse's income could be calculated in those instances by simple subtraction.
- Deductions (and supporting schedules) to arrive at adjusted gross income which include amounts attributable to spouse only.
- Itemized deductions (and supporting schedules) reported on Schedule A which include amounts attributable to both taxpayers, such as real estate taxes, state income taxes, charitable contributions and mortgage interest.
- Other supporting schedules, forms and statements that include reference to income, deduction or expense, tax, credit or payment attributable to spouse only or to both taxpayers combined.

It thus appears that Plaintiffs have redacted not only information relating solely their spouses, but also information reflecting a combination of plaintiffs' and their spouses' information.

During the status conference, Defendants cited to *Tingle v. Hebert*, No. 15-626, 2017 WL 2335646 (M.D. La. May 30, 2017), *Butler v. Exxon Mobile Refining and Supply Co.*, No. 07-386, 2008 WL 4059867 (M.D. La. Aug. 28, 2008), and *Vedros v. Fairway Medical Center, LLC*, No. 20-438 (E.D. La. Dec. 29, 2020) (ECF No. 49) to support their contention that Plaintiff's joint tax returns with their respective spouses should be provided, with only information relating *solely* to Plaintiff's spouses redacted. Plaintiffs requested and were granted leave to file a memorandum in response to Defendants' arguments wherein they distinguished *Tingle* and *Butler* on the basis that *Tingle* involved a tax return request relating to a punitive damages claim against the defendant while *Butler* involved a plaintiff who admitted he did not know his gambling earnings and losses for several years, rendering the tax return the relevant best source of that information. ECF Nos. 317, at 3–4.

The Court agrees that *Tingle* is inapposite as it involved the production of a defendant's tax returns relevant to a claim for punitive damages, which made defendant's entire net worth (including investment and other income reflected in his tax returns) relevant. *Tingle*, 2017 WL 2335646, at *2, 5. Plaintiffs' wages and earning capacity are at issue in this case, but their entire

net worth is not at issue. And while *Butler* supports Defendants' argument for production of the tax returns, it is not entirely on point. That case involved a disability plaintiff who admitted that he gambled during the relevant time and received "some sort of paperwork" from the casinos reflecting his casino earnings and losses, but he failed to produce that information. *Butler,* 2008 WL 4059867, at *2. That court found that plaintiff's tax returns were relevant not only to the issue of income including his casino activity but also to his claimed disability (allergy condition) since he admitted that he had allergy symptoms or flare-ups as a result of going to the casinos. *Id.*. Given his failure to produce complete information and his deposition testimony admitting he was uncertain about his income and contents of his tax returns for the relevant years, accurate information was not readily obtainable from other sources and that he tax returns were the best source of complete and competent information as to his income. *Id.* at *3.

*Vedros* supports Defendants' argument. In that case, Judge Douglas cited *Butler* and recognized that plaintiff's tax returns were relevant where plaintiff placed the subject of his income/earning capacity at issue. *Vedros,* No. 20-438, ECF No. 49, at 2. She did not address other avenues to obtain that information, but did note that the governing Protective Order sufficiently protected the tax returns by limiting the use of the information and the individuals to whom the information could be disclosed. *Id.* She further noted that cases allowing redaction of joint tax returns only allow for redaction of information pertaining solely to a person who is not a party to the lawsuit.[4] Judge Douglas specifically noted that information reflecting the combined income, wages or information of both joint filers is relevant and proportional information that cannot be

---

[4] *Id.* (citing *Tingle,*, 2017 WL 2335646, at *7 (party may redact any personal, financial information pertaining solely to his wife)); *see also Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539–40 (D. Kan. 2006) (requiring plaintiff to produce tax returns evidencing income from any source, active or passive, before and after separation of employment and noting that, because the returns are joint returns, plaintiff may redact any information contained on the returns that relates solely to his spouse or his dependents as such information is not relevant to plaintiff's damages).

extrapolated from the returns.  For that reason, the best way to balance the liberal construction of the Federal Rules of Civil Procedure as they relate to discovery with the confidential nature of the tax returns is through a protective order.[5]

Contrary to Defendants' argument, not all courts have required the production of complete tax returns (including passive and investment income) in employment discrimination suit.[6]  And while the connection between earning capacity and wage loss to investment or passive income appears tenuous, courts have found such income information not only discoverable,[7] but admissible at trial.[8]  Had Plaintiffs not waived their arguments regarding the discoverability of their tax returns when the issue first arose in April, they would be in a far better position to raise these arguments now.  Given the current status of this case, however, Plaintiffs' arguments come too late, particularly given that Judge Ashe has already held that they waived the argument regarding discoverability of their tax returns.  ECF No. 290, at 7.

The only issue at hand is protection of confidential financial information relating to Plaintiffs' spouses.  Based on the cited cases, redaction of a spouse's financial information from a joint tax return is only appropriate when the information relates solely to the spouse.  As Judge

---

[5] *Id.*

[6] *See, e.g., Shannon v. Liberty Mut. Grp. Inc.*, No. 20-1192 (RNC), 2021 WL 2644742, at *7 (D. Conn. June 28, 2021) (denying motion to compel tax returns where plaintiff's disclosures provided W-2s and Form 1099s but not tax returns related to investment income because it was not clear how the plaintiff's "full financial profile" is necessary for defendant to challenge front pay damages or mitigation of economic losses); *Gattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 73–74 (D. Conn. 2001) (holding that joint tax returns are discoverable when relevant to the issues raised in the case and the information is not otherwise readily obtainable and after conducting an *in camera* review of the tax returns to confirm that plaintiff's wages matched that on the produced W-2s, denied production of the joint tax returns reflecting plaintiff and her husband's taxable interest, dividend income, tax credits, real estate rental income, deductions and partnership or other income because defendant failed to establish how that income—other than plaintiff's wages and salaries—was relevant to the case).

[7] *See, e.g.*, *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 587–89 (N.D. Tex. 2016) (requiring either production of signed authorization or 1099s for income after termination and any documents reflecting any rental income, income from any self-employment, or distributions from any 401(k) or other retirement or investment account after termination as well as information regarding applications for disability insurance benefits and/or supplemental security income benefits, the receipt or denial of any disability insurance benefits or supplemental security income benefits).

[8] *Hunter v. Kennedy*, No. 17-00007, 2020 WL 3980450, at *9 (M.D. Pa. July 14, 2020) (finding passive income evidence relevant to earning capacity and return to employment as it relates to any decision plaintiff may make as to returning to employment and mitigation of damages).

Douglas recognized in *Vedros*, since Plaintiff's information cannot be extrapolated from combined information, the appropriate protection for combined information is to produce the joint returns reflecting the information marked "Confidential" under the governing Protective Order, not redaction of that combined information.

Plaintiff Muslow must remove the redaction for the following items that reflect combined information for both Plaintiff and her spouse rather than solely information for her spouse:

- Wages
- Interest and Dividends
- Capital Gains
- Supplemental Income and Loss
- Itemized Deductions
- Other Supporting Schedules that include combined income or expenses

Likewise, Plaintiff Cunningham must remove the redactions over the following items that reflect combined information rather than information related solely to her spouse:

- Income from partnerships and S corporations when combined for both taxpayers
- Itemized deductions (and supporting schedules) reported on Schedule A which include amounts attributable to both taxpayers combined
- Other supporting schedules, forms and statements that include reference to income, deduction or expense, tax, credit or payment attributable to both taxpayers combined.

The properly redacted tax returns should be marked as confidential under the terms of the governing Protective Order (ECF No. 122) and produced promptly.

### III. **CONCLUSION**

Plaintiffs' proposed redactions are excessive. Plaintiffs may redact only that information related solely to their spouses, not combined information. Further, the redactions must be limited to the specific line items rather than entire pages or portions of the forms at issue.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs provide revised redacted tax returns, marked "confidential" and redacted in accordance with this Order, by September 24, 2021.

Dated this 17th day of September, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE