UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE MUSLOW, *et al.*                     CIVIL ACTION

VERSUS                                          NO. 19-11793

BOARD OF SUPERVISORS OF                        SECTION M (2)
LOUISIANA STATE UNIVERSITY
AND AGRICULTURAL AND
MECHANICAL COLLEGE, *et al.*

## ORDER & REASONS

Before the Court are three motions: (1) a motion for reconsideration filed by plaintiff

Meredith Cunningham;[1] (2) a motion for reconsideration filed by plaintiff Katherine Muslow;[2]

and (3) a motion to strike filed by Cunningham and Muslow (together, "Plaintiffs").[3] Defendants

Board of Supervisors of Louisiana State University and Agricultural and Mechanical College

("LSU"), Carlton "Trey" Jones, III, Thomas Skinner, Larry Hollier, and John Harman

(collectively, "Defendants") respond in opposition.[4] Plaintiffs reply in further support of their

motions.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court

denies each motion.[6]

---

[1] R. Doc. 460.

[2] R. Doc. 461.

[3] R. Doc. 481.

[4] R. Docs. 470; 471; 472; 473; 474; 479; 489.

[5] R. Docs. 497; 498.

[6] In the motion to strike, Plaintiffs urge the Court to strike defendant Harman's opposition to their motions for reconsideration because (1) he filed it a day late without requesting leave to do so; and (2) "the opposition memorandum contains no reference to supporting citations, as required by Local Rule 7.5." R. Doc. 481 at 1-2. They do not explain how they are prejudiced by Harman's tardy filing. In response, Harman argues that "no prejudicial effect has occurred or will occur, particularly considering that the opposition memoranda of the several co-defendants, particularly Larry Hollier and Thomas Skinner – who were subjected to the identical causes of action as asserted against Mr. Harman and whose pleadings argue, in almost identical fashion, the same bases in opposition to the respective Motions for Reconsideration – were filed [timely], such that the plaintiff was acutely aware of all of the arguments put forth on behalf of the respective defendants." R. Doc. 489 at 2.

Although parties should pay heed to filing deadlines, whether established by rule or court order, this Court does not find good grounds under the specific circumstances of this case to strike Harman's opposition memorandum

## I.    PENDING MOTIONS

This case arises out of an employment dispute.  The facts of this case have been discussed at length in the Court's prior Orders & Reasons.[7]  On May 24, 2022, the Court granted summary judgment in favor of Defendants, dismissing all of Plaintiffs' claims with prejudice.[8]  Plaintiffs now move the Court to reconsider its May 24, 2022 Order & Reasons (the "May 24, 2022 O&R").[9]  Because Plaintiffs' motions are filed in the wake of final judgment,[10] the Court treats them as timely-filed motions under Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure.[11]

In their motions, Plaintiffs argue that "[t]he Court's [May 24, 2022] decision undermines th[e] fundamental value [of non-discrimination in pay], refuses to consider or engage in any meaningful analysis of Plaintiffs' record evidence overcoming summary judgment, bungles summary-judgment procedure, and improperly elevates form over substance in contravention of the very first rule of civil procedure."[12]  They contend that the Court committed manifest errors of law and fact when it: (1) inequitably applied procedural rules to Plaintiffs' detriment;[13] (2) "refused to give weight" to cited evidence;[14] (3) "improperly" credited Defendants' nonretaliatory

---

where (1) Plaintiffs have not explained how they are prejudiced; (2) Harman's arguments were all made by his co-defendants in their timely-filed oppositions to Plaintiffs' motions for reconsideration; (3) Harman's opposition is uncomplicated and just two-and-a-half pages long; and (4) Harman's opposition was filed not even 24 hours late. Accordingly, Plaintiffs' motion to strike is denied.

[7] *See, e.g.,* R. Doc. 451.

[8] *Id.*

[9] R. Docs. 460; 461.

[10] R. Doc. 452.

[11] *See United States v. Trowbridge*, 393 F. Supp. 3d 603, 609 n.7 (S.D. Tex. 2018) ("'The Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration, but courts in the Fifth Circuit may treat motions for reconsideration as either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment.'") (quoting *Cardoni v. Prosperity Bank*, 2014 WL 6473283, at *1 (S.D. Tex. Nov. 18, 2014)).

[12] R. Docs. 460-1 at 1; 461-1 at 1.  Plaintiffs each adopt the arguments set forth in the other's motion for reconsideration.  R. Docs. 460 at 1 n.1; 461 at 1 n.1.

[13] R. Doc. 461-1 at 3.

[14] *Id.* at 5.

reasons;[15] and (4) "failed to consider other conflicting testimony and evidence of unequal treatment"[16] and pretext.[17]

In opposition, Defendants argue that the motions: (1) impermissibly attempt to introduce new arguments and evidence that existed at the time of the summary-judgment submission date;[18] (2) constitute improper rehashing of arguments already rejected in the Court's 84-page order;[19] and (3) fail to show (a) that the Court's order contains a manifest or obvious error of law or fact, or is manifestly unjust,[20] (b) new evidence,[21] or (c) an intervening change in the controlling law since the Court's ruling.[22]

In reply, Plaintiffs maintain that they have articulated grounds for relief under Rule 59(e): to correct a manifest error of fact or law and to prevent manifest injustice.[23]  They insist that they "only refer to prior arguments and evidence [in their motions] because the Court explains that it did not consider either in reaching its decision."[24]  Plaintiffs then urge the Court to consider evidence cited for the first time in their untimely surreply, which was not permitted to be filed.[25]

## II.    LAW & ANALYSIS

### A.  Rule 59(e) Standard

A Rule 59(e) motion to alter or amend a judgment after its entry calls into question the correctness of the judgment.  *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002).  The

---

[15] *Id.* at 13.
[16] *Id.* at 19.
[17] R. Doc. 460-1 at 3.
[18] R. Docs. 473 at 25; 474 at 1
[19] R. Docs. 473 at 25; 474 at 1.
[20] R. Doc. 473 at 25.
[21] R. Docs. 470 at 3; 474 at 3 ("Muslow does not present any newly discovered evidence – the entirety of her arguments and evidence to which she cites were all readily available (and many already argued and cited) at the time of filing her Opposition Memorandum.").
[22] R. Docs. 471 at 3; 474 at 3.
[23] R. Doc. 497 at 1.
[24] R. Doc. 498 at 2.  Of course, the Court has never "explained" that it did not consider Plaintiffs' arguments and evidence but, instead, took pains to do so in its 84-page decision.
[25] R. Doc. 497 at 5.

moving party must show that the motion is necessary to: (1) correct manifest errors of law or fact upon which the judgment is based; (2) present newly discovered or previously unavailable evidence; (3) prevent manifest injustice; or (4) address an intervening change in the controlling law. *See, e.g., Branch v. Lobello*, 2022 WL 2132039, at *2 (E.D. La. June 14, 2022). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1, at 127-28 (2d ed. 1995)); *see also In re Self*, 172 F. Supp. 2d 813, 816 (W.D. La. 2001) ("A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction."). Thus, a Rule 59(e) motion "'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" *Rivera v. Garza*, 2022 WL 2752224, at *1 (5th Cir. July 14, 2022) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

In deciding the outcome of a Rule 59(e) motion to upset summary judgment granted on the basis of a party's failure to present evidence, the court must balance "two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). Courts consider "the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before she responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994); *see also*

*Templet*, 367 F.3d at 478.  And while a district court has considerable discretion to grant or deny a Rule 59(e) motion, *see Edward H. Bohlin Co.*, 6 F.3d at 353, the grant of such a motion is an "extraordinary remedy that should be used sparingly."  *Indep. Coca-Cola Emps.' Union of Lake Charles, No. 1060 v. Coca-Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143 (5th Cir. 2004).

**B. Rule 60(b) Standard**

"Federal Rule of Civil Procedure 60(b) permits 'a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'"  *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)).  Those limited circumstances are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "This last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable.  Even then, 'extraordinary circumstances' must justify reopening."  *Kemp*, 142 S. Ct. at 1861 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11, 864 (1988)) (internal citation omitted).  To that end, relief under Rule 60(b)(6) "'requires a showing of "manifest injustice" and will not be used to relieve a party from the "free, calculated, and deliberate choices he has made."'"  *Rivera*, 2022 WL 2752224, at *1 (quoting *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. 2013)).

## C. Analysis

After considering Plaintiffs' arguments under these standards, the Court is not persuaded that relief is warranted.  Plaintiffs have not demonstrated that the Court's dismissal of their claims rested on any manifest error of law or fact or that reconsideration is necessary to prevent manifest injustice.  Nor have they shown that any other circumstance warranting relief under Rule 59(e) or Rule 60(b) applies.  Rather, Plaintiffs admit that they only offer evidence and arguments that could have been presented at the time they opposed the motions for summary judgment.[26]  *See Lavespere*, 910 F.2d at 174.  Therefore, their Rule 59 and 60 motions must be denied.

### 1. Manifest Errors of Law

Plaintiffs argue that the Court misapplied its legal analysis as to all claims asserted, thereby committing manifest error of law.[27]  "[A] 'manifest error' is an obvious error that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'"  *Wease v. Ocwen Loan Servicing, L.L.C.*, 852 F. App'x 807, 809 (5th Cir. 2021) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)).  Plaintiffs have not begun to meet this standard.  They contend that the Court inequitably applied procedural rules, failed to consider applicable law when conducting its comparator analysis, improperly relied on Defendants' nondiscriminatory reasons and affirmative defenses, and neglected evidence of pretext.  In doing so, Plaintiffs inappropriately, and in contravention of the Rule 59 and 60 standards, rehash arguments made in opposition to Defendants' motions for summary judgment (but rejected by the Court) or present arguments that should have been made in opposing summary judgment.  They do not show that the Court committed a manifest error of law.

---

[26] R. Doc. 497 at 4.
[27] R. Doc. 498 at 6.

### a.  Application of procedural rules

Plaintiffs filed a motion for leave to file a 61-page omnibus surreply (along with 119 pages of exhibits) approximately two months after the February 10, 2022 submission date for Defendants' motions for summary judgment.[28]  The Court denied the motion for leave to file an omnibus surreply, reasoning that:

> Plaintiffs make no effort to establish either (a) that defendants raised new arguments in their reply memoranda that require a response, or (b) that Plaintiffs have discovered new evidence that was not available to them at the time they filed their oppositions.  Allowing a surreply so long after the submission date flouts the customary briefing schedule ....[29]

Plaintiffs did not seek reconsideration of the Court's order denying them leave to file a surreply.

Now, Plaintiffs maintain that "[t]he Court's inequitable application of procedural rules deprived Plaintiffs the opportunity to correct their opposition memoranda [via the omnibus surreply] in favor of a speedy determination, rather than one that is just."[30]  Plaintiffs (who are themselves lawyers) explain that they were not able to review and assess the opposition memoranda submitted on their behalf on February 2, 2022, until March 7, 2022.[31]  But, once they reviewed the memoranda, they say they "dismissed their trial counsel due to borderline inept briefing on summary judgment [*i.e.*, Plaintiffs' opposition memoranda] and sought leave of Court [a month later, on April 7, 2022,][32]  to file the Omnibus Surreply in an effort to ameliorate the citations to the record omitted from prior counsel's memoranda and to address the new evidence Defendants submitted with the replies."[33]  The "surreply was neither belated nor unnecessarily

---

[28] R. Doc. 473 at 3.
[29] R. Doc. 442 at 1-2.
[30] R. Doc. 461-1 at 3.
[31] R. Doc. 497 at 2-3.
[32] *Id.* at 4.
[33] R. Doc. 461-1 at 3.  The Court found that Plaintiffs failed to establish that Defendants submitted new evidence with or raised new arguments in their replies.  R. Doc. 442 at 1-2.

cumulative of the summary judgment briefing the Court considered,"[34] argue Plaintiffs, and so, "[t]he Court should consider Plaintiffs' efforts to correct deficient performance by their counsel as a factor weighing in favor of reconsideration."[35]  Plaintiffs contend that "[b]y depriving Plaintiffs of the fair opportunity to address the merits" via their omnibus surreply, "this Court's ruling omits key material evidence and is not only erroneous but manifestly unjust."[36]

A surreply is not the appropriate vehicle to shore up arguments or present evidence that could have been presented in a timely fashion.  It is not an opportunity for a do-over.  The extraordinary circumstances that are required to grant leave to file a surreply (*e.g.*, new arguments raised for the first time in a reply) have not been urged (much less established) by Plaintiffs here. To achieve an orderly presentation of the parties' respective positions, courts must establish and enforce briefing schedules that accord the parties a fair opportunity to marshal their arguments and evidence, and then to respond to the other side.  But courts are not required to allow parties who squander their opportunity another crack at it – especially two months after briefing had closed.[37] Moreover, as Defendants correctly note, Plaintiffs did not seek reconsideration of the Court's order denying their motion for leave to file omnibus surreply.[38]  And so, the Court will not reconsider that unchallenged order now, after judgment.  As explained in more detail below,[39] whatever facts and citations were set forth in the surreply, which the Court found did not constitute newly discovered evidence, are not part of the summary-judgment record.  A counsel's failure to present evidence at the time of summary judgment is a valid basis for denying a subsequent motion for reconsideration.  *See Templet*, 367 F.3d at 479.  Therefore, Plaintiffs fail to establish any manifest

---

[34] R. Doc. 497 at 2-3.

[35] *Id.* at 5.

[36] R. Doc. 461-1 at 5.

[37] Plaintiffs had already been provided additional time to file their oppositions to the motions for summary judgment when the Court continued the submission date.  R. Doc. 370.

[38] R. Doc. 472 at 3.

[39] *See infra* Section II(C)(2)(a).

error of law by the Court in denying leave for them to file their quite tardy surreply, especially without justification and where the evidence attached was not already included in the summary-judgment record.

### b. Comparators

In its May 24, 2022 O&R, the Court determined that, "[b]ased on the summary-judgment record before [it], Plaintiffs ha[d] not shown that they were treated less favorably than a similarly situated male employee [*i.e.*, a comparator]."[40]  Plaintiffs take issue with the Court's analysis of their alleged comparators, arguing that the Court failed to give weight to certain evidence and apply the correct law.  But Plaintiffs cannot establish that the Court made a manifest error of law; instead, they merely rehash evidence and legal theories that could have been offered or raised at the time their opposition memoranda were due.

First, Plaintiffs argue that the Court improperly assigned more weight to "position descriptions" during its analysis of Plaintiffs' proposed comparators than to the HSC's Study and resultant pay grades.[41]  The Court did not.  The Court specifically addressed Plaintiffs' arguments regarding the 2017 Market Study and pay grades in two separate sections of its 84-page Order & Reasons.[42]

Second, Plaintiffs contend that the Court's failure to acknowledge the Gunaldo memorandum was a manifest error of fact and law.[43]  "Gunaldo" was only mentioned twice in the six opposition memoranda Plaintiffs submitted.[44]  In both instances, Plaintiffs refer to deposition testimony of Sara Schexnayder, which is not in the summary-judgment record, wherein she

---

[40] R. Doc. 451 at 17.
[41] R. Doc. 497 at 9.  Plaintiffs argue that "[t]here's no reason to give preference to the [position descriptions] LSU offered considering their deficiencies and the extensive 2017 Study and paygrades the HSC created."  R. Doc. 460-1 at 23.  "HSC" stands for Health Sciences Center.
[42] R. Doc. 451 at 32-34, 40-41.
[43] R. Doc. 461-1 at 11.
[44] R. Docs. 396 at 21; 402 at 20.

allegedly states that she did not know Gunaldo's job family.[45]  Even after reviewing all of the cited evidence in each opposition memorandum, none directs the Court to a Gunaldo memorandum.[46]  As noted, the law imposes no duty on district courts to sift through the record in search of evidence to support a party's opposition to summary judgment.[47]  And so the Court did not err.  That said, Plaintiffs contend in their motions that the memorandum stood for the proposition that pay grades established comparators.[48]  The Court considered this meritless argument in two separate sections of the May 24, 2022 O&R, and it found that the pay grades did not establish comparators under the applicable law.[49]

Third, Plaintiffs argue that the Court erred in its failure to apply 29 C.F.R. § 1620.13(d) or 29 C.F.R. § 1620.14(a) in determining whether Plaintiffs identified an appropriate comparator under the EPA.[50]  Plaintiffs contend that the Court should have viewed Plaintiffs' evidence through the lens of "less pay for more work," instead of "equal pay for equal work."[51]  "Because [they] presented evidence of 'less pay for more work,'" say Plaintiffs, "they did not need to show their job duties were identical[52] to those of the higher-paid male employees – those positions required less skill, effort, and responsibility."[53]  Assuming that Plaintiffs presented summary-judgment evidence of "less pay for more work" such that they satisfied the "similarly situated" prong of the EPA analysis – which the Court can confidently say they did not upon reviewing the scarce record

---

[45] R. Docs. 396 at 21; 402 at 20.

[46] *See* R. Docs. 387; 388; 391; 396; 400; 402.

[47] R. Doc. 451 at 69 n.292.

[48] R. Doc. 461-1 at 10-11.

[49] R. Doc. 451 at 32-34, 40-41.

[50] R. Doc. 497 at 7.

[51] *Id.* at 8.

[52] Plaintiffs mischaracterize this standard.  To establish a *prima facie* case under the EPA, a plaintiff must show that (1) her employer is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison. *Badgerow v. REJ Props., Inc.,* 974 F.3d 610, 617 (5th Cir. 2020).  Plaintiffs need not prove that their job duties were "identical" to that of their alleged comparators.  And the Court did not hold them to such a standard.

[53] R. Doc. 497 at 8.

evidence cited in their oppositions – Plaintiffs' EPA claims would still fail because they did not raise a genuine issue of material fact as to: (1) the individual defendants' employer status;[54] and (2) pretext.[55]

Fourth, Plaintiffs contend that Title VII requires a plaintiff to prove that her employer discriminated against her with respect to her compensation because of her sex and, therefore, a plaintiff need not identify a member of the opposite sex that holds an equal but higher paying job.[56] Thus, Plaintiffs argue that "'a claim for sex-based wage discrimination can be brought under Title VII even though no member of the opposite sex holds an equal but higher paying job, provided that the challenged wage rate is not based on seniority, merit, quantity or quality of production, or any other factor other than sex.'"[57]  Even assuming Plaintiffs had identified proper comparators and notwithstanding the fact that this is a new argument that could have been raised before entry of judgment and, therefore, inappropriately raised in their instant motions such that the Court need not entertain it for that reason alone, the Court specifically found that the challenged wage rate was undisputedly based on factors other than sex.[58]  Once a defendant meets its burden of production, as Defendants did, the burden shifts to the plaintiff to "substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  As described in the May 24, 2022 O&R, Plaintiffs' Title VII claims failed at the pretext stage because Plaintiffs could not carry their summary-judgment burden.[59]  Accordingly, Plaintiffs' arguments that the Court committed manifest error of law in conducting its comparator analysis fall far short of their mark.

---

[54] R. Doc. 451 at 60-72.

[55] *Id*. at 76.

[56] R. Doc. 498 at 6-7.

[57] *Id.* (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110-11 (2d Cir. 2019)) (internal quotation marks omitted).

[58] R. Doc. 451 at 41-43, 54, 74-75, 81.

[59] *Id.* at 44, 55.

### c. Affirmative defenses and nondiscriminatory reasons

In its May 24, 2022 O&R, the Court determined that Defendants not only offered nondiscriminatory and nonretaliatory reasons for their employment actions, but also demonstrated by a preponderance of the undisputed evidence that the wage differential was justified.[60]  Plaintiffs disagree with the Court's determination; however, they point to no manifest error of law that would warrant reconsideration of the issue.  Instead, Plaintiffs merely raise new arguments that could have been made at the proper time.

Under Title VII, once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant "to proffer a legitimate, nondiscriminatory reason for his action." *Watkins v. Tregre*, 997 F.3d 275, 281-82 (5th Cir. 2021) (citing *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)).  Similarly, once a plaintiff successfully establishes a *prima facie* case of retaliation under either Title VII or the EPA, the burden then shifts to the employer to introduce evidence of a legitimate, nonretaliatory reason for the adverse employment action.  *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022).  For a discrimination claim under the EPA, "'[o]nce a plaintiff has made her prima facie case by showing that an employer compensates employees differently for equal work, the burden shifts to the defendant to' show by a preponderance of the evidence that the differential in pay was made pursuant to one of the four enumerated exceptions." *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011) (quoting *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio,* 261 F.3d 542, 546 (5th Cir.2001)).  "Disparities in salary are allowed where payment is made pursuant to '(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex.'" *Reznick v.*

---

[60] *Id.* at 74.

*Associated Orthopedics & Sports Med., P.A.*, 104 F. App'x 387, 390 n.4 (5th Cir. 2004) (quoting *Plemer v. Parsons-Gilbane,* 713 F.2d 1127, 1136 (5th Cir.1983)).   Plaintiffs contend that Defendants did not carry their burden.   But they are wrong.

First, Plaintiffs argue that, with respect to Defendants' burden to prove by a preponderance of the evidence that the wage differential between each Plaintiff and her comparators is justified under one of the four affirmative defenses set forth in the EPA, "[t]he onus was on Defendants to prove a bona fide merit system," and, absent that evidence, Defendants failed to prove an affirmative defense under the EPA.[61]  This is a newly asserted argument that is inappropriate for the Court to consider at this juncture.  But, even so, the onus is not on a defendant to prove a merit or seniority system.  A defendant must show by a preponderance of the evidence *one* of the four affirmative defenses set forth in the EPA: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex.  *See King*, 645 F.3d at 723.  And here, as the Court explained, Defendants demonstrated by undisputed evidence that the wage differential was justified by "multiple valid defenses, including a bona fide non-gender-based job classification program that does not discriminate on the basis of sex," which falls under the fourth affirmative defense set forth in the EPA ("any other factor other than sex").[62]

Second, Plaintiffs chastise the Court for accepting two of Defendants' nonretaliatory reasons for their termination, namely, that their termination was due to Plaintiffs' (1) withdrawal of their applications; and (2) failure to execute a contract before the effective appointment date.[63] Plaintiffs argue that "Hollier and Martin testified that they both believed that Plaintiffs had been

---

[61] R. Doc. 498 at 10; *see also* R. Doc. 497 at 9 (arguing that Defendants did not satisfy their burden of proof to establish an affirmative defense because there is no evidence of a bona fide merit or seniority system).
[62] R. Doc. 451 at 75.
[63] R. Doc. 461-1 at 15-16.

transferred to OGC [*i.e.*, the Office of General Counsel] after January 1, 2019, implying that Plaintiffs could have been administratively transferred with or without new applications or 'employment contracts.'"[64]  This argument was not raised in Plaintiffs' oppositions to Defendants' motions for summary judgment and therefore is inappropriately raised now as grounds for a Rule 59 or 60 motion.[65]  That said, even if Plaintiffs could substantiate the claim that Hollier and Martin believed that Plaintiffs had been transferred and that such belief implied that Plaintiffs could have been transferred with or without new applications or employment contracts, the Court identified multiple other nonretaliatory reasons for their termination.[66]  A defendant need only proffer one nonretaliatory reason for its employment action.  *McCoy*, 492 F.3d at 557 (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).  And Defendants satisfied this burden.  In addition to Plaintiffs' withdrawal of their applications and failure to execute a contract before the effective appointment date, another nonretaliatory reason for their termination was that the LSUHSC-NO general counsel and staff attorney positions were retired in favor of new legal positions under the OGC.[67]

Third, Plaintiffs state that "[t]here is a genuine issue of material fact regarding the veracity of Skinner's concern about a 'competitive process' that cannot be resolved on summary judgment."[68]  This argument was not raised in Plaintiffs' oppositions to Defendants' motions for summary judgment.  The Court need not address it now.  Moreover, Plaintiffs do not argue that Skinner's concern about the "competitive process" is newly discovered evidence.  Accordingly, Plaintiffs have not established that the Court committed manifest error of law in its analysis of Defendants' nondiscriminatory reasons and affirmative defenses.

---

[64] *Id.* at 16.  The Court expressly refrained from deciding whether the transfer occurred.  R. Doc. 451 at 62 n.250.

[65] *See id.* at 54.

[66] *Id.* at 54, 81.

[67] *Id.* at 54.

[68] R. Doc. 461-1 at 22.

14

### d. Pretext

In its May 24, 2022 O&R, the Court found that Plaintiffs failed to carry their summary-judgment burden at the pretext stage.[69] Now, Plaintiffs argue that "[m]uch of [their] evidence goes to the question of pretext; none was considered by the Court."[70] But Plaintiffs are wrong. Their failure to raise a genuine issue of material fact as to pretext cannot be attributed to the Court, but instead is due solely to Plaintiffs' want of citation to evidence in their opposition memoranda or their reliance on facts that are not in the summary-judgment record.

First, the Court considered all cited evidence of pretext, which was quite thin. For example, in Plaintiffs' opposition to the motion for summary judgment filed on behalf of Skinner, there is no evidence of pretext cited.[71] Nor is any cited in Plaintiffs' oppositions to the motions for summary judgment filed on behalf of Hollier,[72] Jones,[73] or Harman.[74] In Cunningham's opposition to LSU's motion for summary judgment against her, she argues that "[i]t is clear that 'but for' [her] request for a salary review and her filing of the EEOC complaint, she would not have been fired."[75] There is no evidence cited in support of this statement,[76] nor is there any further discussion of pretext – if the quoted material can even be characterized as such.[77] In Muslow's opposition to LSU's motion for summary judgment against her, she similarly argues that "[i]t is clear that 'but for' [her] request for a salary review and her filing of the EEOC complaint, she would not have been fired."[78] The evidence she cites in support – which is

---

[69] R. Doc. 451 at 44-47, 55-58, 76, 81-82.

[70] R. Doc. 460-1 at 5.

[71] *See* R. Doc. 400.

[72] R. Doc. 387.

[73] R. Doc. 388.

[74] R. Doc. 391 at 1.

[75] R. Doc. 402 at 34.

[76] *Id.* Cunningham fails to conduct any pretext analysis with respect to her Title VII claims and her EPA discrimination claim. *See* R. Doc. 402.

[77] *See id.*

[78] R. Doc. 396 at 28.

Skinner's testimony and an excerpt from an expert report – was not enough to carry her summary-judgment burden.  Thus, the Court concluded that because Plaintiffs failed to (a) address each of Defendants' nondiscriminatory reasons, (b) present evidence of disparate treatment or facts that cast doubt on the credence of Defendants' stated justifications for the employment actions, or (c) raise a genuine fact issue concerning whether Defendants' stated reasons for Plaintiffs' alleged pay disparities and termination were pretextual, summary judgment in favor of Defendants was warranted.[79]  Contrary to Plaintiffs' present position, the Court considered the little evidence they offered on the question of pretext but found it insufficient to forestall summary judgment.

Second, as discussed more fully below,[80] any claim that Plaintiffs put forward evidence of pretext in their omnibus surreply is insufficient because the late-filed surreply – and any evidence attached to it – never made it into the summary-judgment record.  Plaintiffs do not argue that this undeveloped evidence of alleged pretext (which, they say, includes evidence of alleged subjective pay decisions, failure to follow policies, changing stories, failure to investigate, atmosphere, departure from standard procedure, hostility to gender equity, exclusion from office matters, and failure of proof of job components)[81] could not have been offered or raised before the summary-judgment motions came under submission.[82]  Instead, they effectively concede that the evidence was available to them before they responded to the summary-judgment motion[83] and point the finger at their former counsel, the attorney who submitted Plaintiffs' opposition memoranda, arguing, in part, that (1) they had to "cure previously-omitted citations to the summary-judgment record";[84] and (2) the Court "should consider Plaintiffs' efforts to correct deficient performance

---

[79] *See* R. Doc. 451 at 46.
[80] *See infra* Section II(C)(2)(a).
[81] R. Doc. 460-1 at 5-23.
[82] Plaintiffs admit that they "only refer to prior arguments and evidence" that were available to them before the motions came under submission.  R. Doc. 497 at 4.
[83] *Id.*
[84] *Id.*

by their counsel."[85]  But a Rule 59(e) motion "'is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment,'" *Rivera*, 2022 WL 2752224, at *1 (quoting *Templet*, 367 F.3d at 478-79), including the deficient performance of counsel.  *Edward H. Bohlin Co.*, 6 F.3d at 357; *Courtade v. Harrah's Operating Co.*, 2011 WL 2446454, at *2 (E.D. La. June 15, 2011) ("Negligence by the moving party's attorney does not generally constitute a valid excuse to reopen a case under Rule 59(e).") (quotation omitted).  Moreover, a Rule 60(b)(6) "'will not be used to relieve a party from the "free, calculated, and deliberate choices he has made."'"  *Rivera*, 2022 WL 2752224, at *1; *see also Celino v. Biotronik, Inc.*, 2021 WL 4460338, at *3 (E.D. La. Sept. 29, 2021) (observing that negligence or erroneous strategy choices of a party's attorney, which contributed to dismissal of the party's claims, do not amount to manifest injustice).  Plaintiffs' failure to present evidence which clearly existed at the time they filed their oppositions to summary judgment does not warrant reconsideration of the May 24, 2022 O&R.

Even if Plaintiffs had established a *prima facie* case with respect to any of their claims, which they did not, and even if the alleged evidence of pretext cited in the motions for reconsideration[86] were contemplated in Plaintiffs' summary-judgment briefing or record, which it was not, the "evidence" does not raise a genuine issue of fact as to each of Defendants' nondiscriminatory reasons.  None of the putative "examples of pretext" offered by Plaintiffs addresses, for example, Defendants' proffered nondiscriminatory reason for termination that Muslow and Cunningham did not apply for their respective OCG positions and withheld their

---

[85] *Id.* at 5.  Curiously, Plaintiffs make this accusation against just one of the counsel who represented them at the time their oppositions to summary judgment were filed, but not the other, who continues to represent them and whose name appears in the signature block of all their opposition memoranda.

[86] R. Doc. 460-1 at 5-23.

permission to treat either of them as an applicant.[87]  And "'[w]here, as here, the employee fails to adduce evidence refuting a rational, non-discriminatory reason articulated by the employer, pretext cannot be established by the subjective belief that the illegitimate criterion gender motivated the employer's decision.'"[88]  Plaintiffs' evidence simply fails to show that the nondiscriminatory and nonretaliatory reasons Defendants proffered were false.[89]  So, for this additional reason, Plaintiffs fall well short of meeting the standard for a Rule 59(e) or 60 motion.

Third, Plaintiffs assert that the Court's alleged "assigning [to] Plaintiffs the burden of disproving Defendants' EPA affirmative defenses" is the sort of "manifest error" appropriate to trigger reconsideration under Rule 59(e).[90]  More specifically, they argue that "the Court erred by placing the burden on Plaintiffs to disprove Defendants' affirmative defenses to their EPA claims," and "requiring Plaintiffs to show 'pretext.'"[91]  In its May 24, 2022 O&R, the Court stated that Plaintiffs offered no evidence that Defendants' nondiscriminatory reasons were based on sex and, so, Plaintiffs did not establish pretext.[92]  This was admittedly imprecise shorthand for explaining that Plaintiffs' "arguments" to establish a genuine issue of material fact as to whether the purported reasons (*i.e.*, affirmative defenses under the EPA) were pretextual were insufficient to carry their summary-judgment burden.  The Court did not hold Plaintiffs to the standard of disproving Defendants' affirmative defenses to the EPA claims, but rather, the Court analyzed the summary-judgment record before it and determined that no genuine issue of material fact as to whether Defendants' purported reasons were pretextual had been raised[93] where Plaintiffs merely (1) asserted that "[n]o one at LSUHSC-NO considered whether the compensation paid any individual

[87] R. Doc. 451 at 43.
[88] *Id.* at 46 (quoting *Pippins v. Tangipahoa Par. Council*, 2004 WL 1575410, at *9 (E.D. La. July 13, 2004)).
[89] *See id.* at 44-47.
[90] R. Doc. 497 at 10.
[91] R. Doc. 498 at 7.
[92] R. Doc. 451 at 76.
[93] *Id.*

was in compliance with LSU's policies and the law"; (2) addressed Muslow's job performance; and (3) failed to respond to the argument in support of a nondiscriminatory reason for the pay disparity.[94] Accordingly, Plaintiffs' arguments that the Court committed manifest error of law in its pretext analysis are meritless.

### c. Retaliation

In the May 24, 2022 O&R, the Court dismissed Plaintiffs' claims of retaliation. Plaintiffs now argue that, in doing so, the Court committed manifest error of law, but each of the alleged errors concerns either a previously litigated argument that is merely rehashed, a new argument that could have been raised before, or a misunderstanding of the May 24, 2022 O&R. In no case is reconsideration warranted.

First, Plaintiffs accuse the Court of failing to consider Skinner's February 18 email rescinding Plaintiffs' contracts as the "operative act of retaliation" and, instead, "inexplicably uses the EEOC complaint as the operative act of retaliation."[95] But Plaintiffs have misread the Court's May 24, 2022 O&R. Under the *McDonnell Douglas* framework, the plaintiff-employee asserting retaliation claims under Title VII and the EPA[96] has the initial burden of establishing a *prima facie* case of retaliation by showing (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *Saketkoo*, 31 F.4th at 1000. In analyzing Plaintiffs' *prima facie* case, the Court addressed the February 15, 2019 request for a salary review and the March 26, 2019 EEOC charge as protected activities, even though Plaintiffs did not clearly identify

---

[94] *Id.* at 76, 81.
[95] R. Doc. 461-1 at 14.
[96] *See* R. Doc. 451 at 77 ("The analysis of an EPA retaliation claim mirrors that of a Title VII retaliation claim.").

the "protected activity" they claimed was at issue.[97]  Then, the Court concluded that there was no dispute that Plaintiffs suffered an adverse employment action.[98]  Adding the February 18 email to the mix (even though Plaintiffs failed to brief it adequately) does not alter this conclusion and the Court's subsequent analysis that the retaliation claims could not survive.  The Court determined that the Plaintiffs' retaliation claims failed at the pretext stage and their present futile effort at deflection does not shake the Court's analysis in this respect, especially given Plaintiffs' admission of their "borderline inept briefing."[99]

Second, Plaintiffs argue that their "request for a salary review w[as] quintessentially protected conduct and Defendants' decision to withdraw their contracts is retaliation under Title VII and the EPA."[100]  Plaintiffs rehash an argument made previously, which the Court concluded was meritless.[101]

Finally, Plaintiffs state that "[a] defendant cannot justify its retaliation based on something that occurs after its illegal retaliation."[102]  Plaintiffs did not make this argument before,[103] so they have waived any right to do so now.  Regardless, a cursory review of the Court's analysis reveals that it was not bottomed solely on acts occurring after retaliation.  The decision to retire the LSUHSC-NO general counsel and staff attorney positions antedated the February 18 action.  Accordingly, Plaintiffs have not established that the Court committed a manifest error of law regarding its retaliation analysis.

---

[97] *Id.* at 49.
[98] *Id.* at 53 n.235.
[99] R. Doc. 497 at 4.
[100] R. Doc. 461-1 at 24.
[101] R. Doc. 451 at 57.
[102] R. Doc. 461-1 at 15 (emphasis omitted).
[103] *See* R. Docs. 387 at 21; 388 at 10; 391 at 1-4; 396 at 27-28; 400 at 27-32; 402 at 33-34.

### 2.  Manifest Errors of Fact

Plaintiffs also charge the Court with committing several manifest errors of fact.  Plaintiffs must establish, then, that the Court's errors are "'are plain and indisputable" and "amount[] to a complete disregard of the controlling law.'"  *Wease*, 2021 WL 1604694, at *2 (quoting *Guy*, 394 F.3d at 325).  This they cannot do.  Plaintiffs argue that the Court has improperly weighed evidence, misconstrued the order of events, and made erroneous conclusions of fact.  But their contentions are just a guise for rehashing evidence that could have been offered at the summary-judgment phase and for expressing their disapproval with the Court's determinations.  Importantly, "'[w]hatever may be the purpose of a motion for reconsideration[,] it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.'"  *Pitts v. City of Madison*, 2018 WL 1075729, at *1 (S.D. Miss. Feb. 27, 2018) (alterations in original omitted) (quoting *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)).  And so, while Plaintiffs are undoubtedly unhappy with their briefing submitted at summary judgment and with the May 24, 2022 O&R, they fail to show that the Court committed a manifest error of fact.

### a.  Evidence

Plaintiffs complain that the Court did not address its cited materials.  Rule 56(c) of the Federal Rules of Civil Procedure requires that Plaintiffs support their opposition memoranda to Defendants' motions for summary judgment by citing to materials in the record, such as depositions, documents, or stipulations, to establish that a genuine issue of disputed fact exists.  If Plaintiffs had come forward with supporting evidence to show that a material fact was in dispute, the burden would have shifted to Defendants to demonstrate the inadequacy of the evidence Plaintiffs relied upon, but this did not occur.  With little to no citation to record evidence, Plaintiffs' "support" for establishing their *prima face* case for their claims and for raising a genuine issue of

material fact as to Defendants' nondiscriminatory and nonretaliatory reasons, affirmative defenses, and pretext was insufficient for Plaintiffs to meet their burden as the non-movants on summary judgment.   Now, Plaintiffs ask the Court to reexamine its ruling on the motions for summary judgment in light of evidence that could have been submitted to support their oppositions to the motions for summary judgment but, instead, were attached to the late-filed surreply and now to their Rule 59 and 60 motions.[104]   None of this evidence is in the summary-judgment record.

First, Plaintiffs argue that the evidence cited in the omnibus surreply "presents facts sufficient to take the case to a jury."[105]   But Plaintiffs make no argument that this evidence was "newly discovered" or that it was previously unavailable.   Rather, they admit that they base their motions for reconsideration on "prior arguments and evidence" that was available to them pre-judgment.[106]   But the Fifth Circuit has held that the unexcused failure to present evidence available at the time of summary judgment is a valid basis for denying a motion to reconsider.   *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991); *see also Knight v. Kellogg Brown & Root Inc.*, 333 F. App'x 1, 8 (5th Cir. 2009) ("[T]he plaintiffs fail to adequately explain why they did not obtain these documents before summary judgment, and 'an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration.'") (quoting *ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 445 F.3d 841, 847-48 (5th Cir. 2006)) (alteration omitted).   And Plaintiffs make no claim that the newly cited evidence in their surreply or Rule 59 and 60 motions was unavailable at the time they opposed summary judgment – in other words, when it should have been presented.

---

[104] R. Doc. 497 at 7.
[105] *Id.*
[106] *Id.* at 4.

Second, in an understandable but misguided effort to shift blame from their own filings, Plaintiffs assert that the Court refused to accept evidence cited in their opposition memoranda. For example, Plaintiffs state that the Court neglected Skinner's "undisputed testimony ... that Plaintiffs complained to [him] on February 15, 2019 about unequal pay at the HSC and, because of their complaint, he rescinded their offers the next business day."[107]  This testimony constitutes direct evidence, say Plaintiffs.[108]  But the Court did consider the evidence, as described in detail in its May 24, 2022 O&R.[109]  Then, Plaintiffs take issue with the Court's difficulty in locating testimony from Skinner's deposition (which resulted from Plaintiffs' miscitation to it) when determining whether Plaintiffs' beliefs about gender-pay disparity were objectively reasonable.[110]  What Plaintiffs fail to recognize, though, is that regardless of Skinner's alleged testimony, the Court assumed in its analysis that Plaintiffs' beliefs were objectively reasonable, thus making the "issue" Plaintiffs now raise of no import.[111]  Next, Plaintiffs express their disapproval of the Court for not taking it upon itself to dig through exhibits where no specific page or paragraph was referenced in Plaintiffs' citations.  They argue that the generally cited material, which included two affidavits, was not lengthy, implying that the Court could have and should have sifted through it.[112]  But a court does not have a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.[113]  Consequently, Plaintiffs' argument is unavailing to either (1) relieve Plaintiffs of their burden to support each claim with specific evidence; or (2) call for

---

[107] R. Doc. 461-1 at 14.

[108] *Id.*

[109] R. Doc. 451 at 47-58.

[110] R. Docs. 497 at 7 (citing R. Doc. 451 at 51); R. Doc. 498 at 4; *see also* R. Doc. 461-1 at 8 (stating that the Court refused to accept Skinner's testimony that he took Muslow's salary request to mean that there was potentially a pay disparity between males and females).

[111] R. Doc. 451 at 51 ("Nevertheless, the Court will assume that Plaintiffs' salary review request was objectively reasonable such that it constitutes protected activity.").

[112] R. Docs. 461-1 at 10; 498 at 4.

[113] R. Doc. 451 at 69 n.292.

reconsideration.  In any event, the Court did in fact read the affidavits and cited specific statements found in them in its May 24, 2022 O&R.[114]

Third, Plaintiffs argue that "the Court's 84-page order and reasons offer[s] zero insight into how it concluded that Plaintiffs' evidence did not support so much as an inference in favor of any of their discrimination or retaliation claims."[115]  Plaintiffs' hyperbole notwithstanding, the Court reviewed all the evidence Plaintiffs did cite and thoroughly explained why it did not satisfy their summary-judgment burden.  None of Plaintiffs' arguments meets either the Rule 59(e) or Rule 60(b) standard for establishing that the Court committed a manifest error of fact.

### b.  Order of events

Plaintiffs state that "the Court adopts incorrect assertions as fact and misapplies summary judgment procedure" because, for example, the Court mistook the order of certain events.  Without citation, Plaintiffs argue that "Donna [Dewailly, the OGC business manager,] emailed Plaintiffs on January 18, after they met with Jones and Skinner, not before.  Likewise, Muslow responded to Defendants' March 1 email the same day, rather than March 6 as stated by the Court."[116]  Whether the January 18 email was sent shortly before or after the meeting is immaterial where the timing of this email had no effect on or is addressed in the Court's analysis.  Moreover, that Muslow responded to an email the same day it was received, as opposed to five days later, is likewise immaterial.[117]  The Court's judgment was not based on this order of events, *see Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 32 (5th Cir. 2012) (observing that a Rule 59(e) motion

---

[114] *Id.* at 67-68 n.281.

[115] R. Doc. 461-1 at 5.

[116] R. Doc. 498 at 2; *but see* R. Doc. 400 at 11 (Plaintiffs' opposition to Skinner's motion for summary judgment, which stated that Plaintiffs responded to the March 1 termination email on March 6).

[117] *See* R. Doc. 451 at 8.

may be granted to correct manifest error of fact *upon which the judgment is based*), and, therefore, the Court did not commit a manifest error of fact.

### c. Conclusions

Plaintiffs argue that the Court committed manifest error in making various conclusions. Many of their "arguments," however, are merely expressions of disapproval with the Court's determinations with respect to the summary-judgment record.  Because a Rule 59(e) or Rule 60 motion should not be used to simply express the movant's dissatisfaction with the Court's resolution, Plaintiffs present no grounds that warrant the extraordinary relief the rules provide. *See In re Self*, 172 F. Supp. 2d at 816.

First, Plaintiffs argue that evidence shows conflicting testimony as to when the date of Plaintiffs' transition to the OGC occurred, which would require a credibility determination to resolve, so the Court's resolution of the issue was not proper at summary judgment.[118]  But, the Court did not resolve the issue.  Instead, the Court specifically noted that whether the transfer occurred is disputed, but was not material to its decision.[119]  Undeterred by consistency, Plaintiffs go on to complain that the Court, when determining Skinner's employer status, declined to resolve whether Plaintiffs transferred to OGC.[120]  Plaintiffs again ignore the fact that the Court decided Skinner's employment status independent of the transfer.[121]  In other words, notwithstanding transfer, Skinner is not Plaintiffs' employer.[122]

Second, Plaintiffs take issue with the Court's determination that the termination of the LSU-HSC positions was inevitable, stating that "[t]he Court assumes too much from the few

---

[118] R. Doc. 461-1 at 18.
[119] R. Doc. 451 at 62 n.250.
[120] R. Doc. 498 at 5.
[121] R. Doc. 451 at 62-65.
[122] *Id.*

emails in the record on the topic."[123]  Plaintiffs assert that "[n]o one discusses retiring anyone's positions or[] even[] administratively transferring Plaintiffs or their positions to the OGC; on the contrary, Hollier explicitly disclaims the possibility of Plaintiffs' positions being eliminated."[124] They contend that "the first time in the record that elimination of Plaintiffs' positions arises is in Skinner's March 1[, 2019] email."[125]  But as the Court explained in the May 24, 2022 O&R:

> Plaintiffs have not established that "but for" their salary request, their termination would not have occurred.  *See Garcia* [*v. Pro. Contract Servs, Inc.*], 938 F.3d [236,] 243 [(5th Cir. 2019)].  In December of 2018, months before Plaintiffs' salary request, LSU had in place a plan to terminate their LSUHSC-NO positions in favor of new positions under the OGC.  Defendants then met with Plaintiffs in January of 2019 – again, weeks before the salary request – to discuss the transfer of their positions to OGC in light of PM-72, which provided that only attorneys employed in or through the OGC could represent LSU on legal matters.  Termination of the LSUHSC-NO positions was inevitable under PM-72.  Plaintiffs' failure to execute the tendered employment contracts with OGC or to apply for the new OGC positions – despite being prompted and invited to do so multiple times – cemented their termination.  Thus, while there may be several "but for" reasons for Plaintiffs' termination, none of those reasons is their alleged protected activity.
>
> Put differently, even if Plaintiffs' subsequent request for a salary review played a part in their termination (which cannot be said on this summary-judgment record), "no liability for unlawful retaliation arises if the employee would have faced that discipline even without the protected conduct."  *Wantou* [*v. Wal-Mart Stores Tex., L.L.C.*], 23 F.4th [422,] 437 [(5th Cir. 2022)].  LSU had floated its plan to retire Plaintiffs' positions as early as August 2018, and started the process in December 2018, so that all legal resources could be consolidated under the OGC.  Thus, Plaintiffs' termination from their LSUHSC-NO positions was inevitable even without the protected conduct.[126]

Plaintiffs' contention that "[n]o one discusses retiring anyone's positions or[] even[] administratively transferring Plaintiffs or their positions to the OGC"[127] is patently contradicted by the summary-judgment record.

---

[123] R. Doc. 461-1 at 12.
[124] *Id.*
[125] *Id.* (emphasis omitted).
[126] R. Doc. 451 at 57-58 (footnote citations to summary-judgment record omitted).
[127] R. Doc. 461-1 at 12.

In a similar vein, Plaintiffs charge the Court with "accept[ing] without evidence Defendants' contention that they 'planned to retire' Plaintiffs' positions as early as 2018."[128]  But, say Plaintiffs, "Defendants' own evidence shows, at the time, they 'knew of no effort to eliminate positions.'"[129]  Plaintiffs cite to an August 7, 2018 email from Hollier wherein he writes that he "kn[e]w of no effort to eliminate [Plaintiffs'] positions" in response to Muslow's email asking if her position would be eliminated or taken away with the advent of the integration of all legal services through the OGC.[130]  Hollier was likely reassuring Muslow that she would not lose her job with LSU (had she simply executed her employment agreement), but he was certainly not countermanding LSU's avowed plan.  Regardless, that LSU planned to retire the two LSUHSC-NO pre-consolidation attorney positions was expressly contemplated in LSU's December 10, 2018 revision of Permanent Memorandum-72, which stated that "[o]nly attorneys employed in or through the Office of General Counsel [which Plaintiffs were not] may represent the University on legal matters.  University employees with legal degrees but working outside of the Office of General Counsel are not authorized to provide legal advice to or on behalf of the University."[131]  In accordance with Permanent Memorandum-72, which is certainly evidence of LSU's plan, LSU would have to retire the positions of Plaintiffs, who worked at a separate, non-OGC entity.  Plaintiffs thus cannot establish that the Court committed a manifest error of fact on this score either.

---

[128] R. Doc. 498 at 3.
[129] *Id.* (citing R. Doc. 372-4 at 101).
[130] R. Doc. 372-4 at 101 (cited by the Court in its May 24, 2022 O&R).
[131] R. Doc. 372-5 at 3.

### 3. **Manifest Injustice**

Notwithstanding their failure to identify a manifest error of law or fact, Plaintiffs allege that reconsideration is necessary to prevent manifest injustice.[132]   Plaintiffs, however, do not explain what manifest injustice would result if the Court declined to reconsider its May 24, 2022 O&R.   Because Plaintiffs have not shown that the Court committed a manifest error of law or fact, and cannot show manifest injustice, their motions must be denied.

Few cases discuss the manifest injustice standard.   *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 2017 WL 3582385, at *5 (E.D. La. Aug. 18, 2017).   And while "[t]here is no general definition of manifest injustice," *Bender Square Partners v. Factory Mut. Ins. Co.*, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012), it is clear that "[e]stablishing a manifest injustice is a high hurdle; 'a showing of such requires that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy.'"   *In re Trevino*, 633 B.R. 485, 507 (Bankr. S.D. Tex. 2021) (quoting *Bender Square Partners*, 2012 WL 1952265, at *4) (internal citation and alteration omitted).   Courts evaluate manifest injustice on a case-by-case basis.   *Bender Square Partners*, 2012 WL 1952265, at *4. "'A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable.   In order for a court to reconsider a decision due to manifest injustice, the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.'"   *Id.* (quoting *In re Roemmele*, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012)) (alteration omitted).

"Importantly, 'there is no manifest injustice for purposes of a Rule 59(e) motion where a party could easily have avoided the outcome, but instead elected not to act until after a final order

---

[132] R. Doc. 497 at 1.

had been entered.'" *Id.* (quoting *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 2011 WL 3489599, at *5 (S.D. Tex. Aug. 9, 2011)) (alterations omitted).  "Nor is there manifest injustice 'if the only error the movant seeks to correct is a poor strategic decision.'"  *Id.* (quoting *In re Cusano*, 431 B.R. 726, 734 (B.A.P. 6th Cir. 2010)).  Again, "the negligence or erroneous strategy choices of a party's attorney or the party herself, which contributed to the court's dismissal of the party's claims, do not amount to manifest injustice."  *Courtade*, 2011 WL 2446454, at *4 (collecting cases).  And so, "'Rule 59(e) does not require a court to rescue parties from the consequences of their own choices.'"  *Hanover Ins. Co.*, 2017 WL 3582385, at *6 n.39 (quoting *Zarcone v. United States*, 2004 WL 2196560, at *2 (N.D. Cal. Sept. 27, 2004)).

Plaintiffs have not begun to show that there exists a "fundamental flaw" in the Court's decision, nor can it be said that the Court committed any "indisputable" error.  Plaintiffs could have timely provided evidence in support of their oppositions to Defendants' summary-judgment motions, but, despite having a team of counsel and both Plaintiffs being attorneys, they elected not to do so.  Compounding that failure, they then neglected to (1) review their counsel's opposition memoranda until a month after submission; (2) take action until two months after the submission date in a misguided attempt to correct their counsel's work via the late-filed surreply; and (3) express any disagreement with the Court's order denying their motion for leave to file the surreply until well after the Court's order granting the motions for summary judgment had been entered.  A Rule 59(e) or 60(b) motion is not the proper vehicle to rehash arguments, legal theories, and evidence that was, as Plaintiffs concede here, readily available to them at the time their oppositions to summary judgment were due.  Nor is it the proper vehicle to attempt to correct their counsel's alleged mistakes.  And so, Plaintiffs have not identified any basis for concluding that reconsideration of the May 24, 2022 O&R is necessary in order to prevent manifest injustice.

In short, absent a showing of manifest error of law or fact upon which the judgment is based, newly discovered or previously unavailable evidence, manifest injustice, an intervening change in the controlling law, mistake, inadvertence, surprise, or excusable neglect, fraud, misrepresentation, or misconduct by an opposing party, or that the judgment is void or has been satisfied, released or discharged, there is no justification for the extraordinary relief Plaintiffs seek. Therefore, Plaintiffs' motions must be denied.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' Rule 59 or 60 motions (R. Docs. 460; 461) are DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion to strike (R. Doc. 481) is DENIED.

New Orleans, Louisiana, this 17th day of August, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE