UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE MUSLOW, *et al.*                    CIVIL ACTION

VERSUS                                         NO. 19-11793

BOARD OF SUPERVISORS OF                        SECTION M (2)
LOUISIANA STATE UNIVERSITY,
AND AGRICULTURAL AND
MECHANICAL COLLEGE, *et al.*

## ORDER & REASONS

Before the Court is a motion for summary judgment on forfeiture filed by defendant Board

of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU").[1]

Plaintiffs Katherine Muslow and Meredith Cunningham (together, "Plaintiffs") respond in

opposition.[2]  LSU replies in further support of its motion,[3] and Plaintiffs file a surreply.[4]  Having

considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

## I.      BACKGROUND

This case involves an employment dispute between LSU and Plaintiffs, who were

employed as full-time general counsel (Muslow) and part-time staff attorney (Cunningham) at

LSU's Health Sciences Center in New Orleans ("LSUHSC-NO") until their positions were retired

pursuant to LSU's plan to consolidate its university-wide legal team into its office of general

counsel ("OGC").[5]  In the fall of 2018, LSUHSC-NO chancellor Larry Hollier informed Muslow

of the consolidation plan,[6] which involved transferring Plaintiffs to two new attorney positions

---

[1] R. Doc. 564.
[2] R. Doc. 566.
[3] R. Doc. 567.
[4] R. Doc. 568.
[5] R. Docs. 564-2 at 5; 566 at 2-3.
[6] R. Doc. 564-4 at 10.

within the OGC at salaries matching each Plaintiff's then-current LSUHSC-NO salary.[7]   On December 18, 2018, Muslow forwarded to her personal email address a copy of a 2017 LSUHSC-NO Unclassified Employee Market Study (the "Market Study") and related documents, which she had obtained to respond to a public-records request in her capacity as general counsel to LSUHSC-NO.[8]   In January 2019, OGC vice president of legal affairs Thomas Skinner and OGC deputy general counsel Carlton Jones met with Plaintiffs regarding the consolidation plan, and Plaintiffs were provided with unexecuted, proposed employment contracts for the OGC positions.[9]

Between December 2018 and January 2019, Plaintiffs retained counsel regarding their concerns about the consolidation plan and pay equity.[10]   Around the same time, Plaintiffs drafted an email to Skinner which argued that, based on the results of the Market Study, their salaries should be increased "to ameliorate an environment at [LSUHSC-NO] that has not seemed historically to view equity as potentially a gendered issue"[11] (the "Salary-Review Email"). Muslow sent Skinner the Salary-Review Email on February 15, 2019, with the Market Study attached and Cunningham copied on the email.[12]   On February 18, LSU rescinded Plaintiffs' OGC employment offers "pending further review" for the stated reason that the contracts had not been executed or returned by the February 1 effective date.[13]   Plaintiffs filed EEOC charges against LSU on March 26, 2019.[14]   On March 26 and 27, Cunningham forwarded several documents from her LSU email address to her personal email address.[15]   On March 28, the two OGC positions were

---

[7] *Id.* at 11-17.
[8] R. Doc. 564-5 at 28-29.
[9] R. Docs. 564-1 at 3; 564-4 at 12-17.
[10] R. Doc. 564-6 at 32-33.
[11] *Id.* at 31-32; R. Doc. 564-4 at 19.
[12] R. Doc. 564-4 at 18.
[13] R. Doc. 564-5 at 1-4.
[14] R. Doc. 564-6 at 38.
[15] *Id.* at 37-40.

posted online.[16]  Plaintiffs were each personally invited to apply by OGC staff,[17] but they refused to do so.[18]  Plaintiffs remained in their LSUHSC-NO positions until those positions were retired pursuant to the consolidation plan – on June 30, 2019, for Cunningham and July 15, 2019, for Muslow.[19]

On July 22, 2019, Plaintiffs filed this action against LSU and several individual defendants alleging violations of Title VII, Title IX, the Equal Pay Act ("EPA"), 42 U.S.C. § 1983, and the Louisiana Employment Discrimination Law.[20]  Plaintiffs amended their original complaint in response to a motion to dismiss, attaching a copy of the Market Study to their amended complaint.[21]  LSU moved to strike, *inter alia*, the Market Study from the pleadings because it was not freely accessible in the public domain, Plaintiffs only gained access to it in their former capacity as counsel to LSU, and they had sent it to their personal email addresses without LSU's authorization.[22]  Plaintiffs opposed the motion to strike, arguing that, because the Market Study was subject to disclosure under Louisiana's Public Records Law and was so disclosed, it was not confidential.[23]  The Court granted LSU's motion to strike the Market Study, holding that their use of "a document and information which they possess only as a consequence of their former representation of LSU" in their complaint violated Louisiana Rule of Professional Conduct 1.9,[24] which forbids "[a] lawyer who has formerly represented a client in a matter" from "us[ing] information relating to the representation to the disadvantage of the former client."[25]  The Court

---

[16] R. Doc. 551-6 at 20-21, 23-24.
[17] *Id.* at 22, 25.
[18] R. Doc. 551-7 at 1-4.
[19] R. Doc. 564-2 at 5.
[20] R. Doc. 1.
[21] R. Doc. 31; *see also* R. Doc. 45 at 16-17.
[22] R. Doc. 33-1 at 9-11.
[23] R. Doc. 36 at 5.
[24] R. Doc. 45 at 16-17 (quote at 17).
[25] La. R. Pro. Conduct 1.9(c)(1).

also issued a protective order requiring Plaintiffs "to return to the LSU Board any documents or other information belonging to LSU which came into their possession by virtue of their service as counsel to LSU [and] identify to [d]efendants all persons who have received or viewed any such documents or information."[26]  Plaintiffs sought reconsideration of that order,[27] which the Court denied (the "August 4, 2020 Order").[28]

After extensive preliminary motion practice and with the filing of a third amended complaint, the Plaintiffs' claims included gender discrimination in violation of Title VII against LSU, retaliation in violation of Title VII against LSU, gender discrimination in violation of the EPA against LSU and three individual defendants, retaliation in violation of the EPA against LSU and three individual defendants, and gender discrimination in violation of § 1983 against two individual defendants.[29]  Thereafter, the Court granted the defendants' motions for summary

---

[26] R. Doc. 45 at 20.  A year after the Court issued this protective order, then-defendant Hollier filed a motion for enforcement of the protective order (R. Doc. 147), alleging that Plaintiffs included in their initial disclosures "copies of LSU documents returned by Plaintiffs on August 18, 2020, and which continued to remain in Plaintiffs' possession, in this form, without LSU or Court consent."  R. Doc. 147-1 at 7.  After hearing oral argument, the Court granted Hollier's motion, finding that Plaintiffs violated the protective order and sanctioning and ordering Plaintiffs and their counsel to pay $10,000 *in solido* to LSU.  R. Doc. 175.

[27] R. Doc. 55.

[28] In denying Plaintiffs' motion for reconsideration, the Court explained:

Neither … Rule 1.6(b)(5), nor any of the cases cited by Plaintiffs authorizes a former attorney (or any former employee, for that matter) to take documents from their former client/employer and thereby to end-run formal processes such as discovery, and then to use those documents in litigation against that former client/employer. … No matter the litigant, self-help discovery is impermissible, but furthermore, Plaintiffs are duty-bound, as are all lawyers, not to disclose their client's confidences without authorization and loyally to serve the interests of their client.  Thus, except under specified limited circumstances, an attorney may not divulge her client's confidences.  A confidence in this context means exactly what the rule says – any "information relating to representation of a client."  The ethical duty of confidentiality is not nullified by the fact that the information is part of a public record or by the fact that someone else is privy to it.  It is irrelevant whether the [Market] Study is technically confidential or secret; instead, the crucial point is that the [Market] Study is information Plaintiffs obtained solely due to their former positions of trust as lawyers for LSU.

R. Doc. 83 at 8-10 (footnote, internal citations, quotations, and alterations omitted).

[29] R. Doc. 99.

judgment, dismissing all of Plaintiffs' claims,[30] and upon Plaintiffs' appeal,[31] the Fifth Circuit affirmed the dismissal as to all but one of Plaintiffs' claims.

The Fifth Circuit determined that, as of the summary-judgment stage, Plaintiffs had established a *prima facie* case with respect to their claim "that LSU retaliated against [them] by revoking their employment contracts following their salary-review request," and the court remanded the action for further proceedings on that remaining claim.[32] The parties identified three dispositive issues remaining on remand: what damages are available, whether Plaintiffs forfeited their Title VII and EPA protections, and, if necessary, whether LSU could limit back- and front-pay damages under the after-acquired evidence doctrine.[33] The Court then ordered that the parties address all dispositive issues via motions for summary judgment, beginning with damages.[34] The Court granted LSU's motion for summary judgment limiting damages in most all respects.[35] LSU now moves for summary judgment on forfeiture.[36]

## II.    PENDING MOTION

In its motion for summary judgment on forfeiture, LSU argues that Plaintiffs cannot establish a *prima facie* case of retaliation because they forfeited their protections under Title VII

---

[30] R. Docs. 451; 452.

[31] R. Docs. 502; 503.

[32] *Muslow v. La. State Univ. & Agric. & Mech. Coll., Bd. of Supervisors*, 2023 WL 5498952, at *7 (5th Cir. Aug. 24, 2023) [hereinafter *Muslow v. LSU*] (R. Doc. 511-1 at 16), *cert. denied*, 144 S. Ct. 573 (2024).

[33] R. Doc. 541 at 2. Because the Court subsequently held that back- and front-pay are not available, R. Doc. 561 at 26-33, the parties agree that the after-acquired evidence doctrine is no longer at issue. *See* R. Docs. 566 at 12 ("LSU has not, nor can it, move for summary judgment on an after-acquired evidence defense because LSU admitted during the Court's last status conference hearing that such a defense is irrelevant now given the Court's order on Plaintiffs' damages."); 567 at 8 ("While the after-acquired evidence defense was raised by LSU in this suit, this defense relates to limitation of back pay, front pay, and reinstatement damages for later-discovered employee misconduct. Thus, this damages defense is not at issue in LSU's forfeiture motion, and Plaintiffs' related opposition arguments are not relevant to the separate dispositive issue regarding conduct that results in a forfeiture of alleged protected activity under Title VII and the EPA." (emphasis and internal citation omitted)).

[34] R. Doc. 541.

[35] R. Doc. 561.

[36] R. Doc. 564.

and the EPA.[37]  LSU contends that Plaintiffs forfeited these protections by breaching their ethical duties of confidentiality and loyalty owed to LSU (their employer-client) under Louisiana Rules of Professional Conduct 1.6, 1.7, and 1.8 by "engag[ing] in self-help conduct that included the removal of LSU information to personal email addresses in preparation for personal pay claims against their employer-client,"[38] and through "Muslow's advocacy on behalf of Cunningham in the [S]alary-[R]eview [E]mail [which] constituted an adverse and conflicting position against their employer-client that was not supported by informed consent or a conflict waiver by LSU."[39]  LSU asserts that there was "no legitimate basis" for Plaintiffs to bypass the formal records-request process or for Muslow to advocate on Cunningham's behalf.[40]  In support of its argument that Plaintiffs violated their duty of confidentiality, LSU quotes this Court's August 4, 2020 Order, in which the Court explained that Plaintiffs violated Louisiana Rule of Professional Conduct 1.9(c)(1) by removing and retaining the Market Study after their representation of LSU ended and then using it in their complaint against LSU, even though it may not have been "'technically confidential or secret,'" because "'the crucial point is that the [Market] Study is information Plaintiffs obtained solely due to their former positions of trust as lawyers for LSU.'"[41]  Lastly, LSU argues that, while in-house counsel are subject to the protections of Title VII and EPA, these protections "do[] not outweigh LSU's 'reasonable expectation that its attorneys will abide by the profession's ethical edicts.'"[42]

---

[37] R. Doc. 564 at 1.

[38] R.Doc. 564-2 at 15-20 (quote at 16).

[39] *Id.* at 16-17 (quote at 17).

[40] *Id.* at 19.

[41] *Id.* at 19-20 (quoting R. Doc. 83 at 10).

[42] *Id.* at 20-23 (quote at 21) (alteration omitted) (quoting *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 375 (5th Cir.1998)).

In their opposition, Plaintiffs first contend that LSU's argument that Plaintiffs fail to establish a *prima facie* case of retaliation because they forfeited their Title VII and EPA protections conflicts with the Fifth Circuit's "exact opposite holding" that Plaintiffs had established a *prima facie* case as to their retaliatory recission claim.[43]  Plaintiffs further argue that because the forfeiture issue "was already fully briefed to the Fifth Circuit" on appeal, the Fifth Circuit "necessarily rejected it in holding that Plaintiffs established a *prima facie* case of retaliation."[44]  Plaintiffs also argue that LSU's forfeiture argument lacks merit.  In particular, Plaintiffs contend that, because "Muslow properly had the Market Study and related attachments in her possession through her work," the fact that she sent them to herself is "simply irrelevant."[45]  LSU then questions "how attaching such properly obtained documents to a pay-disparity email sent *to one's employer-client* is a breach of any ethical duty of confidentiality."[46]  Plaintiffs assert that LSU's loyalty argument would preclude any in-house lawyer from opposing the employment practices of her employer by automatically treating any such opposition as a breach of counsel's duty not to take a position "adverse to a client."[47]  In response to LSU's assertion that Muslow improperly "advocated" for Cunningham against LSU via the Salary-Review Email, Plaintiffs contend that "'opposition to discriminatory employment practices against a fellow employee may constitute [protected] activity'"[48] and that this argument contradicts LSU's "own allegations that Cunningham was fully involved in drafting and reviewing that email, and she was copied on that email."[49]  Plaintiffs also argue that LSU improperly conflates "irrelevant" conduct that took place "long before or after the

---

[43] R. Doc. 566 at 1-6 (quote at 1-2).
[44] *Id.* at 4-6 (quote at 4) (emphasis omitted).
[45] *Id.* at 7.
[46] *Id.* (emphasis in original).
[47] *Id.* at 8.
[48] *Id.* at 9 (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 727 (5th Cir. 1986)).
[49] *Id.*

protected activity" with their actual opposition conduct (the Salary-Review Email), and that "forfeiture turns on whether the *actual alleged opposition activity* is so disruptive as to warrant forfeiture of that *opposition activity*."[50]  Plaintiffs contend that LSU's "reliance on Muslow's months-prior conduct" is really "a disguised [though baseless] after-acquired evidence affirmative defense."[51]  Plaintiffs further argue that their having sent documents and information to themselves via email is not "an unethical 'revealing of information'" in violation of Rule 1.6, since their disclosures of this information to counsel were protected by Rule 1.6(b)(5), which provides an exception to an attorney's confidentiality obligations for information the attorney "reasonably believes necessary … to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client."[52]  As to LSU's reliance on the August 4, 2020 Order, Plaintiffs argue that their "possession and use of documents obtained from LSU in this lawsuit" cannot "retroactively nullify a prior protected activity."[53]  Plaintiffs finally argue that the cases cited by LSU are distinguishable because those cases involved disclosure of confidential information to third-parties or conduct that was "truly disruptive and egregious,"[54] whereas "[h]ere, Plaintiffs sent a single email to their boss raising gender pay-equity concerns based on information they properly obtained through their employment."[55]

In its reply, LSU first denies that the Fifth Circuit's opinion resolved the issue of forfeiture and posits that "the unresolved issue in the instant motion is [properly framed as] whether the protections that ordinarily attach to alleged opposition activity under Title VII and the EPA [were]

---

[50] *Id.* at 10 (emphasis in original).
[51] *Id.* at 11.
[52] *Id.* (alteration omitted) (quoting La. R. Pro. Conduct 1.6(a)).
[53] *Id.* at 13-14 (emphasis omitted).
[54] *Id.* at 14-17 (quote at 15).
[55] *Id.* at 16.

forfeited by Plaintiffs['] conduct while employed as LSU legal counsel."[56]  LSU then contests Plaintiffs' characterization of Skinner as their "boss"[57] and rejects Plaintiffs' assertion that they "properly possessed" the Market Study and other documents because "the receipt of LSU documents to complete legal duties did not authorize the surreptitious removal, retention, and later use of such removed documents for personal purposes against their employer-client."[58]  LSU denies taking the position that in-house counsel may never oppose their employers' practices under Title VII and the EPA, but rather "object[s] to the manner and method in which Plaintiffs did so considering their roles as LSU legal counsel and applicable professional rules of conduct."[59]  LSU then argues that, contrary to Plaintiffs' assertion, Cunningham's participation in drafting and editing the Salary-Review Email does not negate LSU's advocacy claim, but "confirm[s Cunningham's] awareness of Muslow's intent to advocate against their mutual client on behalf of Cunningham's own personal pay claim."[60]  LSU also asserts that Rule 1.6(b)(5) does not protect Plaintiffs' removal of the Market Study and other information from LSU to advance their claims.[61]  LSU further argues that Planitiffs' conduct before and after sending the Salary-Review Email on February 15, 2019, "is relevant factual context regarding the [Salary-Review E]mail,"[62] and denies raising a "disguised after-acquired evidence affirmative defense."[63]  Finally, LSU rejects Plaintiffs' argument that the cases it cites are distinguishable from the facts here and argues that the cases "instead confirm that forfeiture of protected activity can occur in a variety of ways."[64]

---

[56] R. Doc. 567 at 3 (emphasis and footnote omitted).
[57] *Id.* at 3-4.
[58] *Id.* at 4 (emphasis omitted).
[59] *Id.* at 4-5 (quote at 4).
[60] *Id.* at 6.
[61] *Id.* at 6-7.
[62] *Id.* at 7.
[63] *Id.* at 7-8 (quote at 7).
[64] *Id.* at 8-10 (quote at 9).

In their surreply, Plaintiffs repeat that LSU's forfeiture argument is foreclosed by the Fifth Circuit's opinion.[65]  In response to LSU's argument that Skinner was not their "boss," Plaintiffs argue that "LSU cannot dispute that – as the General Counsel to the Board of LSU, the Title IX officer, and the head of the Office of General Counsel at LSU – he was an appropriate person to whom Plaintiffs could raise gender-based pay-equity concerns."[66]  Plaintiffs then reiterate their arguments that "Rule 1.6(b)(5) … specifically permits the disclosure of client confidences 'to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client'"[67] and that LSU's position would "discourage in-house counsel in particular, and employees more generally, from internally raising discrimination or retaliation issues at all."[68]  As to LSU's argument that Muslow improperly advocated for Cunningham, Plaintiffs counter that "LSU cites no case supporting its view that in-house counsel can never jointly raise discrimination or retaliation concerns to their employer via a single email."[69]  Plaintiffs then contend that LSU has not explained how the Salary-Review Email was "so unreasonable, disruptive, or egregious" that it forfeited Plaintiffs' protections under Title VII and the EPA.[70]  Plaintiffs again argue that LSU improperly "conflates [their] protected activity [that is, the Salary-Review Email] with Plaintiffs' sending of emails to themselves … months before or months after that protected activity,"[71] and further assert that, "[i]n any event," LSU has not shown that Plaintiffs' sending documents to their personal email addresses constituted a violation of their duty of confidentiality.[72]  Finally, Plaintiffs reiterate their argument that the cases relied upon by LSU are

---

[65] R. Doc. 568 at 2.
[66] *Id.* at 3-4.
[67] *Id.* at 4 (emphasis and alteration omitted).
[68] *Id.* (emphasis omitted).
[69] *Id.* at 4-5 (quote at 4).
[70] *Id.* at 5.
[71] *Id.* at 5-7 (quote at 5).
[72] *Id.* at 6.

distinguishable because "Plaintiffs [did not] reveal[] LSU's confidences to any third-party (except their lawyer), and certainly not outside of the context of trying to establish their claims against LSU. Nor did Plaintiffs engage in any conduct even remotely similar to the types of opposition activity courts have found unprotected."[73]

## III.    LAW & ANALYSIS

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a

---

[73] *Id.* at 7-8.

whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37

F.3d at 1075-76.

## B. ANALYSIS

Title VII and the EPA protect employees from retaliation for opposing employer practices that violate the statutes' substantive provisions. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 215(a)(3). To establish a retaliation claim under either Title VII or the EPA, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017); *see also Thibodeaux-Woody v. Hous. Cmty. Coll.*, 593 F. App'x 280, 285 (5th Cir. 2014) (observing that an analysis of a Title VII or an EPA retaliation claim concerns the same elements). Retaliation claims based on circumstantial evidence, like Plaintiffs' retaliatory rescission claim here, are analyzed under the *McDonnell Douglas* burden-shifting framework. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022). Under the *McDonnell Douglas* framework, the plaintiff-employee has the initial burden of establishing a *prima facie* case of retaliation by showing (1) that she engaged in a protected activity, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Id.* "If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to introduce evidence of a legitimate, nonretaliatory reason for the adverse employment action." *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30, 32 (5th Cir. 2016) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996)). "If the employer meets its burden, the 'plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real retaliatory purpose.'" *Id.* (alteration omitted) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

For activity to be protected under Title VII and the EPA, "the employee's conduct must have 'opposed' the employer's practice" and the plaintiff must have "reasonably believed the practice was unlawful." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209-10 (5th Cir. 2021) (emphasis omitted). Protected opposition conduct includes "informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981). However, "[n]ot all activities taken in opposition to an employer's perceived discriminatory practices … remain insulated from reprisal under Title VII's shield. … [S]ome conduct, even though engaged in with the most sincere of intentions, may be so inappropriate as to justify the curtailment of statutorily-afforded safeguards." *Douglas*, 144 F.3d at 373 (internal citations omitted) (citing *Smith v. Tex. Dep't of Water Res.*, 818 F.2d 363, 365-66 (5th Cir.1987); *Jones,* 793 F.2d at 727); *see also Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980) ("[T]he courts have required that the employee conduct be reasonable in light of the circumstances, and have held that 'the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare.'" (quoting *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 233 (1st Cir. 1976)); *Armstrong*, 647 F.2d at 448 ("Section 704(a) [of Title VII] … was not intended to immunize insubordinate, disruptive, or nonproductive behavior at work."). In the specific context of opposition conduct by in-house counsel, the Fifth Circuit has held:

> [W]hen an attorney's Title VII right to oppose her employer-client's allegedly discriminatory practices by disclosing confidential information contrary to the ethical obligations of the profession is balanced against her employer-client's right to ethical representation and the profession's interest in assuring the ethical conduct of its members, the employer's and the profession's interests must prevail.

*Douglas,* 144 F.3d at 376. In *Douglas*, the lawyer-plaintiff-employee opposed alleged race and gender discrimination by drafting a letter in which she discussed information related to her

representation of her employer-client, including information about another employee's discrimination complaint and a separate business matter, and then furnishing the letter to "an individual outside the confines of the company." *Id.* at 367. The court assumed that, because "the [l]etter appear[ed] to meet the litmus test for activity constituting opposition under Title VII," it "qualifie[d] as opposition activity." *Id.* at 373. However, the Court ultimately found that dissemination of the letter was not protected opposition activity because it "breached [the plaintiff's] professional duties of confidentiality and of loyalty [by revealing] to a third party information relating to the representation of her client." *Id.* at 375.

### 1. Law of the Case

In the instant case, the Fifth Circuit held that Plaintiffs established a *prima facie* case of retaliation as to LSU's rescission of the proposed OGC employment contracts.[74] In so holding, the Fifth Circuit determined that Plaintiffs had satisfied their "burden at the summary judgment stage to show that their salary-review request was a protected activity."[75] However, LSU argues that "Plaintiffs cannot establish a *prima facie* case of retaliatory rescission of [the] proposed OGC employment contracts" because Plaintiffs forfeited their protections under Title VII and the EPA by violating their duties as lawyers of loyalty and confidentiality.[76] The parties agree that the issue

---

[74] *Muslow v. LSU* at *8 (R. Doc. 511-1 at 18) ("[W]e find that Plaintiffs have established a prima facie case of retaliation with respect to this [Salary-Review Email] allegation."). Although the Fifth Circuit observed that Plaintiffs "identified two adverse employment actions related to this allegation – the rescission of their employment contracts, and their eventual termination – and provided evidence linking such actions to their salary-review request," *id.* (R. Doc. 511-1 at 18), it determined at the pretext stage that Plaintiffs failed to establish that the Salary-Review Email was the but-for cause of their eventual termination, *id.* at *9 (R. Doc. 511-1 at 19) ("At this stage, Plaintiffs must establish that [d]efendants' asserted reasons for rescinding their employment contracts and terminating their positions are pretext for the real, retaliatory purpose. … Muslow and Cunningham have not met this burden with respect to their termination from LSUHSC[-NO]."), and accordingly dismissed this retaliatory discharge claim. *Id.* at *10 (R. Doc. 511-1 at 21) ("[T]he recission of their employment contracts … is the only alleged retaliatory action that we hold survives summary judgment.").

[75] *Id.* at *8 (R. Doc. 511-1 at 18).

[76] R. Doc. 564-2 at 1.

of forfeiture was fully briefed on appeal.[77]  According to Plaintiffs, "[t]hat necessarily means that the Fifth Circuit rejected LSU's argument that the [Salary-Review E]mail *was not* a protected activity."[78]  LSU counters that forfeiture is a "separate dispositive issue[]" from the Fifth Circuit's determination that the Salary-Review Email was a protected activity.[79]

While Courts in general may analyze whether an activity "meet[s] the litmus test for activity constituting opposition under Title VII" separately from whether that activity "remain[s] insulated from reprisal under Title VII's shield," *Douglas*, 144 F.3d at 373, the Fifth Circuit's prior holding in this case – with LSU's full briefing of the forfeiture issue before it – that Plaintiffs met their summary-judgment burden of showing that the Salary-Review Email "was a *protected* activity"[80] and "establish[ing] a *prima facie* case of retaliation with respect to this allegation"[81] precludes this Court from now holding that Plaintiffs' conduct was unprotected.  The Fifth Circuit further held that Plaintiffs "provided substantial evidence regarding that their employment contracts at OGC would not have been rescinded but for the [Salary-Review Email] … sufficient to overcome summary judgment on this allegation of retaliation."[82]  The *Douglas* court clarified that "[s]o long as the conduct actually constituted a violation of the profession's ethically imposed duties, the employer is insulated from liability *irrespective of whether it took adverse employment action because the conduct constituted a breach or because the conduct was in opposition to discriminatory employment practices*."  *Id.* at 377 n.16 (emphasis added).  Accordingly, granting summary judgment in favor of LSU because LSU was "insulated from liability" would contravene

---

[77] *See* R. Docs. 564-2 at 4 ("The [forfeiture] issue was further preserved by [d]efendant LSU at the appellate stage."); 566 at 4 ("LSU admits that issue was already fully briefed to the Fifth Circuit."); *see also* Original Br. of Def.-Appellee at *51-54, *Muslow v. LSU*, No. 22-30585, 2023 WL 440805 (5th Cir. Jan. 17, 2023); Pl's-Appellants' Combined Reply Br. at *9-10, *Muslow v. LSU*, No. 22-30585, 2023 WL 2627168 (5th Cir. Mar. 16, 2023).
[78] R. Doc. 566 at 6 (emphasis in original).
[79] R. Doc. 567 at 3.
[80] *Muslow v. LSU* at *8 (R. Doc. 511-1 at 18) (emphasis added).
[81] *Id.* (R. Doc. 511-1 at 18).
[82] *Id.* at *9 (R. Doc. 511-1 at 19-20).

the Fifth Circuit's holding that Plaintiffs provided sufficient evidence of pretext to survive summary judgment.

Thus, even though the Fifth Circuit did not expressly analyze "whether the protections that ordinarily attach to alleged opposition activity under Title VII and the EPA [were] forfeited by Plaintiffs['] conduct while employed as LSU legal counsel,"[83] the law-of-the-case doctrine bars this Court from holding that Plaintiffs forfeited their protections under Title VII and the EPA.  The Fifth Circuit's implicit rejection of LSU's forfeiture argument was a "necessary predicate[]" to its holdings that Plaintiffs' opposition conduct was protected and that Plaintiffs established a *prima facie* case of retaliation and provided sufficient evidence of pretext to survive summary judgment. *See In re AKD Invs., L.L.C.*, 79 F.4th 487, 494 (5th Cir. 2023) ("'Even when issues have not been expressly addressed in a prior decision, if those matters were fully briefed to the appellate court and necessary predicates to the court's ability to address the issue or issues specifically discussed, those issues are deemed to have been decided tacitly or implicitly, and their disposition is law of the case.'" (alterations omitted) (quoting *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001))).

In any event, as discussed below, the Court finds LSU's forfeiture argument to be without merit because Plaintiffs' opposition activity – sending the Salary-Review Email to Skinner – did not breach their ethical duties to LSU.

### 2.  Forfeiture

Plaintiffs were members of the Louisiana bar while employed as in-house counsel to LSUHSC-NO,[84] and thus at all relevant times were subject to the Louisiana Rules of Professional

---

[83] R. Doc. 567 at 3.
[84] R. Doc. 564-2 at 5.

Conduct, which this Court has adopted as its own rules of conduct.  *See* Local Rule 83.2.3.  LSU argues that "Plaintiffs' alleged opposition activity was conducted in a manner that violated [their] ethical duties under" Rules 1.6, 1.7, and 1.8 of the Louisiana Rules of Professional Conduct.[85]  In particular, LSU argues that Plaintffs' "unauthorized removal, retention, and reliance on LSU information obtained through their LSU representation" and "advocacy by Muslow on behalf of her direct report (Cunningham) that was adverse to their mutual client" violated their duties of confidentiality and loyalty.[86]

### a.  The Salary-Review Email did not violate Plaintiffs' ethical duties to LSU.

Rule 1.6 of the Louisiana Rules of Professional Conduct provides, in relevant part, that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)."  La. R. Pro. Conduct 1.6(a).  LSU contends that Plaintiffs violated Rule 1.6 by attaching and discussing the Market Study in their Salary-Review Email, because the Market Study "was information relating to the representation of LSU that Plaintiffs were in possession of solely due to their positions of trust as lawyers for LSU."[87]  However, LSU does not explain how the Salary-Review Email "reveal[ed] or disclos[ed]" confidential information to any third party – the type of conduct prohibited by Rule 1.6.  *See Douglas*, 144 F.3d at 375 ("Douglas breached her professional duties of confidentiality and of loyalty when she *revealed to a third party* information relating to the representation of her client."

---

[85] *Id.* at 17.
[86] *Id.* at 18.
[87] *Id.* at 16 ("The February 15, 2019 [S]alary-[R]eview [E]mail – alleged opposition activity – evidences that Plaintiffs then relied on [confidential] LSU information by attaching removed [M]arket [S]tudy documents to the email and discussing compensation information of other employees that was gained from these removed documents. As such, the information attached to and discussed in the salary-review email was information relating to the representation of LSU that Plaintiffs were in possession of solely due to their positions of trust as lawyers for LSU.").

18

(emphasis added)).  Aside from Cunningham, the only recipient of the Salary-Review Email was Skinner.[88]  While Skinner may not have been Plaintiffs' "boss," he was a constituent of Plaintiffs' organizational client[89] and, as Plaintiffs say, "an appropriate person to whom Plaintiffs could raise gender-based pay-equity concerns."[90]  Thus, unlike the employee in *Douglas*, Plaintiffs raised their pay-equity concerns through internal channels.  Communications between in-house counsel and their employer-client about information related to the representation are, of course, implicitly permitted under Rule 1.6.  *See id.* at 376 ("Rule 1.6 surely does not bar Douglas's opposition and protest in her conversations, dialogue, and remonstrations *with her employer-client*." (emphasis added)).  Plaintiffs therefore did not breach their duty of confidentiality to LSU under Rule 1.6 by sending the Salary-Review Email to Skinner.

However, even absent disclosure to a third party, an attorney's use of confidential client information may still violate her ethical duties to her client.  Rule 1.8(b) prohibits the "use [of] information relating to representation of a client to the [client's] disadvantage."  La. R. Pro.

---

[88] Doc. 564-4 at 18.

[89] LSU denies that Skinner was Plaintiffs' boss and argues that Plaintiffs' suggestion to the contrary "ignore[s] contrary Fifth Circuit findings that (i) Skinner worked at OGC, not LSUHSC, (ii) the OGC transition 'never took place,' (iii) Plaintiffs were employed by LSUHSC when their LSU employment ended, and (iv) 'by Plaintiffs' own admission, Skinner lacked the power to control their work.'"  R. Doc. 567 at 3.  While these findings were relevant to the Fifth Circuit's determination that Skinner was not Plaintiffs' "employer" for purposes of the Equal Pay Act, *Muslow v. LSU* at *9-10 (R. Doc. 511-1 at 20-22), they are of no moment for purposes of determining whether Plaintiffs breached their duty of confidentiality to LSU when they sent the Salary-Review Email to Skinner.  The inquiry under the EPA concerned Skinner's role in relation to Plaintiffs, *id.* (applying the "economic reality test" for determining a party's status as an employer), whereas the Court now looks to Skinner's relationship with LSU, Plaintiffs' client.  *See generally* La. R. Pro. Conduct 1.13(a) ("A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.").  LSU's forfeiture argument is bottomed on the fact that it was Plaintiffs' employer-client.  *See, e.g.,* R. Doc. 564-2 at 23 ("Plaintiffs' opposition conduct was unreasonable and unjustifiably detrimental to the interests of their mutual employer-client, LSU.").  As general counsel to LSU, *see* R. Doc. 109 at 16, Skinner was a constituent of LSU and, like Plaintiffs, owed a duty of confidentiality to LSU.  *See* MODEL RULES PRO. CONDUCT r. 1.13 cmt. 2 (AM. BAR ASS'N 2023) ("When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6."); *Leleux-Thubron v. Iberia Par. Gov't*, 2015 WL 339617, at *7 (W.D. La. Jan. 23, 2015) ("Rule 1.13 [of the Louisiana Rules of Professional Conduct], adopted by the Louisiana Supreme Court, is identical to Rule 1.13 of [the] ABA Model Rule[s] of Professional Conduct.").

[90] R. Doc. 568 at 3-4 (explaining that Skinner was "General Counsel to the Board of LSU, the Title IX officer, and the head of the Office of General Counsel at LSU").

Conduct 1.8(b).  But Rule 1.8(b) "does not prohibit uses that do not disadvantage the client." Model Rules Pro. Conduct r. 1.8 cmt. 5 (Am. Bar Ass'n 2023); *Flowers v. Heard, McElroy & Vestal, L.L.C.*, 551 F. Supp. 3d 688, 694 (W.D. La. 2020) ("The ABA rule is all but identical to Louisiana's rule." (discussing ABA model rule 1.8(b))); *see also* Restatement (Third) of the Law Governing Lawyers § 60 (Am. L. Inst. 2000) ("[U]se or disclosure of confidential client information is generally prohibited if there is a reasonable prospect that doing so will adversely affect a material interest of the client or prospective client.").

> Adverse effects include all consequences that a lawyer of reasonable prudence would recognize as risking material frustration of the client's objectives in the representation or material misfortune, disadvantage, or other prejudice to a client in other respects, either during the course of the present representation or in the future.  It includes consequences such as financial or physical harm and personal embarrassment that could be caused to a person of normal susceptibility and a normal interest in privacy.

Restatement (Third) of the Law Governing Lawyers § 60 cmt. c.  Common examples of adverse uses of confidential client information include an attorney's concurrent representation of clients with adverse interests or self-dealing.  *See* Model Rules Pro. Conduct r. 1.8 cmt. 5 (Am. Bar Ass'n 2023); Restatement (Third) of the Law Governing Lawyers § 60 cmts. c, j. While Plaintiffs clearly used the Market Study by attaching it to, and referencing it in, their Salary-Review Email, LSU does not explain how it was disadvantaged by this use.  Nor does LSU cite any authority supporting its implication that in-house counsel's reference to confidential information in communications with their employer-client regarding their own pay disadvantages the employer-client.  Because Plaintiffs were requesting pay increases that they believed were necessary to "ameliorate" gender-based pay disparities,[91] the Salary-Review Email could have theoretically "harmed" LSU's financial interests to Plaintiff's advantage by increasing their

---

[91] R. Doc. 564-4 at 19.

salaries, *if* it had been successful.  But this is not the type of "self-profiting use" contemplated by the rule.  RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 60 cmt. j; *see also id.* § 60 cmt. c ("Most reported decisions deal with egregious instances in which lawyers have improperly used or disclosed confidential client information in order to gain an advantage for the lawyer or to act vengefully toward a client." (internal citation omitted)) (collecting cases).  Regardless, the Salary-Review Email did not actually cause any financial loss to LSU, as LSU effectively denied Plaintiffs' requested salary increases by rescinding the OGC contracts.

### b.  Plaintiffs' removal and retention of documents does not forfeit protection for their opposition conduct.

LSU, while conceding that Plaintiffs' sending the Salary-Review Email is the "alleged opposition activity" in this case,[92] also repeatedly contends that Plaintiffs' opposition activity involved "the unauthorized removal, retention, and reliance on LSU information obtained through their LSU representation."[93]  LSU places great emphasis on this Court's August 4, 2020 Order holding that Plaintiffs violated Rule 1.9(c)(1) of the Louisiana Rules of Professional Conduct – which prohibits "[a] lawyer who has formerly represented a client in a matter" from "us[ing] information relating to the representation to the disadvantage of the former client" – by attaching the Market Study to their amended complaint.[94]  The conduct discussed in the August 4, 2020 Order was Plaintiffs' removal of "documents from their former client/employer … to end-run formal processes such as discovery, and then … us[ing] those documents in litigation against that former client/employer" over seven months *after* Plaintiffs sent the Salary-Review Email.[95]  Even

---

[92] R. Doc. 564-2 at 4, 9, 16, 21.

[93] *Id.* at 18.

[94] At the time, Plaintiffs had not obtained the Market Study through discovery or a public-records request but had attached the copy they sent themselves while still representing LSU.

[95] R. Doc. 83 at 8-9.  The Salary-Review Email was sent on February 15, 2018.  R. Doc. 564-4 at 18.  Plaintiffs initially filed their amended complaint on October 1, 2019.  R. Doc. 19.

if this subsequent self-help discovery is "relevant factual context" for Plaintiffs' actual opposition conduct,[96] LSU has cited no authority showing that separate conduct can retroactively forfeit protections for opposition conduct.[97]  Moreover, the Court has already penalized Plaintiffs for their self-help discovery by striking the removed documents from Plaintiffs' amended complaint,[98] ordering Plaintiffs to return them to LSU,[99] and sanctioning Plaintiffs and their attorneys for retaining them in violation of the Court's protective order.[100]  But these actions had nothing to do with Plaintiffs' wholly separate opposition conduct.

The only removal of documents plausibly related to Plaintiffs' opposition activity is Muslow's sending the Market Study to her personal email address on December 18, 2018, about two months prior to sending the Salary-Review Email to Skinner.[101]  Sending an email to oneself is not a disclosure to a third party and, like Plaintiffs' subsequent attachment of the Market Study to their Salary-Review Email, Muslow's transmission of the Market Study to herself, in and of itself, did not harm LSU.  Thus, to the extent Muslow's emailing the Market Study to herself in December 2018 is pertinent to the forfeiture analysis, it was not a violation Plaintiffs' ethical duties under Rules 1.6, 1.8, or 1.9.

---

[96] R. Doc. 567 at 7.

[97] Fifth Circuit caselaw indicates that the relevant conduct for purposes of forfeiture is the alleged opposition conduct.  *See Douglas*, 144 F.3d at 374 ("[I]n *Rosser v. Laborers' Int'l Union of North America, Local No. 438*, we held that *the plaintiff's form of opposition* was unprotected as a matter of law." (emphasis added) (citing 616 F.2d 221, 224 (5th Cir. 1980)); *Rosser*, 616 F.2d at 223 ("There may arise instances *where the employee's conduct in protest of an unlawful employment practice* so interferes with the performance of his job that it renders him ineffective in the position for which he was employed." (emphasis added)); *Jefferies*, 615 F.2d at 1036 (rejecting plaintiff's argument that "the copying and dissemination of the materials was protected activity under § 704(a) and that, by terminating her for copying and disseminating the records, it thereby punished her for legitimate 'opposition' activity'"); *Smith*, 818 F.2d at 366 ("[N]ot all activity *purportedly done in opposition to perceived unlawful employment practices* is protected by the opposition clause.") (emphasis added)).

[98] Doc. 45 at 16-17.

[99] *Id.* at 20.

[100] R. Doc. 175.

[101] R. Doc. 564-5 at 28.

### c. Muslow did not violate her duty of loyalty to LSU by "advocating" for Cunningham.

Louisiana Rule of Professional Conduct 1.7 prohibits an attorney from "represent[ing] a client if the representation involves a concurrent conflict of interest" absent certain exceptions, such as informed consent.  Rule 1.7(a) defines a concurrent conflict of interest as existing when –

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

La. R. Pro. Conduct 1.7(a).  "Representation" as used in Rule 1.7 contemplates the existence of an attorney-client relationship.  *See, e.g., Gozone, L.L.C. v. Amtax Holdings 303, LLC*, 2014 WL 2894913, at *2 (E.D. La. June 25, 2014) ("[F]or a conflict to arise there must, of course, have been a client-attorney relationship between the attorney in question and *each* of the 'clients' with conflicting interests." (emphasis added)).

LSU contends that "Muslow's advocacy on behalf of Cunningham in the salary-review email constituted an adverse and conflicting position against their employer-client that was not supported by informed consent or a conflict waiver by LSU."[102]  But LSU does not allege, much less make any showing, that Muslow and Cunningham entered into an attorney-client relationship. In fact, LSU admits that "Cunningham is a seasoned attorney in her own right"[103] who "assisted with drafting and editing the salary-review email, approved the email before it was sent, and was carbon copied on the email."[104]  The notion that Muslow "represented" Cunningham, as opposed to joining with her, in sending the Salary-Review Email is further undermined by LSU's admission that Plaintiffs jointly retained and consulted with counsel "in December of 2018 or January of

---

[102] R. Doc. 564-2 at 17.
[103] *Id.* at 19.
[104] *Id.* at 6.

2019," just prior to sending the Salary-Review Email in February of 2019, regarding their "concerns of pay inequities and the OGC consolidation."[105]  Thus, while Muslow may have "advocated" for Cunningham in a literal sense, there is no indication that she did so as her attorney or otherwise undertook any "responsibilities" to Cuningham that threatened to "materially limit[]" her representation of LSU.  La. R. Pro. Conduct 1.7(a)(2).  Whatever advocacy Muslow provided on Cunningham's behalf was provided in her capacity as Cunningham's colleague and supervisor, even if it included the protected opposition conduct under Title VII and the EPA.  *Jones*, 793 F.2d at 727 ("[E]mployee opposition to discriminatory employment practices directed against a fellow employee may constitute activity protected under [Title VII].").

### d.  Plaintiffs' opposition conduct is not otherwise forfeited.

Where, as here, there is no actual "breach of the legal profession's ethically imposed obligations, [opposition conduct] that nevertheless adversely impacts the employment relationship between an in-house counsel and her employer-client[] remains subject to the balancing test set out in *Jefferies* and *Jones* before it may be determined to be unprotected conduct under Title VII." *Douglas*, 144 F.3d at 376 n.15.  LSU has not alleged that the Salary-Review Email (or any other conduct by Plaintiffs) impinged on its "right to run [its] business," *Jefferies*, 615 F.2d at 1036, or was "so disruptive or inappropriate as to fall outside the protections of" Title VII and the EPA's antiretaliation provisions.  *Jones*, 793 F.2d at 728.  Nor does it claim to have rescinded the OGC contracts because the Salary-Review Email rendered Plaintiffs "ineffective" in their positions or "critically harmed" LSU's defense against pending discrimination suits.  *Id.* at 728.  Thus, under the balancing test, the Salary-Review Email was and remains protected activity, and LSU's forfeiture argument fails.

---

[105] *Id.* at 5.

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that LSU's motion for summary judgment on forfeiture (R. Doc. 564) is

DENIED.

New Orleans, Louisiana, this 14th day of April, 2025.


_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE