UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE MUSLOW, *et al.*

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY,
AND AGRICULTURAL AND
MECHANICAL COLLEGE, *et al.*

CIVIL ACTION

NO. 19-11793

SECTION M (2)

## ORDER & REASONS

Before the Court are motions *in limine* filed by plaintiffs Katherine Muslow and Meredith Cunningham (together, "Plaintiffs")[1] and defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU").[2]  Both motions are opposed,[3] and both parties reply in further support of their motions.[4]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motions in part and denies them in part.

## I.    BACKGROUND

This case involves an employment dispute between LSU and Plaintiffs, who were employed as full-time general counsel (Muslow) and part-time staff attorney (Cunningham) at LSU's Health Sciences Center in New Orleans ("LSUHSC-NO") until their positions were retired pursuant to LSU's plan to consolidate its university-wide legal team into its Office of General Counsel ("OGC").[5]

---

[1] R. Doc. 572.
[2] R. Doc. 574.
[3] R. Docs. 576 (LSU's opposition to Plaintiffs' motion *in limine*); 577 (Plaintiffs' opposition to LSU's motion *in limine*).
[4] R. Docs. 578 (Plaintiffs' reply); 579 (LSU's reply).
[5] *See* R. Doc. 564-2 at 5.

The consolidation plan involved retiring the two LSUHSC-NO legal positions then occupied by Plaintiffs and adding two new attorney positions to the OGC to be filled by Plaintiffs at their same, then-current LSUHSC-NO salaries.[6]  Plaintiffs were provided with unexecuted, proposed employment contracts for the OGC positions in January 2019.[7]  On February 15, 2019, Muslow emailed OGC Vice President of Legal Affairs Thomas Skinner, with Cunningham copied on the email, requesting that Plaintiffs' salaries be reviewed before they executed the contracts (the "Salary-Review Email").[8]  Based on a 2017 market study (the "2017 Market Study") conducted by LSUHSC-NO, Muslow suggested that her salary be increased from $227,520 to $375,000, and Cunningham's part-time salary from $76,500 at 60% full time equivalent ("FTE") to $204,748 at 80% FTE "to ameliorate an environment at [LSUHSC-NO] that has not seemed historically to view equity as potentially a gendered issue."[9]  On February 18, Skinner notified Plaintiffs that their OGC offers were rescinded "pending further review" for the stated reason that the contracts had not been executed by the February 1, 2019 effective date.[10]  LSU posted the two OGC positions online on March 28, 2019, and invited Plaintiffs to apply,[11] but Plaintiffs refused to do so.[12]  Plaintiffs remained in their LSUHSC-NO positions until the positions were retired pursuant to the consolidation plan on June 30, 2019, for Cunningham and July 15, 2019, for Muslow.[13]  LSU subsequently hired T. Louis Colletta, Jr., for the OGC Chief Counsel position, at a starting annual salary of $182,500.[14]  The OGC Staff Attorney position was not filled.[15]

---

[6] *See* R. Doc. 564-4 at 4, 10.  Muslow was intended to fill the position of OGC Chief Counsel, *id.* at 16, and Cunningham was intended to fill an OGC Staff Attorney position.  *Id.* at 13.

[7] *Id.* at 12-17.

[8] *Id.* at 18.

[9] *Id.* at 19.

[10] R. Docs. 551-5 at 16-17 (quote at 17); 551-6 at 1-2 (quote at 2).

[11] R. Doc. 551-6 at 20-25.

[12] R. Doc. 551-7 at 1-4.

[13] R. Doc. 564-4 at 2, 5.

[14] R. Doc. 365-10 at 100.

[15] R. Doc. 576 at 12-13.

Plaintiffs filed EEOC charges against LSU on March 26, 2019.[16]  On July 22, 2019, Plaintiffs filed this action against LSU and several individual defendants alleging violations of Title VII, Title IX, the Equal Pay Act ("EPA"), 42 U.S.C. § 1983, and the Louisiana Employment Discrimination Law.[17]  After extensive preliminary motion practice and with the filing of a third amended complaint, the Plaintiffs' claims were narrowed to include gender discrimination in violation of Title VII against LSU, retaliation in violation of Title VII against LSU, gender discrimination in violation of the EPA against LSU and three individual defendants, retaliation in violation of the EPA against LSU and three individual defendants, and gender discrimination in violation of § 1983 against two individual defendants.[18]  Thereafter, the Court granted the defendants' motions for summary judgment, dismissing all of Plaintiffs' claims.[19]  Plaintiffs appealed to the Fifth Circuit,[20] which affirmed the Court's dismissal of all of Plaintiffs' gender-discrimination and retaliation claims with the exception of their "Title VII and Equal Pay Act claims alleging that LSU retaliated against [them] by revoking their employment contracts following their salary-review request,"[21] having determined that Plaintiffs had "presented evidence sufficient to overcome summary judgment on this allegation of retaliation."[22]

To prepare the remaining claims for trial, this Court held a status conference to determine what issues were left for resolution after the Fifth Circuit's ruling.[23]  The parties identified three general categories of issues: what damages are available, whether Plaintiffs forfeited their Title VII and EPA protections, and, if necessary, whether LSU could limit back- and front-pay damages

---

[16] R. Doc. 564-6 at 38.

[17] R. Doc. 1.

[18] R. Doc. 99.

[19] R. Docs. 451; 452.

[20] R. Docs. 502; 503.

[21] *Muslow v. La. State Univ. & Agric. & Mech. Coll., Bd. of Supervisors*, 2023 WL 5498952, at *11 (5th Cir. Aug. 24, 2023) [hereinafter *Muslow v. LSU*] (R. Doc. 511-1 at 23), *cert. denied*, 144 S. Ct. 573 (2024).

[22] *Muslow v. LSU*, at *9 (R. Doc. 511-1 at 20).

[23] R. Doc. 541.

under the after-acquired evidence doctrine.[24]  The Court ordered that the parties address these issues via motions for summary judgment before moving to evidentiary issues, while encouraging the parties to consider any "potential stipulations to simplify trial presentation and minimize the evidentiary issues."[25]  The Court then ruled on LSU's successive motions for summary judgment regarding damages[26] and forfeiture.[27]  After resolving these preliminary issues, the Court held another status conference, this one by telephone, to address the remaining pretrial matters.[28] Because the parties agreed that no *Daubert* motions would be necessary, the Court ordered that the parties file motions *in limine* directed at the evidentiary issues they identified and that they continue to confer with each other regarding potential trial stipulations.[29]

## II.    PENDING MOTIONS

### A.  Plaintiffs' Motion *in Limine*

Plaintiffs first move to exclude any reference to "Plaintiffs' alleged breaches of their fiduciary duties and/or ethical obligations to LSU"[30] as irrelevant in light of the Court's forfeiture ruling,[31] likely to confuse the jury, and unfairly prejudicial to Plaintiffs by "improperly invit[ing] the jury to draw negative inferences regarding Plaintiffs' credibility and the merits of their claims."[32]  Plaintiffs next argue that the Court should exclude any reference to "the dismissal of other claims asserted by Plaintiffs in this case" (except as necessary to instruct the jury as to the

---

[24] *Id.* at 2.
[25] *Id.* Because, in resolving the summary-judgment motion addressing available damages, the Court held that back- and front-pay are not available, R. Doc. 561 at 26-33, it became unnecessary to address the after-acquired evidence doctrine through a separate motion.  *See* R. Doc. 569 at n.33.
[26] R. Doc. 561.
[27] R. Doc. 569.
[28] R. Doc. 571.
[29] *Id.* at 2.  The parties have not agreed upon any trial stipulations.  *See* R. Docs. 577 at 3; 579 at 2-3.
[30] R. Doc. 572 at 3.
[31] *Id.* (citing R. Doc. 569 at 17-22).
[32] *Id.* at 3-4 (quote at 4).

claims to be tried) as irrelevant, confusing, and unfairly prejudicial.[33]  Plaintiffs also argue that, while they "believe there is no factual dispute nor legal basis to submit a jury question on whether Plaintiffs had a reasonable belief that they were being discriminated against," to the extent that Plaintiffs must establish a *prima facie* case of retaliation at trial, "any evidence or suggestion regarding whether Plaintiffs[] 'won' or 'lost' their discrimination claims is entirely irrelevant to the question of whether they had a reasonable belief that they were being discriminated against."[34] Plaintiffs then move to exclude "any purported non-retaliatory reasons LSU rescinded the OGC employment contracts other than (1) the OGC employment contracts were not signed by February 1, 2019, and (2) Plaintiffs' demands for salary increases were too high," as these are the only reasons LSU has yet identified for rescinding the contacts, and "any other performance-based or other reason" raised at trial would be irrelevant, confusing, and unfairly prejudicial.[35]  Plaintiffs also move to exclude references to "any individual who LSU hired to replace Plaintiffs, including [any such] replacement's credentials, demographics, and/or salaries," as well as the fact that the OGC Staff Attorney position was never filled, as irrelevant to their retaliatory rescission claims and likely to confuse or mislead the jury.[36]  Finally, Plaintiffs argue that LSU should be precluded from referring to any contractual arrangement between Plaintiffs and their counsel because any mention of such arrangements by LSU "can only serve one purpose – to unfairly prejudice Plaintiffs."[37]

In its opposition to Plaintiffs' motion *in limine*, LSU first "submits that it does not intend to introduce related arguments or evidence regarding Plaintiffs' alleged breaches of fiduciary duty

---

[33] *Id.* at 5.
[34] *Id.*
[35] *Id.* at 6.
[36] *Id.* at 7-8.
[37] *Id.* at 8.

and/or ethical obligations," and therefore argues that Plaintiffs' motion to exclude same should be denied as moot.[38]  LSU next contends that Plaintiffs must establish their *prima facie* case by a preponderance of the evidence at trial because "the summary judgment rulings by this Court and the Fifth Circuit applied only the [Federal Rule of Civil Procedure 56] summary judgment standard."[39]  LSU only opposes Plaintiffs' motion to exclude references to the Court's resolution of prior dispositive issues in this case to the extent it is intended to apply to evidence and arguments "relevant to remaining claims, even though also related to dismissed claims."[40]  As to Plaintiffs' motion to exclude additional non-retaliatory reasons for rescinding the contracts, LSU concedes that "it is not permitted to offer non-retaliatory reasons that were unknown by LSU as of the date of the contract rescissions (*i.e.,* an after-acquired reason)," but argues that it "is not limited to only offering [at trial the two] non-retaliatory reasons identified by Plaintiffs."[41]  LSU opposes Plaintiffs' motion to exclude references to Plaintiffs' "replacements" at the OGC or lack thereof, arguing that such evidence is relevant to its argument that it rescinded the OGC contracts because Plaintiffs' salary demands were too high.[42]  Lastly, LSU submits that it does not oppose Plaintiffs' motion to exclude references to Plaintiffs' arrangements with their attorneys "to the extent it is limited to exclusion at trial of references to payment arrangements and fees" but argues that it should be permitted to present "any evidence that may become relevant at trial regarding Plaintiffs' attorneys, including but not limited to the dates of retention of any attorney of record."[43]

---

[38] R. Doc. 576 at 6.

[39] *Id.* at 7.

[40] *Id.* at 8 (emphasis omitted) (citing *Cooper v. Meritor, Inc.*, 2019 WL 1028530, at *17 (N.D. Miss. Mar. 4, 2019); *Fontenot v. Republic Nat'l Distrib.,* 2018 WL 1137519, at *4 (W.D. La. Mar. 2, 2018); *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.,* 2018 WL 3439660, at *4 (E.D. La. May 3, 2018); *Medecor Pharma LLC v. Fleming Pharms., Inc.,* 2014 WL 3867548, at *1 (M.D. La. Aug. 6, 2014)).

[41] *Id.* at 11.

[42] *Id.* at 12-15.  LSU also "reiterate[s] that Plaintiffs were not replaced and there are no wrongful termination claims remaining at issue in this suit."  *Id.* at 12 (emphasis omitted).

[43] *Id.* at 16-17 (emphasis omitted).  LSU also asserts that "Plaintiffs' motion *in limine* overlooks the fact that a designated lead attorney of record for Plaintiffs throughout the entirety of this suit has been Peter Koeppel – who is

In reply, Plaintiffs reurge that, "to the extent LSU is hoping to tell the jury about Plaintiffs' dismissed claims to counter Plaintiffs' prima facie showing of a reasonable belief that gender-based pay discrimination was occurring at LSU, the Fifth Circuit has foreclosed that argument in this case."[44] They argue that "LSU has yet to raise an actual, genuine dispute of material fact as to any element of Plaintiffs' prima facie case such that there is anything for the jury to resolve."[45] They further contend that "LSU cannot identify any relevance that evidence or argument regarding the prior dismissal of other claims has to any issue remaining in this case."[46] As to LSU's insistence that it is not precluded from asserting new non-retaliatory reasons for rescinding the contracts at trial, Plaintiffs contend that LSU has cited no authority for its "position that a defendant can lay behind the log and ambush a plaintiff at trial with brand new reasons for its retaliatory conduct."[47] Plaintiffs also contend that, should LSU be permitted to argue that it rescinded the contracts because the salaries requested by Plaintiffs were too high, "Plaintiffs should be given every opportunity to point out that this reason is completely inconsistent with the only articulated reason LSU gave for the rescission at the time," *viz.*, that Plaintiffs failed to sign the contracts by the effective date.[48] Plaintiffs next contend that LSU's argument in response to their motion to exclude references to Plaintiffs' replacements at the OGC, or lack thereof, "is entirely inconsistent" because it denies that Plaintiffs were "replaced" while arguing that "the salaries and credentials

---

also Plaintiff Muslow's husband," which LSU argues "is significant because [Plaintiffs] have failed to distinguish between dates when alleged discussions between Muslow and Koeppel on workplace events were in his capacity as her spouse and the date upon which Muslow formally retained her husband (Koeppel) to serve as her attorney of record in this suit." *Id.* at 16.

[44] R. Doc. 578 at 4 (emphasis omitted) (citing *Muslow v. LSU*, at *8 (R. Doc. 511-1 at 17) ("That we conclude that [LSU] did not discriminate against Plaintiffs does not negate their reasonable belief … that they received discriminatory wages on account of their gender.")).

[45] *Id.*

[46] *Id.* at 5.

[47] *Id.* at 6.

[48] *Id.* at 7.

'of individuals ultimately hired to the new OGC positions' [are] relevant after all."[49]  Plaintiffs further argue that "[i]f LSU is permitted to introduce OGC salary evidence for individuals it says did not replace Plaintiffs to support its case, Plaintiffs must likewise be permitted to introduce other relevant salary evidence from LSU … to demonstrate pretext."[50]  Finally, Plaintiffs contend that "there is no reason for LSU to reference the fact that one of Plaintiffs' attorneys is Ms. Muslow's husband, or to parse the timing of when he or any other lawyer was retained as counsel," in light of the Court's holding that a forfeiture defense is not available. [51]

### B. LSU's Motion *in Limine*

LSU moves to exclude a total of 33 witnesses, exhibits, arguments, or groups thereof.[52]  It first seeks the removal of an unidentified representative of its Board of Supervisors from Plaintiffs' "may call" witness list as irrelevant, improper, and unnecessary.[53]  As the crux of its argument, LSU maintains that Plaintiffs must prove their *prima facie* case – including that they had a reasonable, good-faith belief that they were being discriminated against because of their gender – by a preponderance of the evidence at trial.  Accordingly, LSU contends that Plaintiffs should be barred from referencing the Fifth Circuit's opinion reversing summary judgment on the retaliatory-recission claim "to argue that all elements of a *prima facie* case, such as protected activity, have been proven."[54]  However, LSU also seeks to exclude evidence that Plaintiffs offer to support their good-faith, reasonable belief that they were subjected to wage discrimination, as irrelevant, unfairly prejudicial to LSU, and likely to confuse the issues and the jury.  It argues that much of this evidence is irrelevant because it was produced or relates to events that occurred after Plaintiffs'

---

[49] *Id.* at 8 (quoting R. Doc. 576 at 15).
[50] *Id.* at 9.
[51] *Id.*
[52] R. Doc. 574-1.  The Court will address the requested exclusions by categories rather than in the precise order presented by LSU.
[53] *Id.* at 3.
[54] *Id.* at 22-23.

employment with LSU ended and thus could not have contributed to their belief of wage discrimination.[55]  LSU also argues that evidence related to the compensation of LSU employees other than Plaintiffs is irrelevant, unfairly prejudicial, and likely to confuse the jury because there are no wage-discrimination claims remaining in this case and, in any event, none of those employees would be wage comparators for Plaintiffs.[56]  LSU similarly moves to exclude testimony and exhibits relating to pay-disparity and discrimination complaints raised by non-party LSU employees,[57] including anonymous complaints,[58] and documents related to internal audits of pay disparities at LSU[59] and an independent Title IX review, as irrelevant and unfairly prejudicial.[60]  LSU frequently argues that anticipated trial testimony and exhibits prepared by or pertaining to current or former LSUHSC-NO employees are irrelevant because, as employees of "a separate agency on a separate LSU campus,"[61] these individuals had no authority within the OGC, were not decisionmakers with respect to the OGC consolidation, and were not involved in the OGC's

---

[55] *Id.* at 7-8 (moving to exclude the testimony of Colletta), 8 (moving to exclude LSUHSC-NO Chief of Staff position exhibits), 9-10 (moving to exclude the 2021 internal audit testimony and exhibits), 10-11 (moving to exclude the memorandum of Frank Wasser), 14 (moving to exclude the Legal Office Coordinator position exhibit), 16 (moving to exclude an exhibit regarding the OGC salary of Winston Decuir).  LSU also seeks to exclude evidence relating to events that occurred after LSU rescinded the OGC employment contracts for the same reason.  *See id.* at 6-7 (moving to exclude the affidavit of Nicole Honoree).

[56] *Id.* at 3-4 (moving to exclude the testimony of Rosalynn Martin), 4 (moving to exclude the deposition testimony and employment records of John Harman), 8 (moving to exclude LSUHSC-NO Chief of Staff position exhibits), 13 (moving to exclude the LSUHSC-NO Unclassified Staff Pay Adjustments Policy), 13-14 (moving to exclude LSUHSC-NO Executive Director of External and Payer Relations position exhibits), 5 (moving to exclude the testimony of Sara Schexnayder), 14-15 (moving to exclude the 2015 offer letter for LSUHSC-NO Vice Chancellor for Clinical Affairs), 7-8, 15 (moving to exclude the testimony of Colletta and the salary records of Richard Buhler), 17 (moving to exclude LSUHSC-NO salary records), 19-21 (moving to exclude the 2017 Market Study and 2019 LSUHSC-NO equity review), 21-22 (moving to exclude complaints by LSUHSC-NO employees and anonymous sources).

[57] *Id.* at 6-7 (moving to exclude the affidavit of Honoree relating to, *inter alia*, her own pay-equity complaint), 8-9 (moving to exclude the affidavit of Roy Clay regarding "an investigation of a pay disparity complaint by a female LSUHSC-NO employee, an investigation of a LSUHSC physician, and … information he received about the LSUHSC-NO 2017 Unclassified Employee Market Study").

[58] *Id.* at 21-22.

[59] *Id.* at 9-10.

[60] *Id.* at 12.  LSU points out that "there are no Title IX claims at issue in this suit" and the Title IX "[r]eport does not address any Equal Pay Act or Title VII complaints of LSUHSC-NO employees."  *Id.* (emphasis omitted).

[61] *Id.* at 4.

decision to rescind Plaintiffs' proposed employment contracts.[62]  LSU likewise moves to exclude

Plaintiffs' LSUHSC-NO employment records,[63] an LSUHSC-NO Staff Pay Adjustment Policy,[64]

the 2017 Market Study referenced in Plaintiffs' Salary-Review Email, and a 2019 LSUHSC-NO

equity review, because these LSUHSC-NO documents are not directly related to the consolidation

plan or the recission of Plaintiffs' OGC contracts.[65]  LSU moves to exclude exhibits related to

OGC staff salaries, as well, because this information was not known to Plaintiffs when they sent

the Salary-Review Email.[66]  LSU also contends that "[e]mails related to internal discussions by

LSUHSC-NO in preparation for consolidation of legal services to the OGC do not address relevant

facts and are not germane to the remaining alleged retaliatory rescission issues."[67]  In addition,

LSU moves to exclude a newspaper article as inadmissible hearsay,[68] public records requests

submitted by Cunningham after Plaintiffs' employment at LSU ended,[69] and exhibits related to

Plaintiffs' EEOC charges filed after their contracts were rescinded.[70]  It also moves to exclude any

reference to Plaintiffs' dismissed claims to prevent the jury from "draw[ing] an improper,

unproven inference that because the remaining claims against LSU were not dismissed, they have

---

[62] *Id.* at 3-4 (moving to exclude the testimony of Martin, LSUHSC-NO's former Human Resources Director), 4 (moving to exclude the testimony and records of Harman, LSUHSC-NO's former Vice Chancellor of Administration and Finance), 5 (moving to exclude the testimony of Schexnayder, LSUHSC-NO's current Assistant Director of Human Resources, Compensation and Talent Acquisition, and former Human Resources Manager, Compensation), 5-6 (moving to exclude the testimony of Terri Cunningham, LSUHSC-NO's former Assistant Director of Employee Relations), 6 (moving to exclude the testimony of Christine Manalla, former LSUHSC-NO Administrative Coordinator), 6-7 (moving to exclude the testimony and affidavit of Honoree, LSUHSC-NO's former Assistant Vice Chancellor for Economic Development and Strategic Initiatives), 8-9 (moving to exclude the testimony and affidavit of Clay, LSUHSC-NO's former Fiscal Compliance Officer).  LSU also moves to exclude employment records of Edward Jones, a former staff attorney at its Shreveport campus, on the same basis.  *Id.* at 15-16.
[63] *Id.* at 17-18.
[64] *Id.* at 13.
[65] *Id.* at 20.
[66] *Id.* at 16.
[67] *Id.* at 19.
[68] *Id.* at 11-12.
[69] *Id.* at 13.
[70] *Id.* at 19.

merit";[71] evidence related to past or pending lawsuits;[72] and arguments regarding LSU's ability to pay compensatory damages,[73] all as irrelevant to the remaining claims, unfairly prejudicial, and likely to confuse the jury.

In their opposition to LSU's motion *in limine*, Plaintiffs first assert that they "have advocated for a narrow trial of this case on one ultimate question" – namely, whether LSU's rescission of Plaintiffs' OGC employment contracts constituted retaliation for their Salary-Review Email[74] – whereas LSU "insist[s] that Plaintiffs re-prove every element of their prima facie case and counter LSU's newly invented 'too high salary request' reason for immediately rescinding Plaintiffs' OGC employment contracts, thereby opening the door to a much broader range of evidence necessary to prove Plaintiffs' case at trial."[75]  They contend that LSU wants to "have it both ways" by demanding "that Plaintiffs re-prove their prima facie case at trial, including that they held a reasonable belief that LSU was engaging in unfair pay practices [while] simultaneously seek[ing] to exclude evidence highly relevant to that very question."[76]  As to LSU's motion to remove a representative of the Board of Supervisors from Plaintiffs' witness list, Plaintiffs assert that they included this witness to authenticate certain LSU documents and rebut any argument by LSU that Skinner "was not acting on behalf of LSU and its Board when he rescinded Plaintiffs' OGC contracts," but they would remove this witness if LSU agrees to stipulations addressing these concerns.[77]  Plaintiffs reject "LSU's artificial distinctions between the OGC and LSUHSC-NO," arguing that it does not diminish the relevance of evidence from LSUHSC-NO and its former employees supporting Plaintiffs' belief that "their employer – *LSU* – was engaging in an unlawful

---

[71] *Id.* at 23-24 (quote at 24).
[72] *Id.* at 24.
[73] *Id.* at 24-25.
[74] R. Doc. 577 at 2.
[75] *Id.* at 3 (emphasis omitted).
[76] *Id.* at 13.
[77] *Id.* at 6.

employment practice."[78]  Consequently, they argue that the testimony and any related exhibits of

Martin, Harman, T. Cunningham, Manalla, Clay, and Honoree are "not only relevant but necessary

to Plaintiffs' showing – at LSU's insistence – that they reasonably believed LSU was engaging in

pay discrimination and that their salary requests were not too high."[79]  Plaintiffs also argue that it

does not "matter that Jones was employed at LSU-Shreveport," rather than the OGC, because his

employment records "address a central issue in the case" – whether LSU rescinded Plaintiffs'

proposed OGC employment contracts because they failed to sign them by the deadline.[80]  Plaintiffs

contend that the internal audit exhibits are relevant to Plaintiffs' reasonable, good-faith belief that

they were discriminated against, even if they post-date Plaintiffs' employment at LSU, because

they "address [the same] systemic issues [that] Plaintiffs allege were at play during their tenure."[81]

They similarly argue that the Title IX report should not be excluded because, even though there

are no Title IX claims remaining in this case, the report "provides critical insight into the overall

environment at LSU."[82]  Plaintiffs also argue that several LSUHSC-NO employee salary exhibits,

including Plaintiffs' own LSUHSC-NO employment records, are relevant because they "provide

essential background on how pay decisions were made and how Plaintiffs' compensation

compared to similarly situated employees"[83] and support their belief that they were underpaid

because of their gender.[84]  They oppose LSU's motion to exclude the 2017 Market Study and

---

[78] *Id.* at 10 (emphasis in original); *see also id.* at 7-9, 14-15.

[79] *Id.* at 7 (discussing Martin's anticipated testimony regarding LSUHSC-NO salary adjustment policies and the 2017 Market Study); *see also id.* at 9 (arguing that Harman's deposition testimony and records are "certainly relevant to whether Plaintiffs possessed a reasonable belief that they were being discriminated against based on gender"), 10 (arguing that T. Cunningham, Manalla, Clay, and Honoree's concerns about their own pay or knowledge about others' pay-disparity complaints are relevant to Plaintiffs' reasonable beliefs).

[80] *Id.* at 15.  Plaintiffs assert that this evidence "demonstrates that [Jones] did not sign his OGC employment contract until well after he was required to, yet he still transitioned to the OGC without issue." *Id.* at 16 (emphasis omitted).

[81] *Id.* at 11 (emphasis omitted).

[82] *Id.* at 12.

[83] *Id.* at 13.

[84] *Id.* at 14.

related documents, arguing that these are "key documents that go to the very heart of Plaintiffs' case,"[85] and contend that the exhibits regarding other LSU employees' complaints are "directly relevant to the existence of concerns about pay equity."[86]  Plaintiffs urge that the OGC salary exhibits are likewise "directly relevant" because they "show how similarly situated employees were treated in terms of salary and appointment within the OGC."[87]  Plaintiffs further argue that the LSUHSC-NO emails regarding the consolidation plan are "highly probative" of LSU's motivation for rescinding the OGC employment contracts because they "detail[] the intended matter-of-course transition of legal staff to the OGC, which included Plaintiffs until they raised pay-disparity concerns."[88]  Plaintiffs agree to remove Schexnayder and Colletta from their witness list and do not oppose LSU's motions to exclude the LSUHSC-NO Chief of Staff position exhibits, the news article, Cunningham's public records requests, and the Legal Office Coordinator position exhibit.[89]  They also agree that neither party should be permitted to reference the Fifth Circuit's opinion, except to the extent necessary to instruct the jury or resolve legal issues,[90] and "that neither party should discuss the fact that Plaintiffs 'lost' or LSU 'won' Plaintiffs' discrimination claims," though they argue that they should be permitted to refer to their dismissed discrimination claims and their EEOC charges to demonstrate their reasonable belief that they were subjected to wage discrimination.[91]  Plaintiffs also contend that evidence regarding other lawsuits against LSU should be admitted because "Plaintiffs' awareness of previous or ongoing lawsuits alleging similar

---

[85] *Id.* at 18-19 (quote at 18).
[86] *Id.* at 20-21 (quote at 20).
[87] *Id.* at 16-17 (quote at 17).
[88] *Id.* at 18.
[89] *Id.* at 23.
[90] *Id.*
[91] *Id.* at 23-24.

discriminatory practices is highly probative of the reasonableness of their belief that pay discrimination was occurring at LSU."[92]

In reply, LSU first contends that Plaintiffs "erroneously argue[] that [they] are being required to 're-prove' their *prima facie* case, including protected activity," because the Fifth Circuit's holding as to Plaintiffs' *prima facie* case only applied a summary-judgment standard.[93] LSU further argues that Plaintiffs' "materially different, higher trial burden" does not allow them "to proffer 'large swaths of evidence' that are inadmissible, irrelevant, prejudicial, confusing, or cumulative,"[94] and "that [LSU] is not required to stipulate to unproven elements of Plaintiffs' retaliatory rescission claims, including a *prima facie* case [or to] withdraw a legitimate, non-retaliatory reason for the OGC contract rescissions," to avoid the admission of such evidence at trial.[95] LSU also argues that the record demonstrates that its position that it rescinded the contracts because Plaintiffs' salary demands were too high is not "newly invented."[96] Concerning Plaintiffs' arguments about the specific evidence LSU moves to exclude, LSU first contends that Plaintiffs' stated reasons for including a representative of the Board of Supervisors in their "may call" witness list "are speculative and not supported by record facts of any such prior assertions by LSU in this suit."[97] As to Martin's anticipated trial testimony regarding the 2017 Market Study, LSU argues that "the rescissions were for new OGC positions under OGC's budget, and Skinner testified [that] he was unaware of the 2017 LSUHSC-NO market study."[98] LSU next argues that some of the exhibits pertaining to Harman post-date Plaintiffs' Salary-Review Email or were only made

---

[92] *Id.* at 22-23.
[93] R. Doc. 579 at 1.
[94] *Id.* at 2 (quoting R. Doc. 577 at 3).
[95] *Id.* at 2-3 (emphasis omitted).
[96] *Id.* at 2.
[97] *Id.* at 5.
[98] *Id.*

available to Plaintiffs during discovery after this suit was filed.[99]  And as to the testimony of T. Cunningham, Manalla, and Clay, LSU maintains that their testimony is irrelevant to Plaintiffs' retaliatory-recission claims because Plaintiffs have not shown that these witnesses have any personal knowledge of the contract rescissions.[100]  LSU then argues that, because Plaintiffs have not shown that they were aware of the contents of Honoree's testimony and affidavit when they sent the Salary-Review Email, this evidence is irrelevant.[101]  LSU also denies Plaintiffs' assertion that Jones's employment records from LSU-Shreveport show that he was permitted to transition to the OGC without having signed his OGC employment contract by the stated deadline because Jones never accepted the OGC position.[102]  With respect to the LSUHSC-NO salary exhibits, LSU again argues that evidence that was "acquired by Plaintiffs after this suit was filed [can]not support Plaintiffs' allegedly reasonable belief of pay discrimination at the time of the [Salary-Review E]mail."[103]  LSU then argues that, "[c]ontrary to Plaintiffs' assertions," the timing of the internal audit exhibits in relation to Plaintiffs' employment at LSU "absolutely diminishes the[ir] relevance and increases the likelihood that any probative value (which is denied) is far outweighed by unfair prejudice."[104]  LSU also contends that Plaintiffs' argument with respect to the Title IX investigation report "stretches the scope of relevance beyond any reasonable boundary."[105]  LSU continues to distinguish between the OGC and LSUHSC-NO in its reply, arguing that the LSUHSC-NO Pay Adjustments Policy exhibit is irrelevant because it "applies to pay adjustments for LSUHSC-NO employees, it does not apply to OGC employees, and it does not provide context

---

[99] *Id.*
[100] *Id.* at 6.
[101] *Id.*
[102] *Id.* at 5.
[103] *Id.* at 5 (emphasis omitted).
[104] *Id.* at 7.
[105] *Id.*

into similarly situated employees of Plaintiffs."[106]  LSU likewise contends that Plaintiffs "fail to note that [their own LSUHSC-NO employment records] relate to their former employment at LSUHSC-NO, and are not relevant to the new OGC positions or the OGC consolidation."[107]  LSU again argues that exhibits relating to "LSUHSC-NO's 2018 preparation for position retirements ha[ve] no bearing on the OGC's later decision to rescind offers for new OGC positions."[108]  It contends that Plaintiffs' argument that evidence of their EEOC charges against LSU is relevant to their reasonable, good-faith belief that they were discriminated against "overlook[s] that alleged retaliation based on the filing of EEOC charges is a dismissed claim in this suit, and do[es] not overcome the fact that such EEOC exhibits will be unnecessary, cumulative, prejudicial, and confusing to the jury."[109]  As to the 2017 Market Study and 2019 LSUHSC-NO equity review, LSU reiterates that "there are no wage discrimination claims remaining in this suit" and Plaintiffs' assertions that  these exhibits "show gender-based pay disparities are also misplaced, as this Court and the Fifth Circuit found the 2017 Market Study did not establish similarly situated male comparators for Plaintiffs."[110]  LSU next argues that the non-party employee complaints "are irrelevant, unfairly prejudicial, will confuse the trial issues, and" constitute inadmissible hearsay.[111]  Finally, in response to Plaintiffs' argument that evidence of other lawsuits against LSU supports their reasonable, good-faith belief of wage discrimination, LSU argues that Plaintiffs "point[] to no lawsuit upon which Plaintiffs relied on" in drafting the Salary-Review Email in February 2019.[112]  Thus, concludes LSU, all of these specific items of evidence should be excluded.

---

[106] *Id.* at 8 (emphasis omitted).
[107] *Id.*
[108] *Id.* (emphasis omitted).
[109] *Id.* at 8-9 (quote at 9).
[110] *Id.* at 9 (emphasis omitted).
[111] *Id.* at 9-10 (quote at 9).
[112] *Id.* at 10.

### III.    LAW AND ANALYSIS

#### A. Federal Rule of Evidence 403

Evidence is relevant if "it has any tendency to make a fact more or less probable" and that fact "is of consequence in determining the action." Fed. R. Evid. 401.  Evidence that is not relevant is not admissible. Fed. R. Evid. 402.  Rule 403 of the Federal Rules of Evidence permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  "[B]ecause rule 403 permits the exclusion of probative evidence it is an extraordinary remedy that must be used sparingly." *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 461 (5th Cir. 1985).  Evidence is not unfairly prejudicial under Rule 403 if it is "merely adverse to the opposing party." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006).  "Virtually all evidence is prejudicial; otherwise it would not be material.  The prejudice must be 'unfair'" to be excluded under Rule 403. *Id.* (citing *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)).  "In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules.

#### B. Analysis

##### 1. Scope of the Claim Remaining on Remand

Before addressing the specific evidence and arguments the parties seek to limit or exclude, the Court must address the scope of the claim remaining for trial.  As LSU points out,[113] at the first status conference following the Fifth Circuit's ruling in this case, the Court initially "advised that,

---

[113] R. Docs. 574 at 23; 576 at 11.

because the Fifth Circuit only reversed a summary judgment on the one claim left to be tried, Plaintiffs must still prove each element of the claim (including their *prima facie* case) by a preponderance of the evidence."[114]  However, notwithstanding the procedural posture on appeal, a close reading of the Fifth Circuit's opinion makes clear that the Fifth Circuit made critical findings to hold as a matter of law that Plaintiffs had established a *prima facie* case with respect to their retaliatory recission claim:

> To qualify as a protected activity, "the employee's conduct must have 'opposed' the employer's practice and that opposed practice must have been unlawful."  *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021).  "Importantly, a plaintiff need not demonstrate that the practice was *actually* unlawful for his opposition to be a protected activity; rather, it is enough that the plaintiff *reasonably believed* the practice was unlawful."  *Id.* at 1210.  *We hold that Plaintiffs' belief that LSUHSC[-NO] unlawfully discriminated against them because of their gender was reasonable.*  …  That we conclude that [LSU] did not discriminate against Plaintiffs does not negate their reasonable belief, based on these facts [*i.e.*, the facts recited in the Salary-Review Email], that they received discriminatory wages on account of their gender.  …  [T]he record reflects that Skinner understood [this] email to raise gender-pay equity concerns.  …  As the district court recognized, such testimony "seem[s] to corroborate that *Plaintiffs' belief was objectively reasonable*."  Taken together, this evidence satisfies Plaintiffs' burden at the summary judgment stage to show that their salary-review request was a protected activity.
>
> Defendants do not contest that the other elements of a prima facie case have been satisfied for Plaintiffs' salary-review-request allegation.  We hold that [Plaintiffs] have identified two adverse employment actions related to this allegation – the rescission of their employment contracts, and their eventual termination – and provided evidence linking such actions to their salary-review request.  *Accordingly, we find that Plaintiffs have established a prima facie case of retaliation with respect to this allegation.*[115]

While the Fifth Circuit determined that the "evidence satisfies Plaintiffs' burden *at the summary judgment stage* to show that their salary-review request was a protected activity,"[116] it also "*h[e]ld* that Plaintiffs' belief that LSUHSC[-NO] unlawfully discriminated against them because of their

---

[114] R. Doc. 541 at 1.
[115] *Muslow v. LSU*, at *8 (R. Doc. 511-1 at 17-18) (some emphasis added).  The Fifth Circuit thereafter upheld the dismissal of the retaliatory-termination claim.
[116] *Id.* (R. Doc. 511-1 at 18) (emphasis added).

gender was reasonable"[117] and then found "that Plaintiffs ha[d] established a prima facie case of retaliation with respect to [the retaliatory-recission] allegation" without a similar caveat.[118]

"Following remand, a district court must implement the letter and spirit of the appellate mandate." *Jacked Up, L.L.C. v. Sara Lee Corp*., 807 F. App'x 344, 349 (5th Cir. 2020) (citing *Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015)).  While the Fifth Circuit here did not give "specific and explicit instructions regarding how to proceed on remand," *id.* at 350, it did instruct this Court to conduct "further proceedings consistent with [its] opinion,"[119] which "forecloses relitigation of issues *expressly or impliedly decided* by the appellate court." *Franklin v. Regions Bank*, 125 F.4th 613, 630 (5th Cir. 2025) (emphasis added; quotation omitted).  Accordingly, this Court cannot relitigate on remand the question whether "Plaintiffs' belief that LSUHSC[-NO] unlawfully discriminated against them because of their gender was reasonable," given the Fifth Circuit's explicit holding that it was.[120]  Thus, any evidence that goes only to Plaintiffs' belief of wage discrimination – including Plaintiffs' EEOC charges and discrimination claims against LSU, evidence pertaining to any non-party employee's own pay-equity complaints or employment disputes, the 2021 internal audit exhibits, Wasser's memorandum, the Title IX review, the 2019 equity review, complaints submitted by named and anonymous LSUHSC-NO employees, and pending and prior lawsuits involving LSU – is no longer relevant, and LSU's motion to exclude this evidence is granted.[121]  Because Plaintiffs' reasonable belief of discrimination, and thus protected activity, are established, LSU's motion to exclude references to the Fifth Circuit's

---

[117] *Id.* (R. Doc. 511-1 at 17) (emphasis added).
[118] *Id.* (R. Doc. 511-1 at 18) (emphasis added).
[119] *Id.* at *11 (R. Doc. 511-1 at 23).
[120] *Id.* at *8 (R. Doc. 511-1 at 17).
[121] Any other ruling would have the untoward effect of opening the trial to all the evidence that would have been required to try the wage-discrimination claims that are no longer part of the case.

opinion "to argue that all elements of a *prima facie* case, such as protected activity, have been proven"[122] is likewise granted as unnecessary.[123]

Although they claim it is "newly invented,"[124] Plaintiffs do not move to exclude LSU's argument that it rescinded the OGC contracts because Plaintiffs' salary requests were too high. They instead argue that LSU should be prevented from raising any non-retaliatory reasons for rescission "*other than* (1) the OGC employment contracts were not signed by February 1, 2019, and (2) Plaintiffs' demands for salary increases were too high."[125]   LSU opposes this limitation generally, but does not identify any additional reason it intends to assert at trial.[126]   The Court agrees with Plaintiffs that any attempt by LSU to assert a non-retaliatory reason for rescinding the contracts not yet identified at this late stage would be "trial by ambush,"[127] and Plaintiffs' motion to exclude additional non-retaliatory reasons for rescinding the contacts on remand is granted.

Therefore, the only liability issue remaining for trial is whether LSU's stated reasons for rescinding the contracts – which are (1) that Plaintiffs failed to sign them by the February 1, 2019

---

[122] R. Doc. 574-1 at 22-23.

[123] Nonetheless, this Court may find it necessary during the trial to give the jury a limiting instruction to explain that, while it has been established that Plaintiffs' belief of gender-based wage discrimination was reasonable, it has also been established that LSU did not discriminate against Plaintiffs on the basis of gender.  Both can be true – and, in this case, they are.

[124] R. Doc. 577 at 3.  While Plaintiffs rely on the Fifth Circuit's majority opinion in arguing that "[t]he only purported non-retaliatory reason LSU briefed to the Fifth Circuit was that the OGC contracts purportedly expired by February 1, 2019," R. Doc. 572-1 at 2 n.2 (citing *Muslow v. LSU*, at *9 (R. Doc. 511 at 20)), they overlook the dissenting opinion's observation that "the university also contended that the salary demands themselves – rather than any allegation of pay disparity – provoked the contract rescission."  *Muslow v. LSU*, at *11 (R. Doc. 511 at 25).  The dissent also identified record evidence supporting this stated reason, *id.* at *12 (R. Doc. 511 at 25-26), as did the majority.  *Id.* at *9 (R. Doc. 511 at 20) ("Skinner explained at his deposition that the employment contracts were rescinded because he was 'taken aback' by Plaintiffs' salary-review request.").  Thus, while the defendants may have "jumbled the (potentially different) non-retaliatory reasons for each of the two employment actions … on appeal," *id.* at *11 (R. Doc. 511 at 25), it is clear that LSU's contention that Plaintiffs' salary demands were too high was not "newly invented" on remand.

[125] R. Doc. 572-1 at 6 (emphasis added).

[126] R. Doc. 576 at 9-11.

[127] R. Doc. 578 at 7.

deadline and (2) that Plaintiffs' salary demands were too high – were pretext for unlawful retaliation.[128]

### 2. Relevant Pretext Evidence

Because LSU is permitted to argue that it rescinded the contracts for the reason that the salaries requested by Plaintiffs were too high, some salary evidence will be relevant and may be presented by either party in support of their respective positions on this issue – notwithstanding that Plaintiffs' reasonable, good-faith belief that they were subjected to wage *discrimination* is no longer at issue. Evidence regarding the compensation and qualifications of individuals ultimately hired for the OGC positions offered to Plaintiffs is certainly relevant in determining whether the salaries they requested for those same positions were appropriate, and Plaintiffs' motion to exclude such evidence[129] is denied. Evidence pertaining to the compensation of other LSU employees – within both the OGC and LSUHSC-NO[130] – may also be relevant to this issue, even though there are no wage-discrimination claims remaining in this case, as LSU frequently repeats.[131] Yet, the Court emphasizes that the only remaining jury issue to which compensation evidence may be relevant is whether LSU rescinded the OGC contracts based on its subjective belief that the salaries

---

[128] Of course, while Plaintiffs' *prima facie* case, including a preliminary showing of causation, is established, *see Muslow v. LSU*, at *8 (R. Doc. 511-1 at 18) ("[W]e find that Plaintiffs have established a prima facie case of retaliation with respect to this allegation."), Plaintiffs bear the ultimate, heightened burden of establishing that the Salary-Review Email was the but-for cause of the recission of the OGC contracts at the pretext stage. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022) ("At first glance, the ultimate issue in an unlawful retaliation case – whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII – seems identical to the third element of the plaintiff's prima facie case – whether a causal link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly. *The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision.* The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent." (emphasis added; quotations and internal citations omitted)).

[129] R. Doc. 572-1 at 7-8.

[130] The Court is not persuaded by LSU's distinction between the OGC and LSUHSC-NO. Notably, the salaries in Plaintiffs' proposed OGC employment contracts matched their LSUHSC-NO salaries. Thus, the Court will not exclude evidence pertaining to LSUHSC-NO compensation policies simply because the positions offered to Plaintiffs were within the OGC and not LSUHSC-NO.

[131] *See, e.g.*, R. Doc. 574-1 at 4, 14, 17.

requested by Plaintiffs for the OGC positions were "too high," not whether Plaintiffs were actually subjected to wage discrimination. Thus, LSU's motion *in limine* is denied as to evidence regarding the compensation of non-party LSU employees, the LSUHSC-NO staff pay adjustments policy, the 2017 Market Study, and the OGC salary exhibits. LSU's motion to exclude Plaintiffs' LSUHSC-NO employment records is also denied to the extent these exhibits relate to Plaintiffs' LSUHSC-NO compensation.[132] However, the Court reserves the right to exclude certain salary exhibits and testimony at trial on its own motion or upon a party's contemporaneous objection if it deems such evidence, in context, to be outside this narrower range of relevance, unfairly prejudicial, cumulative, or likely to confuse the issues – especially given that there are no wage-discrimination claims remaining in this case.

Because the liability issue left for trial is LSU's reason or reasons for rescinding the OGC contracts, evidence probative of LSU's expectations regarding Plaintiffs' transition to the OGC is also relevant. Therefore, the Court also denies LSU's motion to exclude the emails between LSUHSC-NO staff discussing preparations for the transition of legal positions to the OGC.[133]

### 3. Other Evidence

LSU moves to exclude an unnamed representative of the Board of Supervisors from Plaintiffs' "may call" witness list,[134] arguing that Plaintiffs' reasons for including this witness – *viz.*, authentication of certain documents and "to rebut any attempt [by LSU] to argue that Thomas Skinner … was not acting on behalf of LSU and its Board when he rescinded Plaintiffs' OGC

---

[132] *See supra* note 130.

[133] However, because the Court has already determined that "[w]hether or not Plaintiffs had already begun transitioning to the OGC [in January 2019] is immaterial, as Plaintiffs admit that they were required to sign the contracts in order to complete their transfer to the OGC and be 'guaranteed' continued employment at LSU," R. Doc. 561 at 32 n.122, to the extent Plaintiffs intend to use these emails to argue that they had already assumed the OGC positions when the contracts were rescinded, such an argument is precluded – and evidence offered in support of any such argument will not be admitted.

[134] R. Doc. 574-1 at 3.

contracts"[135] – "are speculative and not supported by record facts of any such prior assertions by LSU in this suit."[136]  However, because LSU has not indicated that it will stipulate to these issues, the Court will not grant LSU's motion to preclude Plaintiffs from calling a representative of the Board of Directors for this discrete purpose.[137]

Plaintiffs' motion to exclude references to "any arrangement Plaintiffs have with their lawyers"[138] is granted with respect to both payment arrangements between Plaintiffs and their counsel, which LSU does not oppose, as well as "any evidence that may become relevant at trial regarding Plaintiffs' attorneys, including but not limited to the dates of retention of any attorney of record."[139]  LSU has not identified any reason that the timing of Plaintiffs' retention of counsel would be relevant to the issues remaining for trial.  Especially in light of the Court's orders on forfeiture and excluding references to yet unidentified reasons for rescinding the OGC contracts, there is no reason for the Court, at this time, to permit the introduction of the broad category of "evidence that *may become relevant* at trial regarding Plaintiffs' attorneys."[140]

Finally, the Court grants the unopposed portions of each party's motion *in limine*.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion *in limine* (R. Doc. 572) is GRANTED IN PART and DENIED IN PART.

---

[135] R. Doc. 577 at 6.

[136] R. Doc. 579 at 5.

[137] Should the parties agree to such stipulations, the testimony of this potential witness would not be relevant or necessary.

[138] R. Doc. 572-1 at 9.

[139] R. Doc. 576 at 16-17 (quote at 17).

[140] *Id.* at 17 (emphasis added).  If a foundation for such evidence is laid at trial, LSU may ask the Court to reconsider this ruling.

IT IS FURTHER ORDERED that LSU's motion *in limine* (R. Doc. 574) is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 20th day of August, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE